IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

RAYMOND C. SELKE, Administrator of the
Estate of YVONNE C. SELKE, Deceased, on
behalf of the Estate of YVONNE C. SELKE,
RAYMOND C. SELKE, Surviving Husband, and
TREVOR J. SELKE, Surviving Son,

and

RAYMOND C. SELKE, Administrator of the
Estate of EMILY E. SELKE, Deceased, on behalf
of the Estate of EMILY E. SELKE, RAYMOND
C. SELKE, Surviving Father, and TREVOR J.
SELKE, Surviving Son,

        Case No. 1:17cv121 (GBL/TCB)

    Plaintiffs,

v.

GERMANWINGS GMBH, a German
corporation:  DEUTSCHE LUFTHANSA AG, a
German corporation; UNITED AIRLINES, an
Illinois corporation,; and EUROWINGS GMBH, a
German corporation,

    Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AND/OR
FOR SUMMARY JUDGMENT OF DEFENDANTS GERMANWINGS GMBH,
DEUTSCHE LUFTHANSA AG, AND EUROWINGS GMBH**

## I.    INTRODUCTION

Plaintiffs' decedents were killed on March 24, 2015, as the result of the crash in France of Germanwings Flight No. 9525 during a flight from Spain to Germany.  Flight No. 9525 was operated by defendant Germanwings GmbH ("Germanwings").  However, the claims against Germanwings should be dismissed for lack of personal jurisdiction because plaintiffs' claims do not arise out of any activity by Germanwings in the Commonwealth of Virginia.  In fact, Germanwings does not conduct any activity of any type in Virginia or anywhere in the United States.  Germanwings is a German air carrier organized and existing under the laws of Germany. Its headquarters and principal place of business are located in Germany, and it conducts flights only within Europe and Northern Africa.

The claims against Deutsche Lufthansa AG ("Lufthansa") and Eurowings GmbH ("Eurowings") also should be dismissed for lack of personal jurisdiction.  Lufthansa is a German corporation with its headquarters and principal place of business located in Germany.  It had no involvement at all in the operation of Germanwings Flight No. 9525, and it did not engage in any activity in Virginia which was in any way related to the crash or plaintiffs' claims.  And, although Lufthansa does conduct limited business activities in Virginia, those activities are not nearly extensive enough to make it "essentially at home" in the Commonwealth under the standard for general personal jurisdiction articulated by the Supreme Court in *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).

Eurowings also is a German corporation with its headquarters and principal place of business located in Germany.  Like Lufthansa, it had no involvement with Germanwings Flight No. 9525, and it did not engage in any activity in Virginia which was in any way related to the accident or plaintiffs' claims.  In fact, Eurowings does not conduct any activity of any type in

Virginia. Eurowings' contacts with the United States are limited to flights it offers to and from Miami, Florida.  It appears that Eurowings was included as a defendant in this lawsuit based entirely upon plaintiffs' incorrect allegation that Germanwings and Eurowings "merged" sometime after the crash of Germanwings Flight 9525.[1]

Finally, in the alternative, Lufthansa and Eurowings should be granted summary judgment dismissing the Complaint as against them because they did not have any involvement in the operation of Flight No. 9525.  Lufthansa's contact with plaintiffs' decedents was limited to its operation of a flight from Munich to Barcelona four days before the crash on which they were passengers.  Eurowings did not provide any transportation to plaintiffs' decedents, and had no relationship at all with them.  Plaintiffs have alleged that Lufthansa and Eurowings are liable for the crash based upon the conclusory, and wholly unsupported allegations that they, along with United Airlines, Inc. ("United")[2], were engaged in an unspecified agency relationship or joint venture with Germanwings that somehow resulted in them "own[ing], operat[ing], maintain[ing] and control[ing]" Flight No. 9525. *See e.g.*, Complaint, ¶ 46. Plaintiffs do not bother to offer any factual predicates for these "naked assertions." They simply assert them throughout the Complaint, as if incessant repetition makes them true.

## II.   UNDISPUTED MATERIAL FACTS

Pursuant to Local Civ. R. 56(B), Germanwings, Lufthansa and Eurowings contend that there is no genuine material issue as to the material facts recited below:

1.      Plaintiffs' decedents died as the result of the crash of Germanwings Flight No. 4U9525 ("Flight No. 9525") on March 24, 2015. Complaint, ¶ 1.

---

[1] This allegation is not true. *See* Declaration of Lawrence Mullins dated April 28, 2017, ¶ 12.
[2] United has filed a separate motion seeking to dismiss the Complaint.

2.      Lufthansa is a commercial air carrier organized and existing under the laws of the Federal Republic of Germany ("Germany"). Declaration of Lawrence Mullins dated April 28, 2017 ("Mullins Decl."), ¶ 3.

3.      Lufthansa's headquarters and principal place of business are located in Cologne, Germany. *Id*., ¶ 4.

4.      Germanwings is a commercial air carrier organized and existing under the laws of Germany, with its headquarters and principal place of business located in Cologne, Germany. *Id*., ¶ 6.

5.      Lufthansa and Germanwings are separate and distinct corporate entities, and at all times have been operated as such. *Id*., ¶ 7.

6.      Eurowings is a commercial air carrier organized and existing under the laws of Germany, with its headquarters and principal place of business located in Dusseldorf, Germany. *Id*., ¶ 9.

7.      Lufthansa and Eurowings are separate and distinct corporate entities, and at all times have been operated as such. *Id*., ¶ 10.

8.      Germanwings and Eurowings are separate and distinct corporate entities, and at all times have been operated as such.  *Id*., ¶¶ 11, 12.

9.      The tickets pursuant to which plaintiffs' decedents Yvonne Selke and Emily Selke were traveling at the time of the accident were sold and issued by United. *Id*., ¶ 14.

10.     Neither Lufthansa, Germanwings, nor Eurowings were involved in the sale or issuance of the tickets to plaintiffs' decedents. *Id*., ¶ 15.

11.     All commercial air carriers are assigned a designator code by the International Air Transport Association ("IATA").  These designator codes are used, *inter alia*, on airline tickets to

identify the air carriers that are involved with the flights listed in the tickets. Lufthansa's designator code is "LH," Germanwings' is "4U," Eurowings' is "EW," and United's is "UA." *Id.*, ¶ 16.

13. 12. The Selke Tickets list two flights to be performed by United: Flight No. 0132 on March 20, 2015, from Washington Dulles International Airport in Virginia to Munich, and Flight No. 0101 on March 29, 2015, from Manchester, England to Washington Dulles International Airport. These flights are identified as United flights by the use of United's designator code "UA" in the tickets. *Id.*, ¶ 17.

13. Neither Lufthansa, Germanwings, nor Eurowings had any lease or ownership interest in the aircraft used by United to perform Flight Nos. 0132 or 0101, nor did any of them employ or supervise any of the crew on board those flights or have any other involvement in the operation of those flights. *Id.*, ¶ 18.

14. The Selke Tickets also list Lufthansa Flight No. 1812 from Munich, Germany to Barcelona, Spain on March 21, 2015. This flight is identified on the Selke Tickets by the use of Lufthansa's designator code "LH" immediately before the flight number. *Id.*, ¶ 19.

15. United sold the tickets for this flight to be performed by Lufthansa pursuant to a Bilateral Interline Passenger Ticketing, Baggage and Ticket Handling Agreement in effect between United and Lufthansa. Tickets sold by one air carrier for flights to be performed by another air carrier pursuant an interline agreement of this type are known in the commercial airline industry as "interline tickets" that provide for "interline transportation." *Id.*, ¶ 20.

16. Interline transportation involves air carriage that utilizes the flights of more than one carrier, and the carriers involved agree to accept each other's tickets and baggage. However,

the carriers that operate those flights do so separately and independently from each other.  *Id*., ¶ 21.

17.     When an air carrier such as United sells an interline ticket for transportation to be provided by another air carrier, it has no involvement in the operation of the flight, and assumes no responsibility for the acts or omissions of the other carrier in the operation of that air transportation.   The air carrier that actually performs the transportation does not do so on behalf of, or at the request of, or under the authority of, the carrier that sells the interline ticket. *Id*., ¶ 22.

18.     Lufthansa Flight No. 1812 listed in the Selke Tickets was an interline flight operated by Lufthansa.  Neither United, Germanwings, Eurowings, nor any other air carrier was involved in the operation of Flight No. 1812, and it was not operated by Lufthansa on behalf of, at the request of, or under the authority of, any other air carrier.  *Id*., ¶ 23.

19.     The Selke Tickets also list two flights to be performed by Germanwings: Flight No. Flight No. 9525 on March 24, 2015, from Barcelona to Dusseldorf, and Flight No. 9342 on March 24, 2015, from Dusseldorf to Manchester.  These flights are identified as Germanwings flights by the use of Germanwings' designator code "4U" in the tickets. *Id*., ¶ 24.

20.     Germanwings Flight Nos. 9525 and 9342 listed in the Selke Tickets were interline flights operated by Germanwings.  United sold the tickets for these Germanwings flights pursuant to a Bilateral Interline Passenger Ticketing, Baggage and Ticket Handling Agreement in effect between United and Germanwings. *Id*., ¶ 25.

21.     Neither United, Lufthansa, nor Eurowings, or any other air carrier, was involved in the operation of Germanwings Flight Nos. 9525 and 9342, and those flights were not operated by Germanwings on behalf of, at the request of, or under the authority of, any other air carrier.  *Id*., ¶ 26.

6

22.     Neither United, Lufthansa, nor Eurowings had any lease or ownership interest in the aircraft used by Germanwings to perform Flight Nos. 9525 and 9342, nor did any of them employ or supervise any of the crew on board those flights or have any other involvement in the operation of those flights. *Id.*, ¶ 27.

23.     The Selke Tickets do not list any flights that were operated by Eurowings. *Id.*, ¶ 28.

24.     Lufthansa Flight No. 1812, and Germanwings Flight Nos.  9525 and 9342, were not codeshare flights. *Id.*, ¶ 29.

25.     Germanwings Flight No. 4U9525 from Barcelona to Dusseldorf on March 24, 2015, was not operated pursuant to a partnership, joint venture, joint adventure, joint enterprise, or any other form of business enterprise, involving United, Germanwings, Lufthansa and/or Eurowings.  Flight No. 4U9525 was an interline flight operated solely by Germanwings without any input or involvement of any type from United, Lufthansa, or Eurowings. *Id.*, ¶ 34.

26.     Lufthansa, along with 27 other airlines, is a member of the "Star Alliance." *Id.*, ¶ 36.

27.     Neither Germanwings nor Eurowings is a member of the Star Alliance.  *Id.*, ¶ 37.

28.     The Star Alliance Agreement does not create a partnership among the Star Alliance members. *Id.*, ¶ 38.

29.     The air carriers that are members of the Star Alliance do not sell tickets pursuant to the Star Alliance Agreement, nor do they operate flights for one another through or pursuant to the Star Alliance. *Id.*, ¶ 40.

30.     Lufthansa operates flights to 205 destinations worldwide, and operates approximately 5.468 flights worldwide each week.  *Id.*, ¶ 41.

31.     Lufthansa operates flights to 19 destinations in the United States, only one of which is located in Virginia. *Id*., ¶ 42.

32.     Lufthansa operates 226 flights each day to the United Sates, only three of which are to Virginia. *Id*., ¶ 43.

33.     The headquarters and principal place of business for Lufthansa's business operations in the United States are located in New York, and of the flights that it operates to and from the United States, the largest number are operated to and from JFK International Airport in New York. *Id*., ¶ 44.

34.     Lufthansa employs 35,703 people worldwide, including 430 people located in the United States, only 17 of whom are located in Virginia. *Id*., ¶ 45.

35.     Germanwings operates flights to 103 destinations worldwide, and operates approximately 1685 flights worldwide each day.  Germanwings operates flights only to destinations located in Europe and Northern Africa.  *Id*., ¶ 46.

36.     Germanwings does not and never has operated any flights to or from Virginia, or any other State of the United States.  *Id*., ¶ 47.

37.     Germanwings does not have and never has had any employees stationed in Virginia, or any other State of the United States.  *Id*., ¶ 48.

38.     Germanwings does not have and never has had an office or other facility located in Virginia, or in any other State of the United States. *Id*., ¶ 49.

39.     Germanwings does not have and never has had an address, telephone number, telephone listing, or bank account in Virginia, or in any other State of the United States. *Id*., ¶ 50.

40.     Germanwings does not and never has owned, leased, or possessed any interest in any real property in Virginia, or in any other State of the United States. *Id*., ¶ 51.

41.     Germanwings does not and never has paid taxes to Virginia, or to any other State of the United States. *Id*., ¶ 52.

42.     Germanwings does not and never has advertised in Virginia. *Id*., ¶ 53.

43.     Eurowings offers flights to 124 destinations worldwide, and operates approximately 2767 flights worldwide each week.  *Id*., ¶ 54.

44.     The only location in the United States to which Eurowings currently offers flights is Miami.  Eurowings offers 8 such flights each week to Miami.  Germanwings does not have any involvement in the operation of these flights to Miami.  *Id*., ¶ 55.

45.     Eurowings employs approximately 844 people worldwide.   None of these employees are located in the United States.  *Id*., ¶ 56.

46.     Eurowings never has operated any flights to or from Virginia, and never has had any employees stationed in Virginia. *Id*., ¶ 57.

47.     Eurowings never has had an office or other facility in Virginia. *Id*., ¶ 58.

48.     Eurowings never has had an address, telephone number, telephone listing, or bank account in Virginia. *Id*., ¶ 59.

49.     Eurowings never has owned, leased, or possessed any interest in any real property in Virginia. *Id*., ¶ 60.

50.     Eurowings has never paid any taxes to Virginia. *Id*., ¶ 61.

## III.   LEGAL STANDARD

A defendant is entitled to summary judgment if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In consideration of a motion for summary judgment, a court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party.  *EEOC v. Navy Fed.*

*Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

As the Supreme Court has explained, "this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)(emphasis in original).  A dispute over an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  "Conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of [the nonmoving party's] case." *Id.* (quoting *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002)).

Once the moving party shows that it is entitled to judgment as a matter of law, the burden shifts to the nonmoving party to point out the specific facts that create disputed factual issues. *Anderson*, 477 U.S. at 248.  The nonmoving party must present some evidence, other than its initial pleadings, to show that there is more than just a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "[I]t is ultimately the nonmovant's burden to persuade [the court] that there is indeed a dispute of material fact.  It must provide more than a scintilla of evidence—and not merely conclusory allegations or speculation—upon which a jury could properly find in its favor." *CoreTel Va., LLC v. Verizon Va., LLC,* 752 F.3d 364, 370 (4th Cir.2014) (citation omitted).

## IV.   ARGUMENT

### A.   Personal Jurisdiction Does Not Exist Over Germanwings, Lufthansa Or Eurowings In This Litigation

"A federal district court may only exercise personal jurisdiction over a foreign corporation if such jurisdiction is authorized by the long-arm statute of the state in which it sits, and application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment, U.S. Const. amend. XIV § 1." *Consulting Eng'rs Corp. v. Geometric Ltd*., 561 F.3d 273, 277 (4th Cir. 2009)(citing *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 396 (4th Cir. 2003)).

Virginia's long-arm statute provides, in relevant part, as follows: "A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's ... [t]ransacting any business in this Commonwealth." Va. Code Ann. § 8.01–328.1(A)(1).[3]  "The exercise of personal jurisdiction is proper … only if the asserted cause of action "aris[es] from" the non-resident defendant's "[t]ransacting business" in Virginia." *Consulting Eng'rs*, 561 F.3d at 277 (citing Va. Code Ann. § 8.01–328.1(A)(1); *DeSantis v. Hafner Creations, Inc.,* 949 F. Supp. 419, 423–24 (E.D.Va.1996); *Chedid v. Boardwalk Regency Corp.,* 756 F.Supp. 941, 943–44 (E.D.Va.1991)). Because Virginia's long-arm statute is intended to extend personal jurisdiction to the extent permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry.  *Young v. New Haven Advocate,* 315 F.3d 256, 261 (4th Cir.2002); *English & Smith v. Metzger,* 901 F.2d 36, 38 (4th Cir.1990).

To satisfy the constitutional due process requirement, "a defendant must have sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit does not offend

---

[3] Plaintiffs have not specified in their Complaint the section of the long arm statute on which they are relying. Based upon the arguments they have made in opposition to United's motion to dismiss, however, it appears that they are relying on this section.

traditional notions of fair play and substantial justice.'" *Consulting Eng'rs*, 561 F.3d at 277 (quoting *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945)).  The minimum contacts test requires the plaintiff to show that the defendant "purposefully directed his activities at the residents of the forum" and that the plaintiff's cause of action "arise [s] out of" those activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (citation and quotation omitted). "This test is designed to ensure that the defendant is not 'haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.' It protects a defendant from having to defend himself in a forum where he should not have anticipated being sued." *Consulting Eng'rs*, 561 F.3d at 277 (citations omitted). "Because a sovereign's jurisdiction remains territorial, to justify the exercise of personal jurisdiction over a non-resident defendant, the defendant's contacts with the forum state must have been so substantial that 'they amount to a surrogate for presence and thus render the exercise of sovereignty just.'" *Id*. (quoting *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 623 (4th Cir.1997)).

The Fourth Circuit has synthesized the due process requirements for asserting specific personal jurisdiction in a three part test in which the court considers "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 712 (4th Cir.2002) (quotations and citations omitted).

The first prong articulates the minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state. *Consulting Eng'rs*, 561 F.3d at 278. Courts consider various nonexclusive

factors in seeking to resolve whether a defendant has engaged in such purposeful availment. These factors include, but are not limited to:

> (1) the defendant maintains offices or agents in the forum state, (2) whether the defendant owns property in the forum state, (3) whether the defendant reached into the forum state to solicit or initiate business, (4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state, (5) whether the parties contractually agreed that the law of the forum state would govern disputes, (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship, (7) the nature, quality and extent of the parties' communications about the business being transacted, and (8) whether the performance of contractual duties was to occur within the forum state.

*Id.* (citations omitted).  Only if the court "find[s] that the plaintiff has satisfied this first prong of the test for specific jurisdiction need [it] move on to a consideration of prongs two and three."  *Id.*

The second prong of the test for specific jurisdiction—that the plaintiff's claims arise out of the activities directed at the forum – "requires that the defendant's contacts with the forum state form the basis of the suit." *Id.*, at 278-79 (citing *Burger King,* 471 U.S. at 472; *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)). If the plaintiff satisfies prongs one and two, prong three comes into play.

The third prong, that the exercise of personal jurisdiction be constitutionally reasonable, permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there. "Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." *Id.*, (citing

*Burger King,* 471 U.S. at 477, 105 S.Ct. 2174 (citing *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559).

The Supreme Court has emphasized that general all-purpose jurisdiction will exist in only narrow circumstances, and that "only a limited set of affiliations with a forum will render a defendant amendable to all-purpose jurisdiction there." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). The appropriate inquiry is "whether [a non-resident] corporation's affiliations with the State are so 'continuous and systematic' *as to render it essentially at home* in the forum State." *Daimler*, 134 S. Ct. at 761 (quotation marks and alteration omitted)(emphasis added). "Absent exceptional circumstances, [a] defendant is only subject to the general jurisdiction of the forum state if it is the defendant's domicile." *KMLLC Media, LLC v. Telemetry, Inc.*, 2015 WL 6506308, at *4 (E.D. Va. Oct. 27, 2015).  If not domiciled in the forum state, a defendant may be subject to general jurisdiction only if its "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  The "paradigm bases" for a corporation to be "essentially at home" in a state are "the place of incorporation and principal place of business." *Daimler*, 134 S. Ct. at 760.  That a corporation regularly does business in the forum state is not necessarily sufficient to establish general jurisdiction.  Indeed, general jurisdiction does not exist simply because of "the magnitude of the defendant's in-state contacts." *Id*. at 762 n.20.  Instead, the court must consider the defendant's activities "in their entirely, nationwide and worldwide.  A corporation that operates in many places can scarcely be deemed to be at home in all of them." *Id*.

### 1.  Personal Jurisdiction Does Not Exist Over Germanwings

Personal jurisdiction does not exist over Germanwings in this litigation because plaintiffs' claims do not arise out of any activity conducted by Germanwings in Virginia.[4]  In fact, Germanwings does not engage in any activity of any type in Virginia or anywhere in the United States.  Germanwings is a German air carrier incorporated in Germany with its headquarters and principal place of business located in Germany. It operates flights only within Europe and Northern Africa. It does not operate flights to Virginia or any destination in the United States. Undisputed Facts, ¶¶ 35-42.

The only activity identified in the Complaint that occurred in Virginia and arguably was related to Germanwings Flight No. 9525 was the decedents' purchase of the tickets for that flight through United's website while they physically were located in Virginia.  *See* Complaint, ¶ 3. Assuming for purposes of this motion that the purchase of the tickets "occurred" in Virginia (as opposed to where the decedents' credit card was debited), that purchase itself cannot support a finding of specific jurisdiction over Germanwings.  "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the 'relationship among the defendant, the forum and the litigation.'"  *Walden v Fiore*, 134 S.Ct. 1115, 1121 (2014)(quoting

---

[4] Plaintiffs argued in opposition to defendant United's motion to dismiss that Article 33 of the Montreal Convention creates personal jurisdiction.  That is not correct. Article 33 deals with subject matter jurisdiction, not personal jurisdiction.  *See, e.g., Weinberg v. Grand Circle Travel, LLC*, 891 F.Supp.2d 228, 237 (D. Mass. 2012)("The Montreal Convention authorizes injured passengers to bring an action in five fora where subject matter jurisdiction exists. … Where none of the places specified in Article 33 are in the United States, the court lacks treaty subject matter jurisdiction and must dismiss the case. … Even if plaintiffs establish subject matter jurisdiction under the Montreal Convention, the court still has to address the issue of personal jurisdiction."). *See also Luna v. Compania Panamena De Aviacion, S.A.*, 851 F. Supp. 826, 831 (S.D. Tex. 1994)("This court's subject matter jurisdiction arises from [Article 28 of] the Warsaw Convention [the predecessor to Article 33 of the Montreal Convention] and possible diversity between the parties.  Under either basis, this court looks to the [state] long arm statute to determine personal jurisdiction.").

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).  "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.*, at 1121-22.

"First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.*, at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 475 (1985)(emphasis in original).  "Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant – not the convenience of plaintiffs or third parties. We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* (citations omitted).  No matter however significant the plaintiff's contacts with the forum may be, "those contacts cannot be 'decisive in determining whether the defendant's due process rights are violated.'" *Id.* (citations omitted).

Second, the court's "minimum contacts" analysis must look to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there. *Id.* "[T]he plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him. … Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 1122-23 (citations omitted).

Germanwings did not engage in any activity that created any contacts with Virginia. It does not engage in any activity of any type in Virginia, and did not solicit plaintiffs' decedents to purchase the tickets. Undisputed Facts, ¶¶ 35-42.  Plaintiffs' decedents made the decision to go to

16

United's website and purchase from United the tickets for the United flights, as well as the tickets for the flights on Lufthansa and Germanwings.  Accordingly, Germanwings did not do anything to create any contacts with Virginia, or with plaintiffs' decedents in Virginia, sufficient to support a finding of personal jurisdiction.

And, plaintiffs' wrongful death claims do not "arise out of" the purchase of the tickets through United's website.  They arise entirely, and directly, from the crash of the plane in France during a flight from Spain to Germany.  The recent Supreme Court decision in *OBB Personenverkehr AG v. Sachs*, 136 S.Ct. 390 (2015) is directly on point.  In *OBB,* plaintiff was a California resident who purchased a Eurail pass over the internet from her home in California.  She later was injured while boarding a train in Austria operated by the Austrian state-owned railway. Because the train was operated by a foreign government, her claim was governed by the Foreign Sovereign Immunities Act, 28 U.S.C.A §1602, *et seq*., which, in relevant part, required that plaintiff establish that her claims were "based upon a commercial activity carried on in the United States by" the Austrian state-owned railway. *Id*., at 1605(a)(2).

The plaintiff in *OBB* argued that her claims were "based upon" the sale of the tickets in the United States.  The Supreme Court rejected that argument, and instead determined that her claims were "'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit" - which was the railway's conduct at the accident site in Austria.  *OBB*, 136 S.Ct. at 396

> All of [plaintiff's] claims turn on the same tragic episode in Austria, allegedly caused by wrongful conduct and dangerous conditions in Austria, which led to injuries suffered in Austria. … Under any theory of the case that [plaintiff] presents, however, there is nothing wrongful about the sale of the Eurail pass standing alone. Without the existence of the unsafe boarding conditions in Innsbruck, there would have been nothing to warn [plaintiff] about when she bought the Eurail pass.  However [plaintiff] frames her suit, the incident in Innsbruck remains at its foundation.

17

*Id. See also Consulting Eng'rs,* 561 F.3d at 278-79 (The requirement of specific jurisdiction that the plaintiff's claims arise out of the activities directed at the forum "requires that the defendant's contacts with the forum state form the basis for the suit.")(citing *Burger King*, 471 U.S. at 472; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)); *Luna v. Compania Panamena De Aviacion, S.A.*, 851 F. Supp. 826, 832 (S.D. Tex. 1994)("The question of whether a cause of action arises out of or relates to a defendant's forum contact is analogous to the issue of proximate cause in tort law."); *Russo v. Sea World of Florida, Inc.*, 709 F. Supp. 39, 42 (D.R.I. 1989)(same); *Marino v. Hyatt Corp.*, 793 F.2d 427 (1st Cir. 1986)(Hotel guest's action for injuries sustained in slip and fall in hotel room in Hawaii did not "arise from" her reservation of the room in Massachusetts); *Rodriguez v. Circus Circus Casinos, Inc.*, 2001 WL 21244 (S.D.N.Y. Jan. 9, 2001)(personal injury claim involving slip and fall in a casino in Nevada did not "arise out of" the making of the hotel reservations in New York); *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569 (Tex. 2007)(In a case involving the death of a 13 year old Texas resident while hiking in Arizona, specific jurisdiction did not exist under the Texas long arm statute over a Utah company that sent promotional brochures to Texas which induced the child to participate in the hiking expedition).

There was nothing wrongful about the sale of the tickets to plaintiffs' decedents, and plaintiffs' claims do not arise out of anything Germanwings did, or failed to do, in Virginia. Their claims arise solely out of the crash of the Germanwings flight in France during a flight from Spain to Germany. Accordingly, personal jurisdiction does not exist over Germanwings in this case, and the claims against it should be dismissed.

### 2.   Personal Jurisdiction Does Not Exist Over Lufthansa

Personal jurisdiction also does not exist over Lufthansa in this litigation. Like Germanwings, Lufthansa did not come into Virginia and solicit plaintiffs' decedents to purchase the tickets for their flight on Lufthansa.  The decedents decided to access United's website, and purchase from United the tickets for the Lufthansa flight from Germany to Spain.  And, in any event, Lufthansa's involvement and relationship with plaintiffs' decedents was limited to the operation of the Lufthansa flight from Munich to Barcelona four days before the crash. Undisputed Facts, ¶ 12.   Lufthansa did not have any involvement in the operation of Germanwings Flight No. 9525 that crashed in France and caused the deaths of plaintiffs' decedents.  *Id.*, ¶ 21.

Lufthansa is a German corporation organized and existing under the laws of Germany, with its headquarters and principal place of business located in Germany. Undisputed Facts, ¶¶ 2, 3.  Although Lufthansa operates flights to and from Dulles Airport in Virginia, those flights have nothing to do with the claims is this case. *Id.*, ¶¶ 31, 32.  And, Lufthansa's limited business activities in Virginia do not come close to making it "essentially at home" in Virginia under the test articulated by the Supreme Court in *Daimler*. *Id.*, ¶¶ 30-34.  Accordingly, neither specific nor general personal jurisdiction exists over Lufthansa in this litigation.

### 3.   Personal Jurisdiction Does Not Exist Over Eurowings

Personal jurisdiction does not exist over Eurowings in this litigation for the same reasons it does not exist over Germanwings or Lufthansa.  In fact, Eurowings has no connection at all to this case.  Plaintiffs' decedents did not purchase tickets for travel on Eurowings, and so their claims could not have arisen out of any activity by Eurowings in Virginia. *Id.*, ¶¶ 12, 23. Moreover, Eurowings does not conduct any business activities of any type in Virginia. *Id.*, ¶¶ 43-

50. Eurowings is a German airline organized and existing under the laws of Germany, with its headquarters and principal place of business located in Germany. *Id.*, ¶ 6. And, Miami is the only place in the United States to which it offers flights. *Id.*, ¶ 44. Accordingly, no basis exists for the exercise of specific or general jurisdiction over Eurowings in this litigation.

## B.    In the Alternative, Lufthansa and Eurowings Are Entitled To Summary Judgment

Even if personal jurisdiction did exist over Lufthansa and Eurowings in this litigation, they still would be entitled to summary judgment dismissing the Complaint because they had no involvement in the operation of Germanwings Flight No. 9525. *Id.*, ¶¶ 13, 21.

### 1.  Plaintiffs' Claims are Governed Exclusively By The Montreal Convention

The deaths of plaintiffs' decedents occurred during "international carriage" by air as that term is defined in a treaty of the United States known as the Montreal Convention.[5] Accordingly, their claims are governed exclusively by the terms and conditions of the Montreal Convention. However, under the terms of the Convention, only the air carrier that operated Germanwings Flight No. 9525 can be held liable for the crash and the deaths of plaintiffs' decedents. Neither Lufthansa nor Eurowings had any involvement in the operation of Flight No. 9525. Accordingly, they cannot be held liable for deaths of plaintiffs' decedents. And, because the Montreal Convention exclusively governs plaintiffs' claims, their state law negligence claims are preempted and barred.

As a treaty of the United States, the Montreal Convention is the supreme law of the land. *See,* U.S. Const. art. VI, cl. 2; *Husain v. Olympic Airways,* 540 U.S. 644 (2004). The Convention applies to all international carriage of persons "which, according to the agreement between the parties [the passenger ticket], the place of departure and the place of destination … are situated …

---

[5] Convention on the Unification of Certain Rules of International Carriage by Air, done at Montreal on 28 May, 1999, ICAO Doc. No. 9740 (entered into force November 4, 2003), *reprinted in* S. Treaty Doc. 106-45, 1999 WL 333292734.

within the territory of a single State Party if there is an agreed stopping place within the territory of another State, even if that State is not a State Party." Montreal Convention, Article 1(2).  *See also Naqvi v. Turkish Airlines, Inc.*, 80 F.Supp.3d 234, 238 (D.D.C. 2015)("The Convention applies to *all* claims arising from 'international carriage'" as defined in Article 1(2) of the Montreal Convention.)(emphasis in original).

At the time of the crash of Flight 9525, the decedents were traveling pursuant to tickets providing for roundtrip transportation beginning and ending in the United States, with intermediate stopping points in Germany, Spain, and the United Kingdom. *See* Complaint, ¶¶ 41; Undisputed Facts, ¶ 12. The United States is a party to the Montreal Convention.[6] *See* International Civil Aviation Organization List and Current Status of International Air Law Multilateral Treaties/Montreal Convention (available at http://www.icao.int/icao/en/leb/mtl99.pdf). *See also* Complaint, ¶ 3.

Accordingly, the Montreal Convention applies to the subject air transportation, exclusively governs plaintiffs' claims, and preempts their state law tort claims. *Dogbe v. Delta Air Lines, Inc.*, 969 F.Supp.2d 261, 268-69 (E.D.N.Y. 2013)("Thus, [b]y its own terms, the [Montreal] treaty, where applicable, preempts the remedies of a signatory's domestic law, whether or not the application of the Convention will result in recovery in a particular case."). *See also El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 161, 119 S.Ct. 662, 142 L.Ed.2d 576 (1999) ("recovery for a personal injury suffered 'on board [an] aircraft … , if not allowed under the Convention, is not available at all."); *Naqvi,* 80 F.Supp.3d at 238;  *Alemi v. Qatar Airways*, 842 F.Supp.2d 847, 849 (D. Md. 2012); Complaint, ¶ 84 (admitting that the Montreal Convention applies to this action).

---

[6] Plaintiff's assertion that the defendants are signatories to the Montreal Convention is not correct. The signatories are countries, not air carriers.

### 2. Neither Lufthansa Nor Eurowings Operated Flight No. 9525 And Therefore Cannot Be Held Liable For The Crash

Article 17(1) of the Montreal Convention, which provides the cause of action arising out of passenger death during international air transportation, provides as follows:

> The *carrier* is liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking.

Article 17 (emphasis added).

In order to recover against an air carrier under Article 17, a plaintiff must establish three elements: (1) the death or bodily injury of a passenger; (2) caused by an "accident"; that (3) occurred on board the aircraft. *Id. See also Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 535-36 (1991)("Thus, under Article 17, an air carrier is liable for passenger injury only when three conditions are satisfied: (1) there has been an accident, in which (2) the passenger suffered [a bodily injury], and (3) the accident took place on board the aircraft or in the course of the operations of embarking or disembarking.").[7] The defendants concede for purposes of this motion that plaintiffs' claims satisfy these three elements.

However, only the carrier that performed the carriage during which the death or injury took place can be held liable under Article 17. *Pflug v EgyptAir Corp.*, 961 F.2d 26, 31-32 (2d Cir. 1992); *Kapar v. Kuwait Airways Corp.*, 845 F.2d 1100, 1103 (D.C. Cir. 1988); *Shirobokova v CSA Czech Airlines, Inc.*, 376 F.Supp.2d 439, 442 (S.D.N.Y. 2005); *Orova v. Northwest Airlines, Inc.*, 2005 WL 281197 *3 (E.D. Pa. Feb. 2, 2005); *In re Air Crash at Taipei, Taiwan on*

---

[7] The *Floyd* dealt with a claim under the Warsaw Convention, the predecessor to the Montreal Convention. However, courts routinely rely on Warsaw Convention cases when interpreting equivalent provisions of the Montreal Convention. *See Naqvi*, 80 F.Supp.3d at 238 n.3 (D.D.C. 2015); *Dogbe v. Delta Air Lines, Inc.*, 969 F.Supp.2d 261, 269 (E.D.N.Y. 2013).

*October 31, 2000*, 2002 WL 32155476 *5-6 (C.D. Ca. May 13, 2002).   Germanwings alone

operated Flight 9525. Undisputed Facts ¶¶ 13 and 21.   Accordingly, Lufthansa and Eurowings

cannot be held liable for the crash and the deaths of plaintiffs' decedents.

Article 36 of the Montreal Convention further establishes that plaintiffs' claims can be

brought only against Germanwings.   Article 36 provides, in relevant part, as follows:

> (1)    [i]n the case of carriage to be performed by various
> successive carriers and falling within the definition set out in
> paragraph 3 of Article 1, each carrier which accepts passengers …
> is subject to the rules set out in this Convention and is deemed to be
> one of the parties to the contract of carriage in so far as the contract
> deals with that part of the carriage which is performed under its
> supervision.
>
> (2)    [i]n the case of carriage of this nature, the passenger or any
> person entitled to compensation in respect of him or her *can take
> action only against the carrier which performed the carriage during
> which the accident or the delay occurred*, save in the case where, by
> express agreement, the first carrier has assumed liability for the
> whole journey.

Article 36 (emphasis added).

United, Lufthansa, and Germanwings were "successive carriers" within the meaning of the

Montreal Convention.[8]

Article 1(3) of the Montreal Convention provides as follows:

> Carriage to be performed by several successive carriers is deemed,
> for the purposes of this Convention, to be one undivided carriage if
> it has been regarded by the parties as a single operation, whether it
> had been agreed upon under the form of a single contract or of a
> series of contracts, and it does not lose its international character
> merely because one contract ... is to be performed entirely within
> the territory of the same State.

The decedents' tickets provided for successive flights on United, Lufthansa, and

---

[8] Eurowings was not a successive carrier because it did not provide any transportation to
plaintiffs' decedents.

Germanwings.  *See* Tickets, Exhibit "A" to the Mullins Declaration.   The issue of whether carriage to be performed by several successive carriers is deemed to be one "undivided carriage" for purposes of the Montreal Convention is determined by the objective evidence of the intent of the parties to the contract for carriage.   "[W]hat matters is the objective evidence, not subjective evidence, of the parties' intent."  *Auster v. Ghana Airways Ltd*., 514 F.3d 44, 46 (D.C. Cir. 2008). "In fact, in the rare case where there has been evidence of the traveler's subjective intent, and it was contradicted by the court's inference from specific documentary indicia, courts have held that the indicia trump subjective evidence." *Haldimann v. Delta Airlines, Inc.*, 168 F.3d 1324, 1325 (D.C. Cir. 1999)(*citing Klos v. Polskie Limie Lotnicze*, 133 F.3d 164, 166-68 (2d Cir. 1997); *Swaminathan v. Swiss Air Transp. Co.*, 962 F.2d 387 (5th Cir. 1992); *Sopcak v. Northern Mountain Helicopter Serv.*, 52 F.3d 817, 819 (9th Cir. 1995); *Petrire v. Spantax S.A.,* 756 F.2d 263, 264-65 (2d Cir. 1985)).

> Our case law, along with that of our sister circuits and a wide array of lower courts – thus directs us to focus on the objective manifestations of the parties' intent expressed by the tickets for commercial passenger carriage in order to determine … whether his or her transportation constituted a 'single operation' of international travel for Warsaw Convention purposes.

*Coyle v. P.T. Garuda Indonesia*, 363 F.3d 979, 987 (9th Cir. 2004). *See also Robertson v. American Airlines, Inc.*, 401 F.3d 499, 502 (D.C.Cir. 2005); *Kruger v. United Air Lines, Inc.*, 2007 WL 3232443 (N.D. Ca. 2007); *Christoph v. AMR Corp.*, 2006 WL 3359084 (E.D.N.Y. 2006).  "To determine whether the parties regarded travel as a single operation, … the court focuses on the objective evidence, 'rather than … after-the-fact professed subjective intent.'" *Robertson v. American Airlines, Inc*., 277 F.Supp.2d 91, 99 n. 8 (D.D.C. 1997)(*quoting Manion v. American Airlines, Inc*., 17 F.Supp.2d 1, 4 (D.D.C. 1997)).

   In this case, the Decedents purchased their identical tickets for the flights listed therein

24

from United on the same day, at the same time, and paid for them with the same credit card. The two conjunction tickets (two coupons each) bear four sequential ticket coupon numbers, and each ticket contains a listing of the details of the five scheduled flights. Undisputed Facts, ¶ 12; Mullins Decl., Exhibit "A." Accordingly, the parties (plaintiffs' decedents, United, Lufthansa and Germanwings and Lufthansa) all were aware of each other's involvement in the carriage, as well as the overall itinerary. In addition, plaintiffs' decedents arranged their flight schedule so that they would start and end their trip in Virginia, and with only short breaks (hours or days) between the five scheduled flights over a period of nine days. Mullins Decl., Exhibit "A."

Under these circumstances, Germanwings Flight 9525 was part of "successive carriage," and United, Lufthansa and Germanwings were "successive carriers" within the meaning of the Montreal Convention. Accordingly, pursuant to Article 36 of the Convention, plaintiffs can take action only against Germanwings for the deaths of their decedents.[9]

### 3. Lufthansa and Eurowings Cannot Be Held Liable For The Crash Under Plaintiffs' State Law Negligence Claim

Even if the Montreal Convention did not preempt plaintiffs' common law tort claims, there still is no basis for imposing liability on Lufthansa or Eurowings for the deaths of plaintiffs' decedents.

As an initial matter, no basis exists for plaintiffs' allegations that these defendants were engaged in some sort of agency relationship or joint venture with Germanwings that somehow resulted in them "own[ing], operat[ing], maintain[ing] and control[ing]" Flight No. 9525. *See e.g.*, Complaint, ¶ 46. These defendants are separate and distinct corporate entities and at all times

---

[9] *See also* Montreal Convention, Article 29 (providing, in relevant part, that "[i]n the carriage of passengers, baggage and cargo, any action for damages, however founded, whether under this Convention or in contract or in tort or otherwise, *can only be brought subject to the conditions* and limits of liability *as are set out in this Convention*." *Id.* (emphasis added).

were operated as such. Moreover, none of them had any involvement in the operation of each other's flights listed in the Selke Tickets, including Germanwings Flight No. 9525, by way of a partnership, agency, joint venture, or other type of business enterprise. Undisputed Facts, ¶¶ 5, 7, 8, 9, 10, 13, 18, 20, 21, 22, 25, 28, and 29. Plaintiffs offer no factual predicate for their conclusory allegations concerning agency and joint venture, and those allegations should be disregarded by the Court. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

The essential elements of a negligence claim are: "(1) the identification of a legal duty of the defendant to the plaintiff; (2) a breach of that duty; and (3) injury to the plaintiff proximately caused by the breach." *Talley v. Danek Medical, Inc.,* 179 F.3d 154, 157 (4th Cir.1999). Neither Lufthansa nor Eurowings sold the tickets to plaintiff's decedents for Germanwings Flight No. 9525, and neither of them had any involvement in the operation of that flight. Lufthansa's relationship with plaintiffs' decedents was limited to the one flight that Lufthansa performed between Munich and Barcelona – which had nothing to do with the accident flight. And, Eurowings had no relationship at all to plaintiffs' decedents. Accordingly, no basis exists for the finding of a duty owed by Lufthansa or Eurowings to plaintiffs' decedents with respect to Flight 9525, or for a finding of a breach of any such duty.

## IV. CONCLUSION

For the foregoing reasons, the motion of Germanwings, Lufthansa, and Eurowings seeking to dismiss plaintiffs' Complaint for lack of personal jurisdiction or, in the alternative, for summary judgment, should be granted in all respects.

Dated: Tysons Corner, Virginia
        May 10, 2017

Respectfully submitted,

**GERMANWINGS GMBH, DEUTSCHE LUFTHANSA AG and EUROWINGS GMBH**

By Counsel

_____/s/_____
Jeffrey S. Poretz, Esquire
Virginia State Bar No. 38529
jporetz@milesstockbridge.com
Courtney B. Schaefer
Virginia State Bar No. 75387
cschaefer@milesstockbridge.com
**MILES & STOCKBRIDGE P.C.**
1751 Pinnacle Drive, Suite 1500
Tysons Corner, VA 22102-3833
703-903-9000 (p)
703-610-8686 (f)

*And*

Christopher Carlsen, Esquire
New York Bar No. 2101368
Christopher.Carlsen@clydeco.us
*(Admitted Pro Hac Vice)*
**Clyde & Co US LLP**
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
212-710- 3900 (p)
212-710-3950 (f)

*Counsel for Defendants Germanwings GmbH, Deutsche Lufthansa AG and Eurowings GmbH*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 10, 2017 I electronically filed the foregoing Memorandum of Law in Support of Motion to Dismiss and/or for Summary Judgment of Defendants Germanwings GmbH, Deutsche Lufthansa AG and Eurowings GmbH with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Peter A. Miller, Esquire
Virginia State Bar No. 578222
pmiller@millerdellafera.com
Thomas F. DellaFera, Jr., Esquire
Virginia State Bar No. 88449
tdellafera@millerdellaferra.com
**MILLER DELLAFERA, PLC**
175 S. Pantops Drive, Suite 301
Charlottesville, Virginia 22901
434-529-6909 (p)
888-830-1488 (f)
*Local Counsel for Plaintiff*

*And*

Ronald L.M. Goldman, Esquire (Admitted *Pro Hac Vice*)
California Bar No. 33422
rgoldman@baumhedlundlaw.com
A. Ilyas Ajbari, Esquire (Admitted *Pro Hac Vice*)
California Bar No. 228051
iakbari@baumhedlundlaw.com
Diane Marger Moore, Esquire
Virginia State Bar No. 88879
dmargermoore@baumhedlundlaw.com
**BAUM HEDLUND ARISTEI & GOLDMAN, PC**
12100 Wilshire Boulevard, Suite 950
Los Angeles, CA  90025-7114
310-207-3233 (p)
310-207-4204 (f)
*Lead Counsel for Plaintiffs*

_____/s/_____
Courtney B. Schaefer

4824-3163-1176, v.  1

28