# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

RAYMOND C. SELKE,  Administrator of
the Estate of YVONNE C. SELKE,
Deceased, on behalf of the Estate of
YVONNE C. SELKE, RAYMOND C.
SELKE, Surviving Husband, and
TREVOR J. SELKE, Surviving Son,

and

RAYMOND C. SELKE,  Administrator of
the Estate of EMILY E. SELKE, Deceased,
on behalf of the Estate of EMILY E.
SELKE, RAYMOND C. SELKE,
Surviving Father, and TREVOR J. SELKE,
Surviving Brother,

        Plaintiffs,

v.

GERMANWINGS GMBH, a German
corporation; DEUTSCHE LUFTHANSA
AG, a German corporation; UNITED
AIRLINES, an Illinois corporation; and
EUROWINGS GMBH, a German
corporation,

        Defendants.

Case No.  1:17-cv-121 (GBL/TCB)

# PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT OF DEFENDANTS GERMANWINGS GMBH, DEUTSCHE LUFTHANSA AG, AND EUROWINGS GMBH PURSUANT TO FED. R. CIV. P. 12(B)(2) AND 56

## TABLE OF CONTENTS

**INTRODUCTION** ............................................................................................... 1

**MATERIAL FACTS IN DISPUTE** ................................................................. 2

**PLAINTIFFS' ADDITIONAL MATERIAL FACTS** .................................... 7

**ARGUMENT** ................................................................................................... 12

**I.   THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS UNDER DOMESTIC JURISDICTIONAL RULES** .................................................. 12

   **a.   This court has personal jurisdiction over Germanwings through the contacts of United, its authorized agent.** ................................................................. 13

      **i.   Germanwings purposefully availed itself of the privilege of conducting activities in Virginia when its authorized agent, United, sold Yvonne and Emily Selke their tickets for Flight 9525 in Virginia.** ........................................................... 14

      **ii.   Plaintiffs' claims arise out of Germanwings' sale of its Flight 9525 tickets to Yvonne and Emily Selke in Virginia, which is where their journey began and was scheduled to end.** ........................................................................................ 17

      **iii.   Germanwings, a major international airline, concedes that it would be constitutionally reasonable for it to defend this action in Virginia.** ................. 18

   **b.   Lufthansa and Eurowings concede that this court has personal jurisdiction over them pursuant to FRCP 4(k)(2).** ................................................................. 19

**II.   LUFTHANSA AND EUROWINGS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED** ................................................................................... 22

   **a.   Germanwings, Lufthansa, and Eurowings are subject to this court's jurisdiction and are liable for the crash of Flight 9525 pursuant to their agency, partnership, and/or joint venture relationship with United.** ......................................................... 22

   **b.   Eurowings is both liable and subject to this court's jurisdiction because it has merged with Germanwings and is therefore its successor corporation.** ........................... 24

   **c.   The Montreal Convention does not preempt plaintiffs' negligence claim.** .................. 25

   **d.   Plaintiffs request leave to conduct discovery in order to oppose Lufthansa and Eurowings' motion for summary judgment pursuant to FRCP 56(d).** ...................... 25

**III.   THIS COURT HAS MONTREAL CONVENTION ARTICLE 33 PERSONAL JURISDICTION OVER DEFENDANTS** ........................................................ 26

**CONCLUSION** ............................................................................................... 30

**BAUM HEDLUND ARISTEI & GOLDMAN PC**
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

i

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

## **TABLE OF AUTHORITIES**

**Cases**

*ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805 (N.D. Ill. 2008) ................................ 23

*ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707 (4th Cir. 2002)........................... 14

*Baah v. Virgin Atl. Airways Ltd.*, 473 F. Supp. 2d 591 (S.D.N.Y. 2007) ..................................... 29

*Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208 (4th Cir. 2002)............................................................................................................................................ 24

*Benjamin v. Delta Air Lines, Inc.*, 17 CCH Avi 17,286 (N.D. Ill. 1971).......................... 14, 16, 18

*Berner v. United Airlines*, 2 Misc. 2d 260 (Sup. Ct.), aff'd sub nom. 3 A.D.2d 9 (1956), aff'd sub nom. 3 N.Y.2d 1003 (1957) .............................................................................................................. 14

*Bright Imperial Ltd. v. RT MediaSolutions, S.R.O.*, No. 1:11-CV-935-LO-TRJ, 2012 WL 1831536 (E.D. Va. May 18, 2012)....................................................................................................................... 19

*Broadus v. Delta Air Lines, Inc.*, 101 F. Supp. 3d 554 (M.D.N.C. 2015)................................. 18, 19

*Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390 (4th Cir. 2003) . 13

*City of Richmond, Va. v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438 (4th Cir. 1990)...................... 24

*Combs v. Bakker*, 886 F.2d 673 (4th Cir. 1989).............................................................................. 12

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014)............................................................................... 14

*DataCell ehf. v. Visa, Inc.*, No. 1:14-CV-1658 GBL/TCB, 2015 WL 4624714 (E.D. Va. July 30, 2015)................................................................................................................................................... 12

*Design88 Ltd v. Power Uptik Prods., LLC*, 133 F. Supp. 2d 873 (W.D. Va. 2001) ...................... 12

*Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366 (2d Cir. 2004) ...................................................... 26, 27

*Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 600 (E.D. Va. 2003)............. 20

*Hornsby v. Lufthansa German Airlines*, 593 F. Supp. 2d 1132 (C.D. Cal. 2009) ......................... 29

*Hunt v. Nuth*, 57 F.3d 1327 (4th Cir. 1995) ....................................................................... 13, 18, 19

*In re Air Crash Near Rio Grande Puerto Rico on Dec. 3, 2008*, No. 10-CV-81551, 2015 WL 328219 (S.D. Fla. Jan. 23, 2015)........................................................................................................ 22

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982)....................... 29

*Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92 (N.D. Ill. 2013) .............................................. 23

*Kaporovskiy v. Grecian Delight Foods, Inc.*, 338 Ill. App. 3d 206 (2003)..................................... 23

*Luna v. Compania Panamena De Aviacion, S.A.*, 851 F. Supp. 826 (S.D. Tex. 1994) ................. 26

*Manley v. Air Canada*, 753 F. Supp. 2d 551 (E.D.N.C. 2010) ...................................................... 19

*Mitrano v. Hawes*, 377 F.3d 402 (4th Cir. 2004) ............................................................................ 23

*Mohler v. Dorado Wings, Inc.*, 675 S.W.2d 404 (Ky. Ct. App. 1984)............................................ 14

*Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513 (E.D. Va. 2009) .................................. 23

*OBB Personenverkehr AG v. Sachs,* 136 S. Ct. 390 (2015)............................................................ 17

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987)............................................... 29

*Polanski v. KLM Royal Dutch Airlines*, 378 F. Supp. 2d 1222 (S.D. Cal. 2005) .......................... 29

**BAUM HEDLUND ARISTEI & GOLDMAN PC**
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

ii

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

*Pusey v. Dallas Corp.*, 938 F.2d 498 (4th Cir. 1991) ............................................... 13, 18, 19

*Reynolds Foil Inc. v. Pai*, No. 3:09CV657, 2010 WL 1225620 (E.D. Va. Mar. 25, 2010) ........... 18

*Roark v. Hicks*, 234 Va. 470 (1987) .......................................................................... 22

*Silver Ring Splint Co. v. Digisplint, Inc.*, 508 F. Supp. 2d 508 (W.D. Va. 2007) ........................ 21

*Smith v. Metro. Sanitary Dist. of Greater Chicago*, 77 Ill. 2d 313 (1979) ................................. 23

*Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292 (4th Cir. 2012) ....................................................................................................................... 12

*Vergara v. Aeroflot ""Soviet Airlines", (Gen. Dep't of Int'l Air Servs, Union of Soviet Socialistic Republics)*, 390 F. Supp. 1266 (D. Neb. 1975) .................................................... passim

*Vumbaca v. Terminal One Grp. Ass'n L.P.*, 859 F. Supp. 2d 343 (E.D.N.Y. 2012) ..................... 20

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ....................................................................... 17

*Water Splash, Inc. v. Menon*, No. 16-254, 2017 WL 2216933 (U.S. May 22, 2017) ................... 26

*Weinberg v. Grand Circle Travel, LCC*, 891 F. Supp. 2d 228 (D. Mass. 2012) .......................... 26

*Wendt v. Handler, Thayer & Duggan, LLC*, 613 F. Supp. 2d 1021 (N.D. Ill. 2009) .................... 22

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) ............................ 14

## Statutes

28 U.S.C. § 1330(b) .................................................................................................. 29

28 U.S.C. § 1331 ...................................................................................................... 20

Committee Notes to 1993 Amendments to Fed. R. Civ. P. 4, 146 FRD 401, 571 ....................... 20

Fed. R. Civ. P. 4(k)(2) .............................................................................................. 20

Fed. R. Civ. P. 56(d) ................................................................................................ 25

Fed. R. Civ. P. 8(d)(2) .............................................................................................. 19

Va. Code Ann. § 8.01-328.1 ....................................................................................... 14

## Other Authorities

Convention for the Unification of Certain Rules for International Carriage by Air art. 33, May 28, 1999, S. Treaty Doc. 106-45, 2242 U.N.T.S. 350, 1999 WL 33292734 ........................... passim

Exec. Rpt. No. 108-8 (July 29, 2003) ................................................................... 26, 27, 29

ICAO, 1 Minutes of the International Conference on Air Law, ICAO Doc. 9775-DC/2 (1999) ... 1, 27, 30

ICAO, 2 Documents of the International Conference on Air Law, ICAO Doc. 9775-DC/2 (1999) ....................................................................................................................... 1, 27, 30

ICAO, 3 Preparatory Material of the International Conference on Air Law, ICAO Doc. 9775-DC/2 (1999) ................................................................................................. 1, 27, 30

## Constitutional Provisions

U.S. Const. art. VI ................................................................................................... 29

**BAUM HEDLUND ARISTEI & GOLDMAN PC**
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- iii -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

## INTRODUCTION

The U.S. entered into the Montreal Convention of 1999 in order to provide greater protection for American passengers traveling abroad as well as for their families. In fact, the U.S. would not have signed or ratified the Montreal Convention if its drafters had not expanded its jurisdictional provisions to make it possible for the families of American passengers who died in overseas plane crashes to bring lawsuits against foreign airlines in U.S. courts. (Akbari Decl. ¶ 11 & 17, Ex. 12, MC Preparatory[1] 243; Ex. 6, MC Documents[2] 102.) According to the minutes from the Montreal Convention conference:

> The United States felt strongly about [expanding jurisdiction] . . . as it had seen the plight of the survivors of aviation crashes when they were in bereavement, their lives devastated by a horrible event, and some were compelled, under those circumstances, to undertake litigation in a distant place that had little or nothing to do with their way of life, with how their financial plans were arranged, or with any of their reasonable expectations as to what life would bring them. . . .

(*Id.* ¶ 16, Ex. 11, MC Minutes[3] 107.) The drafters of the Montreal Convention expanded jurisdiction precisely for cases like this. Yvonne and Emily Selke were tragically killed when Flight 9525 crashed into the French Alps. Now their surviving family members bring this action in Virginia, a location that meets several of the jurisdictional possibilities provided by Montreal Convention Article 33. (*Id.* ¶ 8, Ex. 3, Montreal Convention art. 33.) It would defeat the entire purpose of the Montreal Convention to allow defendants to escape liability here.

Moreover, defendants' motion to dismiss for lack of personal jurisdiction should be denied because:

(a) United's Virginia contacts are imputed to Germanwings since United acted as Germanwings' authorized agent in Virginia;

(b) United was in an agency, partnership, and/or joint venture relationship with

---

[1] ICAO, 3 Preparatory Material of the International Conference on Air Law, ICAO Doc. 9775-DC/2 (1999).
[2] ICAO, 2 Documents of the International Conference on Air Law, ICAO Doc. 9775-DC/2 (1999).
[3] ICAO, 1 Minutes of the International Conference on Air Law, ICAO Doc. 9775-DC/2 (1999).

Germanwings, Lufthansa, and Eurowings;

(c) Article 33 of the Montreal Convention establishes personal jurisdiction;

(d) Eurowings is Germanwings' successor corporation; and

(e) Lufthansa and Eurowings have sufficient national contacts for FRCP 4(k)(2).

Lufthansa and Eurowings' motion for summary judgment should be denied because:

(a) there are genuine issues of material fact regarding whether Lufthansa and/or Eurowings are in an agency, partnership, and/or joint venture relationship with Germanwings, and whether Eurowings is Germanwings' successor corporation;

(b) plaintiffs' negligence claim is not preempted by the Montreal Convention; and

(c) it is premature and plaintiffs should be permitted to conduct discovery pursuant to FRCP 56(d).

## **MATERIAL FACTS IN DISPUTE**

| Defendants' Proposed Facts | Plaintiffs' Response |
|---|---|
| 1. Plaintiffs' decedents died as the result of the crash of Germanwings Flight No. 4U9525 ("Flight No. 9525") on March 24, 2015. | 1. Undisputed. |
| 2. Lufthansa is a commercial air carrier organized and existing under the laws of the Federal Republic of Germany ("Germany"). | 2. Undisputed. |
| 3. Lufthansa's headquarters and principal place of business are located in Cologne, Germany. | 3. Undisputed. |
| 4. Germanwings is a commercial air carrier organized and existing under the laws of Germany, with its headquarters and principal place of business located in Cologne, Germany. | 4. Undisputed. |
| 5. Lufthansa and Germanwings are separate and distinct corporate entities, and at all times have been operated as such. | 5. Disputed. Lufthansa was in an agency, partnership, and/or joint venture relationship with Germanwings. (Akbari Decl. ¶ 22-23, Exs. 17 & 18; Request for Judicial Notice ("RJN") Nos. 3-4.) |
| 6. Eurowings is a commercial air carrier organized and existing under the laws of Germany, with its headquarters and principal place of business located in Dusseldorf, Germany. | 6. Undisputed. |
| 7. Lufthansa and Eurowings are separate and distinct corporate entities, and at all times have | 7. Disputed. Lufthansa was in an agency, partnership, and/or joint venture relationship |

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025
- 2 -
PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

| | |
|---|---|
| been operated as such. | with Eurowings. (Exs. 17 & 18; RJN Nos. 3-4.) |
| 8. Germanwings and Eurowings are separate and distinct corporate entities, and at all times have been operated as such. | 8. Disputed. Germanwings merged with Eurowings. (Akbari Decl. ¶ 25-30 & 44, Exs. 22-27 & 43; RJN Nos. 11-14 & 22.) Germanwings was also in an agency, partnership, and/or joint venture relationship with Eurowings. (Exs. 17 & 18; RJN Nos. 3-4.) |
| 9. The tickets pursuant to which plaintiffs' decedents Yvonne Selke and Emily Selke were traveling at the time of the accident were sold and issued by United. | 9. Undisputed. |
| 10. Neither Lufthansa, Germanwings, nor Eurowings were involved in the sale or issuance of the tickets to plaintiffs' decedents. | 10. Disputed. United, Germanwings, Lufthansa, and/or Eurowings were in an agency, partnership, and/or joint venture relationship. (Exs. 17 & 18; Appleby Decl. ¶ 2-3, Exs. 20 & 21; RJN Nos. 3-4 & 7-8.) United and Germanwings have a codesharing agreement. (Akbari Decl. ¶ 41-43, Exs. 38-39 & 42; RJN Nos. 20 & 21.) Plaintiffs respectfully renew their request for leave to conduct discovery. (Mem. of Law, ECF No. 26-1.) |
| 11. All commercial air carriers are assigned a designator code by the International Air Transport Association ("IATA"). These designator codes are used, *inter alia*, on airline tickets to identify the air carriers that are involved with the flights listed in the tickets. | 11. Undisputed. |
| 12. The Selke Tickets list two flights to be performed by United: Flight No. 0132 on March 20, 2015, from Washington Dulles International Airport in Virginia to Munich, and Flight No. 0101 on March 29, 2015, from Manchester, England to Washington Dulles International Airport. These flights are identified as United flights by the use of United's designator code "UA" in the tickets. | 12. Undisputed. |
| 13. Neither Lufthansa, Germanwings, nor Eurowings had any lease or ownership interest in the aircraft used by United to perform Flight Nos. 0132 or 0101, nor did any of them employ or supervise any of the crew on board those flights or have any other involvement in the operation of those flights. | 13. Undisputed. |
| 14. The Selke Tickets also list Lufthansa Flight No. 1812 from Munich, Germany to Barcelona, Spain on March 21, 2015. This flight is identified on the Selke Tickets by the use of | 14. Undisputed. |

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 3 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

| | |
|---|---|
| Lufthansa's designator code "LH" immediately before the flight number. | |
| 15. United sold the tickets for this flight to be performed by Lufthansa pursuant to a Bilateral Interline Passenger Ticketing, Baggage and Ticket Handling Agreement in effect between United and Lufthansa. Tickets sold by one air carrier for flights to be performed by another air carrier pursuant to an interline agreement of this type are known in the commercial airline industry as "interline tickets" that provide for "interline transportation." | 15. Disputed. United and Germanwings have a codesharing agreement. (Exs. 38-39 & 42; RJN Nos. 20 & 21.) Plaintiffs respectfully renew their request for leave to conduct discovery. (Mem. of Law, ECF No. 26-1.) |
| 16. Interline transportation involves air carriage that utilizes the flights of more than one carrier, and the carriers involved agree to accept each other's tickets and baggage. However, the carriers that operate those flights do so separately and independently from each other. | 16. Undisputed. |
| 17. When an air carrier such as United sells an interline ticket for transportation to be provided by another air carrier, it has no involvement in the operation of the flight, and assumes no responsibility for the acts or omissions of the other carrier in the operation of that air transportation. The air carrier that actually performs the transportation does not do so on behalf of, or at the request of, or under the authority of, the carrier that sells the interline ticket. | 17. Disputed. United, Germanwings, Lufthansa, and/or Eurowings were in an agency, partnership, and/or joint venture relationship. (Exs. 17-18 & 20-21; RJN Nos. 3-4 & 7-8.) United and Germanwings have a codesharing agreement. (Exs. 38-39 & 42; RJN Nos. 20 & 21.) Plaintiffs respectfully renew their request for leave to conduct discovery. (Mem. of Law, ECF No. 26-1.) |
| 18. Lufthansa Flight No. 1812 listed in the Selke Tickets was an interline flight operated by Lufthansa. Neither United, Germanwings, Eurowings, nor any other air carrier was involved in the operation of Flight No. 1812, and it was not operated by Lufthansa on behalf of, at the request of, or under the authority of, any other air carrier. | 18. Undisputed. |
| 19. The Selke Tickets also list two flights to be performed by Germanwings: Flight No. [sic] Flight No. 9525 on March 24, 2015, from Barcelona to Dusseldorf, and Flight No. 9342 on March 24, 2015, from Dusseldorf to Manchester. These flights are identified as Germanwings flights by the use of Germanwings' designator code "4U" in the tickets. | 19. Disputed. United and Germanwings have a codesharing agreement. (Exs. 38-39 & 42; RJN Nos. 20 & 21.) Plaintiffs respectfully renew their request for leave to conduct discovery. (Mem. of Law, ECF No. 26-1.) |
| 20. Germanwings Flight Nos. 9525 and 9342 | 20. Disputed. United and Germanwings have a |

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 4 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

| | |
|---|---|
| listed in the Selke Tickets were interline flights operated by Germanwings. United sold the tickets for these Germanwings flights pursuant to a Bilateral Interline Passenger Ticketing, Baggage and Ticket Handling Agreement in effect between United and Germanwings. | codesharing agreement. (Exs. 38-39 & 42; RJN Nos. 20 & 21.) Plaintiffs respectfully renew their request for leave to conduct discovery. (Mem. of Law, ECF No. 26-1.) |
| 21. Neither United, Lufthansa, nor Eurowings, or any other air carrier, was involved in the operation of Germanwings Flight Nos. 9525 and 9342, and those flights were not operated by Germanwings on behalf of, at the request of, or under the authority of, any other air carrier. | 21. Disputed. United, Germanwings, Lufthansa, and/or Eurowings were in an agency, partnership, and/or joint venture relationship. (Exs. 17-18 & 20-21; RJN Nos. 3-4 & 7-8.) |
| 22. Neither United, Lufthansa, nor Eurowings had any lease or ownership interest in the aircraft used by Germanwings to perform Flight Nos. 9525 and 9342, nor did any of them employ or supervise any of the crew on board those flights or have any other involvement in the operation of those flights. | 22. Disputed. United, Germanwings, Lufthansa, and/or Eurowings were in an agency, partnership, and/or joint venture relationship. (Exs. 17-18 & 20-21; RJN Nos. 3-4 & 7-8.) |
| 23. The Selke Tickets do not list any flights that were operated by Eurowings. | 23. Undisputed. |
| 24. Lufthansa Flight No. 1812, and Germanwings Flight Nos. 9525 and 9342, were not codeshare flights. | 24. Disputed. United and Germanwings have a codesharing agreement. (Exs. 38-39 & 42; RJN Nos. 20 & 21.) Plaintiffs respectfully renew their request for leave to conduct discovery. (Mem. of Law, ECF No. 26-1.) |
| 25. Germanwings Flight No. 4U9525 from Barcelona to Dusseldorf on March 24, 2015, was not operated pursuant to a partnership, joint venture, joint adventure, joint enterprise, or any other form of business enterprise, involving United, Germanwings, Lufthansa and/or Eurowings. Flight No. 4U9525 was an interline flight operated solely by Germanwings without any input or involvement of any type from United, Lufthansa, or Eurowings. | 25. Disputed. United, Germanwings, Lufthansa, and/or Eurowings were in an agency, partnership, and/or joint venture relationship. (Exs. 17-18 & 20-21; RJN Nos. 3-4 & 7-8.) United and Germanwings have a codesharing agreement. (Exs. 38-39 & 42; RJN Nos. 20 & 21.) Plaintiffs respectfully renew their request for leave to conduct discovery. (Mem. of Law, ECF No. 26-1.) |
| 26. Lufthansa, along with 27 other airlines, is a member of the "Star Alliance." | 26. Undisputed. |
| 27. Neither Germanwings nor Eurowings is a member of the Star Alliance. | 27. Undisputed. |
| 28. The Star Alliance Agreement does not create a partnership among the Star Alliance members. | 28. Disputed. United, Germanwings, Lufthansa, and/or Eurowings were in an agency, partnership, and/or joint venture relationship. (Exs. 17-18 & 20-21; RJN Nos. 3-4 & 7-8.) |
| 29. The air carriers that are members of the Star Alliance do not sell tickets pursuant to the Star Alliance Agreement, nor do they operate flights | 29. Disputed. United, Germanwings, Lufthansa, and/or Eurowings were in an agency, partnership, and/or joint venture relationship. |

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 5 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

| | |
|---|---|
| for one another through or pursuant to the Star Alliance. | (Exs. 17-18 & 20-21; RJN Nos. 3-4 & 7-8.) |
| 30. Lufthansa operates flights to 205 destinations worldwide, and operates approximately 5,468 flights worldwide each week. | 30. Undisputed. |
| 31. Lufthansa operates flights to 19 destinations in the United States, only one of which is located in Virginia. | 31. Undisputed. |
| 32. Lufthansa operates 226 flights each day to the United Sates, only three of which are to Virginia. | 32. Undisputed. |
| 33. The headquarters and principal place of business for Lufthansa's business operations in the United States are located in New York, and of the flights that it operates to and from the United States, the largest number are operated to and from JFK International Airport in New York. | 33. Undisputed. |
| 34. Lufthansa employs 35,703 people worldwide, including 430 people located in the United States, only 17 of whom are located in Virginia. | 34. Undisputed. |
| 35. Germanwings operates flights to 103 destinations worldwide, and operates approximately 1685 flights worldwide each day. Germanwings operates flights only to destinations located in Europe and Northern Africa. | 35. Undisputed. |
| 36. Germanwings does not and never has operated any flights to or from Virginia, or any other State of the United States. | 36. Undisputed. |
| 37. Germanwings does not have and never has had any employees stationed in Virginia, or any other State of the United States. | 37. Undisputed. |
| 38. Germanwings does not have and never has had an office or other facility located in Virginia, or in any other State of the United States. | 38. Undisputed. |
| 39. Germanwings does not have and never has had an address, telephone number, telephone listing, or bank account in Virginia, or in any other State of the United States. | 39. Undisputed. |
| 40. Germanwings does not and never has owned, leased, or possessed any interest in any real property in Virginia, or in any other State of the United States. | 40. Undisputed. |

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 6 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

| | |
|---|---|
| 41. Germanwings does not and never has paid taxes to Virginia, or to any other State of the United States. | 41. Undisputed. However, plaintiffs do not understand how Germanwings can do business in Virginia without paying taxes there. |
| 42. Germanwings does not and never has advertised in Virginia. | 42. Disputed. Germanwings marketed and sold its tickets to U.S. customers through its agent, United. (Selke Decl. ¶ 6 & 9-10; Exs. 20-21; RJN Nos. 7-9.) |
| 43. Eurowings offers flights to 124 destinations worldwide, and operates approximately 2767 flights worldwide each week. | 43. Undisputed. |
| 44. The only location in the United States to which Eurowings currently offers flights is Miami. Eurowings offers 8 such flights each week to Miami. Germanwings does not have any involvement in the operation of these flights to Miami. | 44. Disputed. Eurowings also offers flights to Las Vegas, Boston, Seattle, and Orlando. (Akbari Decl. ¶ 31-37, Exs. 28-34; RJN Nos. 15-17.) Germanwings merged with Eurowings. (Akbari Decl. ¶ 25-30 & 44, Exs. 22-27 & 43; RJN Nos. 11-14 & 22.) Germanwings was also in an agency, partnership, and/or joint venture relationship with Eurowings. (Exs. 17 & 18; RJN Nos. 3-4.) |
| 45. Eurowings employs approximately 844 people worldwide. None of these employees are located in the United States. | 45. Disputed. Eurowings cannot operate out of Miami, Orlando, Las Vegas, Boston, and Seattle airports without U.S. employees to run the ticket counter, baggage handling, and gate operations. (*See* Exs. 28-34; RJN Nos. 15-17.) |
| 46. Eurowings never has operated any flights to or from Virginia, and never has had any employees stationed in Virginia. | 46. Undisputed. |
| 47. Eurowings never has had an office or other facility in Virginia. | 47. Undisputed. |
| 48. Eurowings never has had an address, telephone number, telephone listing, or bank account in Virginia. | 48. Undisputed. |
| 49. Eurowings never has owned, leased, or possessed any interest in any real property in Virginia. | 49. Undisputed. |
| 50. Eurowings has never paid any taxes to Virginia. | 50. Undisputed. |

## PLAINTIFFS' ADDITIONAL MATERIAL FACTS

51.     Both Yvonne and Emily Selke were principal and permanent residents of Virginia, and citizens of Virginia, up until the time of their deaths. Emily was born in Virginia and lived in this state continuously. (Selke Decl. ¶ 3.)

52.     Yvonne Selke wanted to vacation with Emily Selke in Europe. They had planned

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 7 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

to vacation in Barcelona, Spain from March 20-24, 2015 and then in Manchester, England from March 24-29, 2015. (*Id.* ¶ 5.)

53.     The Selke family's longtime home is in Virginia and their home airport is Washington Dulles International Airport. United is the largest airline at that airport. (*Id.* ¶ 6.)

54.     Yvonne Selke was a part of United's "Mileage Plus" rewards program and was induced by United and its Star Alliance partners, like Lufthansa, to accumulate as many airline points as possible through United and its Star Alliance partners in order to achieve and maintain certain status and other benefits that accrue by remaining loyal to United. (*Id.* ¶ 7.)

55.     Yvonne Selke had worked at Booz Allen Hamilton in Virginia for over 23 years, a job that required much travel. While traveling for business, she always tried to book with United in order to maintain her status and benefits with the airline, even if that meant incurring unnecessary layovers with United's partner airlines. (*Id.* ¶ 8.)

56.     When booking this trip in February 2015, Yvonne Selke once again used United because of United's inducement to her to participate in the loyalty program as much as she could. She booked the tickets from her home in Virginia through the United.com website. (*Id.* ¶ 9.)

57.     The United itinerary provided the following flights and respective partner carriers:

| March 20, 2015 | Washington Dulles, DC (IAD) to Munich, Germany (MUC) | United |
| | Munich, Germany (MUC) to Barcelona, Spain (BCN) | Lufthansa |
| March 24, 2015 | Barcelona, Spain (BCN) to Dusseldorf, Germany (DUS)[4] | Germanwings |
| | Dusseldorf, Germany (DUS) to Manchester, England (MAN) | Germanwings |
| March 29, 2015 | Manchester, England (MAN) to Washington Dulles, DC (IAD) | United |

(*Id.* ¶ 10.)

58.     United brokered a trip that plaintiffs' decedents neither asked for nor desired. (*Id.* ¶ 5 & 11-13.)

59.     But for United, Yvonne and Emily Selke would still be alive today. Neither of them had any intention to ever visit Germany on this trip, including Dusseldorf, the destination of Germanwings Flight 9525. Layovers in Germany were required by United due to its business

---

[4] Germanwings Flight 9525.

- 8 -

relationships with Star Alliance partner Lufthansa and its subsidiary Germanwings. (*Id.* ¶ 12.)

60.     The only trip that plaintiffs' decedents requested was to travel from Virginia to Barcelona, then from Barcelona to Manchester, and then from Manchester back to Virginia. Anything else was done by United. (*Id.* ¶ 5 & 13.)

61.     When booking through United, Yvonne and Emily Selke always expected the highest degree of care and safety from United, one of the big three United States carriers that touted itself to them as a premier airline with the highest standards of safety. (*Id.* ¶ 14.)

62.     United does not require the minimum safety standards and policies that it employs in its own operations to also be required of its partner airlines, including Lufthansa and Germanwings. One of those safety policies required at least two crew members in the cockpit at all times during flight. Such a policy is designed to prevent the actions of a rogue pilot, like the pilot that was allowed to be alone in the cockpit of Germanwings Flight 9525, when he crashed it into the Alps. (*Id.* ¶ 15.)

63.     Yvonne and Emily Selke fully expected United to ensure that its partner airlines maintained the same minimum safety standards and policies. Had they known that United did not require these minimum standards from its partner airlines, they would not have booked their flights through United for this trip, and they would be alive today. (*Id.* ¶ 16.)

64.     United has an agent for service of process located at 4701 Cox Road, Suite 285, Glen Allen, Virginia 23060. (Akbari Decl. ¶ 6, Ex. 1; Request for Judicial Notice ("RJN") No. 1.)

65.     United has *filed* at least fourteen legal actions in Virginia state and federal courts. (*Id.* ¶ 7, Ex. 2; RJN No. 2.)

66.     United's 10-K report for the year 2015 admits that United participates in joint ventures with airlines in the Lufthansa Group to sell plane tickets. (Ex. 17; RJN No. 3.)

67.     Lufthansa's annual financial report for the year 2015 admits that Germanwings and Eurowings are in the Lufthansa Group, and that Lufthansa, Germanwings, and Eurowings participate in joint ventures with United to sell plane tickets. (Ex. 18; RJN No. 4.)

68.     United and Lufthansa are members of the Star Alliance, which, according to its

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025
- 9 -
PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

description, consists of "28 Airlines Working in Harmony." (*Id.* ¶ 24, Ex. 19; RJN No. 5.)

69.     According to the Star Alliance website, "each airline shares a common dedication to the highest standards of safety . . . ." (*Id.*; RJN No. 6.)

70.     According to the terms of their interline agreement, both United and Germanwings expressly agreed to "sell transportation over the routes of the others" whereby Germanwings made a profit by selling its tickets through United to U.S. customers and United collected an "interline service charge" for making these sales. (Mullins Decl. ¶ 25, Ex. B, p. 1, ECF No. 43-1; Ex. 21, at 1 & 7; RJN No. 7.)

71.     According to the terms of their interline agreement, United had to issue Germanwings tickets "in the form approved by" Germanwings; United could not issue any Germanwings tickets or receive its interline service charge until United "received payment of the total charges"; United could not change or refund Germanwings tickets unless it "observ[ed] . . . any restrictions" of Germanwings; and United could not make any representations regarding Germanwings' tickets "except those representations specifically authorised  by" Germanwings. (*Id.* at 2, 3, & 8; RJN No. 8.)

72.     United was acting as Germanwings' authorized agent when it sold tickets for Flight 9525 to Yvonne and Emily Selke in Virginia. (*Id.* at 1-2 & 7-8; RJN No. 9.)

73.     In April 2017, Lufthansa announced that its airlines will no longer be following the "two in the cockpit" rule that it adopted after the crash of Flight 9525 on March 24, 2015. (Akbari Decl. ¶ 25, Ex. 22; RJN No. 10.)

74.     Between 2015 and 2017, the BBC, Reuters, and the Chicago Tribune have all reported that Germanwings has merged with Eurowings. (*Id.* ¶ 25-27, Exs. 22-24; RJN No. 11.)

75.     After March 24, 2015, Germanwings transferred 60 of its routes to Eurowings and 60 of its aircraft to Eurowings. (*Id.* ¶ 28-30, Exs. 25-27; RJN No. 12.)

76.     According to Lufthansa's website, "short- and medium-haul flights of the two existing airlines Germanwings and Eurowings, with their existing networks and crews have flown under the umbrella brand of the new Eurowings" since November 2015. (*Id.* ¶ 31, Ex. 28; RJN

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 10 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

No. 13.)

77.     The Germanwings website is no longer in existence and it redirects customers to Eurowings' website, which reads: "Modelled on the successful Germanwings, the new, standalone low-cost airline group was founded under the brand Eurowings." (*Id.* ¶ 37, Ex. 34; RJN No. 14.)

78.     According to Eurowings' website: "Since autumn 2015, this airline has been offering more than 140 low-cost connections . . . to attractive long-haul destinations such as . . . Miami, Orlando, Las Vegas, Seattle . . . ." (*Id.*; RJN No. 15.)

79.     Eurowings has been registered to conduct business and has had an agent for service of process in: (i) Florida, Nevada, and Massachusetts since January 2016; and (ii) Washington since January 2017. (*Id.* ¶ 32-35, Ex. 29-32; RJN No. 16.)

80.     Eurowings has a website directed at soliciting business from U.S. customers that is in English whereby Eurowings markets tickets to U.S. customers flying out of Las Vegas, Orlando, Seattle, or Miami. (*Id.* ¶ 36, Ex. 33; RJN No. 17.)

81.     Lufthansa has an English website directed at soliciting business from U.S. customers whereby Lufthansa markets tickets to U.S. customers flying out of Atlanta, Boston, Chicago, Charlotte, Dallas, Denver, Detroit, Houston, Las Vegas, Los Angeles, Miami, New York, Orlando, Philadelphia, San Francisco, San Diego, San Jose, Tampa, or Washington DC. (*Id.* ¶ 38, Ex. 35; RJN No. 18.)

82.     According to Lufthansa's annual financial report for the year 2015, Lufthansa earned 5,250,000,000 euro (or approximately $5,873,437,359 USD) in revenue from the U.S. in the year 2015 and 4,359,000,000 euro (or approximately $4,877,176,125 USD) in revenue from the U.S. in the year 2014. (Ex. 18; RJN No. 19.)

83.     Lufthansa and Germanwings communicated with plaintiff Raymond Selke systematically and continuously from September 2015 through March 2017. (Selke Decl. ¶ 17-19, Exs. 40 & 41.)

84.     In 2014, Germanwings and United submitted a joint application to the U.S.

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025
- 11 -
PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

Department of Transportation in Washington DC (DOT-OST-2014-0120) requesting an exemption allowing them to operate codeshare flights. This application was granted on September 17, 2014 and was effective through September 17, 2016. (Akbari Decl. ¶ 41 & 42, Exs. 38 & 39; RJN No. 20.)

85.    The terms of the codeshare agreement between Germanwings and United in effect in 2015 provide United with the power to review and approve Germanwings' security and safety measures on codeshare flights. (*Id.* ¶ 43, Ex. 42; RJN No. 21.)

86.    According to the U.S. Department of Transportation, the codeshare agreement between Germanwings and United in effect in 2015 includes "Eurowings d/b/a Germanwings." (*Id.* ¶ 44, Ex. 43; RJN No. 22.)

## ARGUMENT

Defendants' motion did not provide the Rule 12 standard and they appear to be relying solely on the Rule 56 standard for their motion to dismiss, which is improper. (*See* Mem. of Law 9-10, ECF No. 43.) "When addressing the 12(b)(2) question on only the complaint and supporting legal memoranda . . . the plaintiff need only make a prima facie showing of jurisdictional basis to survive the motion." *DataCell ehf. v. Visa, Inc.*, No. 1:14-CV-1658 GBL/TCB, 2015 WL 4624714, at *2 (E.D. Va. July 30, 2015). "[T]he court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Plaintiffs' burden in making a prima facie showing of jurisdiction is light. *Design88 Ltd v. Power Uptik Prods., LLC*, 133 F. Supp. 2d 873, 876 (W.D. Va. 2001).

## I.     THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS UNDER DOMESTIC JURISDICTIONAL RULES

Defendants first argue, incorrectly, that this court lacks personal jurisdiction over them. (Mem. of Law 11-18, ECF No. 43.) "A Virginia court . . . has jurisdiction over a nonresident defendant if the exercise of such jurisdiction is consonant with the strictures of due process." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012).

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 12 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

In determining whether it has personal jurisdiction over defendants, this court considers three factors: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." *Id.*

### a. This court has personal jurisdiction over Germanwings through the contacts of United, its authorized agent.

Plaintiffs sufficiently allege that this court has personal jurisdiction over Germanwings because United acted as its authorized agent in Virginia when it sold Yvonne and Emily their plane tickets for Flight 9525. (Complaint ¶ 10, 26, 27, 80, 93.) Because United sold Yvonne and Emily their tickets as Germanwings' agent, it is as if Germanwings *itself* sold the tickets in Virginia. *Vergara v. Aeroflot ""Soviet Airlines"", (Gen. Dep't of Int'l Air Servs, Union of Soviet Socialistic Republics)*, 390 F. Supp. 1266, 1269-71 (D. Neb. 1975). Indeed, although United disputes that it is *liable* for the crash of Flight 9525 pursuant to its agency relationship with Germanwings, United does admit that it "acted as [Germanwings'] agent only for the limited purpose of the sale of those interline tickets . . . ." (Mem. of Law 13, ECF No. 15) which is a basis for *personal jurisdiction* over Germanwings (*Vergara*, 390 F. Supp. at 1269-71).[5]

As explained in plaintiffs' opposition to United's concurrent motion to dismiss, United has sufficient minimum contacts with Virginia because it: (a) is registered to conduct business and has an agent for service of process in Virginia; (b) routinely operates out of five airports in Virginia, employs approximately 5,700 employees in Virginia, and is the largest airline (passengers serviced) at Dulles Airport; (c) has *filed* at least fourteen civil actions in Virginia; (d) sold Yvonne and Emily their plane tickets for their entire journey in Virginia; and (e) transported Yvonne and Emily from Virginia to Europe as the start of their entire journey (Complaint ¶ 8, 15, 16, 24, & 41; Selke Decl. ¶ 6 & 9-10; Akbari Decl. ¶ 6-7 & 39, Exs. 1-2 & 36; RJN Nos. 1-2.)

---

[5] Germanwings did not argue against this basis of jurisdiction in its motion and therefore concedes this point. (*See* Mem. of Law 15-18 & 25-26, ECF No. 43.) Arguments raised for the first time in a reply brief are properly disregarded by the court. *Hunt v. Nuth*, 57 F.3d 1327, 1338 (4th Cir. 1995). Germanwings' failure to raise this argument in its motion also cuts off the court's ability to raise the issue *sua sponte*. *Pusey v. Dallas Corp.*, 938 F.2d 498, 501 n.4 (4th Cir. 1991).

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025
- 13 -
PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

Although United has used its website to market and sell plane tickets to Virginia residents countless times, "[e]ven a single contact may be sufficient to create jurisdiction . . . ." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). "Traditionally, when an entity intentionally reaches beyond its boundaries to conduct business with foreign residents, the exercise of specific jurisdiction is proper. . . . [and] [d]ifferent results should not be reached simply because business is conducted over the Internet." *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997); *see also ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 713 (4th Cir. 2002). United reached into Virginia to conduct business by using its website to market to, and enter into a contract with, Virginia residents, plaintiffs' decedents, whereby it charged their credit card and transmitted plane tickets to them electronically. (*Id.*; Complaint ¶ 43, 73, & 74; Selke Decl. ¶ 6 & 9-10.) United's act of selling Yvonne and Emily their tickets for Flight 9525 (as Germanwings' agent) is sufficient to make Germanwings subject to personal jurisdiction in Virginia.[6]

### i. Germanwings purposefully availed itself of the privilege of conducting activities in Virginia when its authorized agent, United, sold Yvonne and Emily Selke their tickets for Flight 9525 in Virginia.

The Virginia long-arm statute states that "[a] court may exercise personal jurisdiction over a person, who acts directly *or by an agent*, as to a cause of action arising from the person's: 1. Transacting any business in this Commonwealth . . . ." Va. Code Ann. § 8.01-328.1 (emphasis added). In *Daimler AG v. Bauman*, the U.S. Supreme court reiterated that "[a]gency relationships . . . may be relevant to the existence of *specific* jurisdiction. . . . [and] a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there." 134 S. Ct. 746, 759 n.13 (2014).

When a foreign airline (Germanwings) uses a U.S. agent (United) to sell its plane tickets to U.S. customers, it purposefully avails itself of the privilege of conducting activities in the

---

[6] In addition, Lufthansa and Germanwings have communicated systematically and continuously with plaintiff Raymond Selke in Virginia regarding the crash of Flight 9525 from September 2015 through March 2017. (Selke Decl. ¶ 17-19, Exs. 40 & 41.)

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 14 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

forum state. *Vergara*, 390 F. Supp. at 1269-71; *see also Mohler v. Dorado Wings, Inc.*, 675 S.W.2d 404, 406-07 (Ky. Ct. App. 1984); *Benjamin v. Delta Air Lines, Inc.*, 17 CCH Avi 17,286 (N.D. Ill. 1971) (filed concurrently herein as Exhibit 37); *Berner v. United Airlines*, 2 Misc. 2d 260, 274 (Sup. Ct.), aff'd sub nom. 3 A.D.2d 9 (1956), aff'd sub nom. 3 N.Y.2d 1003 (1957).

For example, in *Vergara*, the plaintiffs (two Nebraska residents) brought a Warsaw Convention action in Nebraska federal court against a Russian airline ("Aeroflot"). 390 F. Supp. at 1267. Plaintiffs sued Aeroflot because, when their flight from Uzbekistan arrived in Pakistan, ""plaintiffs were allegedly forcibly detained at a remote terminal, due to Aeroflot's failure to obtain permission to enter Pakistani air space." *Id.* at 1268. Aeroflot, which had no offices or employees in Nebraska, moved to dismiss for lack of personal jurisdiction. *Id.* at 1267 & 1271.

The court denied the motion and held that it had personal jurisdiction over Aeroflot because it "transacted business" in Nebraska when a travel agent sold Aeroflot tickets to plaintiffs. *Id.* at 1270. Plaintiffs purchased their Aeroflot tickets from an authorized travel agent in Nebraska ("Bock"). *Id.* at 1267. Bock was an authorized agent of Pan American World Airways, Inc. ("Pan Am"), which was an authorized agent of Aeroflot. *Id.* at 1270.

> To facilitate the purchase of airline tickets on diverse airlines, air carriers have formed the International Air Transport Association [("IATA")], of which Pan Am is a member. The Association is comprised of numerous carriers which, by issuing a certificate of authority, can authorize a travel agency to issue airline tickets. Under this arrangement, Bock retained a portion of the purchase price of plaintiffs' tickets as commission, and forwarded the remainder to an Area Settlement Bank. The Bank disburses the monies to the appropriate carriers. Significantly, a portion of the travel agent's commission is paid by each carrier. Thus, in this case, Aeroflot paid a prorata portion of the commission retained by Bock. Approximately once a month, Bock prepares tickets where Aeroflot is designated as one of the carriers. . . . The defendant has no offices or employees within Nebraska; however, travel agents are given advertising material.

*Id.* at 1270. Ultimately, "[t]he Court [was] persuaded by such factors as the express agency agreements, and the payment of a commission, that defendant was transacting business in Nebraska when the plaintiffs purchased their tickets. . . . [and] conclude[d] that the cause of action arose from the Nebraska transaction . . . ." *Id.*

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 15 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

Here, just like in *Vergara*, United acted as Germanwings' authorized agent in Virginia when it sold Yvonne and Emily their plane tickets for Flight 9525. First, United has repeatedly admitted during this litigation that it acted as Germanwings' agent when it sold Yvonne and Emily their tickets. (Mem. of Law 4, 13, & 14, ECF No. 15 ("United acted as an agent only for the limited purpose of the sale of those interline tickets . . . ."); Reply Mem. 13, ECF No. 37.)

Second, both United and Germanwings claim that the tickets for Flight 9525 were sold pursuant to an interline agreement. (Akbari Decl. ¶ 39, Ex. 36, ¶ 9 & 14; Mullins Decl. ¶ 25, ECF No. 43-1.) Assuming, *arguendo*, that this is true, this agreement incorporates the "terms and conditions of Article 1 through 8 of IATA Resolution 780 . . . ." (Mullins Decl. ¶ 25, Ex. B, p. 1, ECF No. 43-1.) Just like in *Vergara*, an IATA arrangement created an express agency agreement for United to act on behalf of Germanwings.

In *Vergara*, Aeroflot authorized Pan Am (as well as its agents, like Bock) to sell Aeroflot plane tickets pursuant to an IATA certificate of authority. 390 F. Supp. at 1270. Here, Germanwings authorized United to sell its plane tickets pursuant to IATA Resolution 780, which reads: "[T]he parties hereto operate scheduled air transportation services, and desire to enter into arrangements under which each party may sell transportation over the routes of the others . . . ." (Appleby Decl. ¶ 3, Ex. 21, p. 1.) "On issuing or completing tickets . . . for transportation over the routes of other parties hereto, [United] shall be deemed to act only as an Agent of [Germanwings]." (*Id.* at 8.) Germanwings also ratified United's actions by honoring Yvonne and Emily's tickets and paying United a commission ("interline service charge"). (*Id.* at 7-8.)

Also, in *Vergara*, Bock "retained a portion of the purchase price of plaintiffs' tickets as commission, and forwarded the remainder" to a bank that disbursed the money to Aeroflot. 390 F. Supp. at 1270. Here, United retained a portion of the purchase price of Yvonne and Emily's tickets for Flight 9525 as a commission and forwarded the remainder to Germanwings. (Ex. 21, p. 7-8; Reply Mem. 13, ECF No. 37 (United admitting that it "receives an 'interline service charge' for issuing the tickets . . . .").)

To paraphrase *Vergara*, because of "the express agency agreements, and the payment of a

commission, [Germanwings] was transacting business in [Virginia[7]] when [Yvonne and Emily] purchased their tickets" from United. 390 F. Supp. at 1270. This is because "the sale and distribution of airline tickets are essential to the air carriers and the fact that the tickets are for flights outside of this state is immaterial" to minimum contacts analysis. *Benjamin*, 17 CCH Avi at 17,287 (Ex. 37). Germanwings purposefully availed itself to the privileges of conducting business in Virginia by selling its tickets through its agent, United.

> ### ii. Plaintiffs' claims arise out of Germanwings' sale of its Flight 9525 tickets to Yvonne and Emily Selke in Virginia, which is where their journey began and was scheduled to end.

Germanwings tries to minimize the fact that it reached into Virginia (using its agent, United) to sell Yvonne and Emily their tickets for Flight 9525 by relying on a case that is distinguishable and inapplicable. *OBB Personenverkehr AG* is a Foreign Sovereign Immunities Act ("FSIA") case that does not apply to plaintiffs' Montreal Convention claim. While the FSIA is designed to *immunize* foreign nations from defending lawsuits in the U.S. (136 S. Ct. at 391), the Montreal Convention does the opposite by making carriers *strictly liable* to passengers for their injuries.[8] The Montreal Convention's very purpose was to expand personal jurisdiction and put a stop to the requirement that U.S. residents have to litigate their wrongful death claims in foreign countries—and that was at the insistence of the U.S. and United itself. (Section III below.) Also, the *OBB* court did not decide whether plaintiff's claim *arose out of* defendant's contacts with the forum, but instead decided only whether defendant's acts met the "commercial activity" immunity exception to FSIA for purposes of *liability*. *Id.* at 398. *OBB* is simply not a personal jurisdiction case.

In fact, the U.S. Supreme Court recently reminded us that, when analyzing personal

---

[7] The Virginia long-arm statute is identical to the Nebraska long-arm statute relied upon by the court in *Vergara. Compare Vergara*, 390 F. Supp. at 1270, *with* Va. Code Ann. § 8.01-328.1.

[8] "1. For damages . . . not exceeding 100 000 Special Drawing Rights for each passenger, the carrier shall not be able to exclude or limit its liability. 2. The carrier shall not be liable for damages . . . to the extent that they exceed for each passenger 100 000 [SDRs] if the carrier proves that: (a) such damage was not due to the negligence or other wrongful act or omission of the carrier or its servants or agents; or (b) such damage was solely due to the negligence or other wrongful act or omission of a third party." (Ex. 3, Montreal Convention art. 21.)

jurisdiction, "[t]he proper question is *not where the plaintiff experienced a particular injury* or effect but whether the defendant's conduct connects him to the forum in a meaningful way."*Walden v. Fiore*, 134 S. Ct. 1115, 1125 (2014) (emphasis added). This is why, in cases where a foreign airline sells a plane ticket to a passenger in the passenger's home state, but then causes the passenger harm outside of that state during the journey, the passenger's claim "arises out of" the airline's sale of the ticket. *Vergara*, 390 F. Supp. at 1270 (harm suffered in Pakistan arose out of the sale of Russian airline tickets by an agent in Nebraska); *see also Mohler v. Dorado Wings, Inc.*, 675 S.W.2d 404, 406-07 (Ky. Ct. App. 1984) (jewelry that was stolen during a flight from Puerto Rico to the Virgin Islands arose out of the sale of the airline's tickets by another airline in Kentucky); *Benjamin*, 17 CCH Avi at 17,286-87 (Ex. 37) (it was "immaterial" that the trip took place outside of Illinois because the tickets were sold to plaintiffs in Illinois by the agent of a foreign airline pursuant to an interline agreement); *Broadus v. Delta Air Lines, Inc.*, 101 F. Supp. 3d 554, 560-61 (M.D.N.C. 2015) (genesis of the dispute was the ticket sale in North Carolina, where the journey began, when plaintiff was harmed during a layover in Georgia).

Here, because Germanwings transacted business in Virginia through its agent, United, plaintiffs' claims for the deaths of Yvonne and Emily Selke during their journey arise out of the sale of the Flight 9525 tickets in Virginia. Flight 9525 was only one leg of plaintiffs' decedents' entire journey, which began in Virginia and was scheduled to end there. (Ex. A, ECF 43-1.) United not only sold plaintiffs' decedents their tickets in Virginia on behalf of Germanwings, it also forced them to travel on Germanwings' Flight 9525. (Complaint ¶ 40-43; Selke Decl. ¶ 5 & 10-13.) Plaintiffs' decedents only intended to travel from Virginia to Spain and England and return home; they only flew through Germany because United required it due to its business relationship with Germanwings. (*Id.*) But for Germanwings' business relationship with United, Yvonne and Emily Selke would have never been aboard Flight 9525. (*Id.*)

### iii.  Germanwings, a major international airline, concedes[9] that it would be

---

[9] Germanwings conceded this point by citing to this prong of personal jurisdiction analysis in its motion to dismiss but then failing to argue it. (*See* Mem. of Law 13-14, ECF No. 43; *Hunt*, 57

*Footnote continued on next page*

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 18 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

**constitutionally reasonable for it to defend this action in Virginia.**

As the party moving to dismiss for lack of personal jurisdiction, Germanwings has the burden to show that this court's "exercise of jurisdiction would be so unfair as to violate due process." *Reynolds Foil Inc. v. Pai*, No. 3:09CV657, 2010 WL 1225620, at *1 (E.D. Va. Mar. 25, 2010). Germanwings, a major international airline, cannot meet its burden. First, Germanwings cannot make a profit from selling its tickets to Virginia residents through United (which has significant contacts with Virginia) and then claim that it would be too much of a burden for it to defend this action in Virginia. After all, Germanwings admits that it has a global business presence in that it "operates flights to 103 destinations worldwide, and operates approximately 1685 flights worldwide each day . . . [including] Europe and Northern Africa." (Mullins Decl. ¶ 46, ECF No. 43-1.) Both plaintiffs and the Commonwealth of Virginia have a significant interest in the adjudication of this dispute given that Emily Selke, Yvonne Selke, and their family, plaintiffs, are and were all Virginia residents, the plane tickets were sold in Virginia, and the trip began and was ticketed to end in Virginia. *Broadus*, 101 F. Supp. 3d at 561; *Manley v. Air Canada*, 753 F. Supp. 2d 551, 561 (E.D.N.C. 2010) (Canadian airline was required to defend an action in North Carolina even though the contract at issue was governed by Canadian law).

Germanwings sold its tickets for Flight 9525 to plaintiffs' decedents in Virginia through United, and plaintiffs' claims arise out of the sale of those tickets. It would not be constitutionally unreasonable for Germanwings, a major international airline, to defend this action in Virginia. Plaintiffs have made a prima facie showing of a sufficient jurisdictional basis over Germanwings.

### b. Lufthansa and Eurowings concede[10] that this court has personal jurisdiction over them pursuant to FRCP 4(k)(2).

Both Lufthansa and Eurowings (the successor corporation to Germanwings) have sufficient contacts with the U.S. as a whole to subject them to personal jurisdiction in this court

---

*Footnote continued from previous page*
F.3d at 1338; *Pusey*, 938 F.2d at 501 n.4.)

[10] By not arguing it in their motion, Lufthansa and Eurowings concede that they are subject to personal jurisdiction pursuant to FRCP 4(k)(2). (Complaint ¶ 7, 17-19, 21-23; *see* Mem. of Law 11-20, ECF No. 43; *Hunt*, 57 F.3d at 1338; *Pusey*, 938 F.2d at 501 n.4.)

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 19 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

under FRCP 4(k)(2).[11] (Complaint ¶ 7, 17-19, 21-23.) "For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." FRCP 4(k)(2). This "corrects a gap in the enforcement of federal law" where defendants were "shielded from the enforcement of federal law by the fortuity of a favorable limitation on the power of state courts . . . ." Committee Notes to 1993 Amendments to Fed. R. Civ. P. 4, 146 FRD 401, 571.

First, plaintiffs' Montreal Convention claim against Lufthansa and Eurowings "arises under federal law" because the Montreal Convention is a ratified, international treaty. 28 U.S.C. § 1331; *see Vumbaca v. Terminal One Grp. Ass'n L.P.*, 859 F. Supp. 2d 343, 360 (E.D.N.Y. 2012). Second, both defendants have filed a waiver of service. (Waiver of Service, ECF No. 24.)

Third, exercising jurisdiction over Lufthansa and Eurowings is consistent with the U.S. Constitution and laws because they have "sufficient contacts with the United States as a whole." *Graduate Mgmt. Admission Council*, 241 F. Supp. 2d at 597. Eurowings is a German corporation that offers eight flights a week to Miami, Florida but somehow also claims it has no employees in the United States.[12] (Mullins Decl. ¶ 9 & 55-56, ECF No. 43-1.) And while Mr. Mullins declares that Eurowings won't be offering flights to Las Vegas, Orlando, and Seattle until the summer of 2017 (*Id.* ¶ 55), Eurowings' own website states the opposite: "Since autumn 2015, [Eurowings] has been offering more than 140 low-cost connections . . . to attractive long-haul destinations such as . . . Miami, Orlando, Las Vegas, Seattle . . . ." (Akbari Decl. ¶ 37, Ex. 34; RJN No. 15.). Further doubt is cast upon Eurowings' claim that it has little contact with the U.S. because it has been registered to conduct business and has had an agent for service of process in: (i) Florida,

---

[11] Plaintiffs are permitted to alternatively argue for specific personal jurisdiction as well as Rule 4(k)(2) jurisdiction. *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 600 (E.D. Va. 2003); *Bright Imperial Ltd. v. RT MediaSolutions, S.R.O.*, No. 1:11-CV-935-LO-TRJ, 2012 WL 1831536, at *7 (E.D. Va. May 18, 2012); *see* Fed. R. Civ. P. 8(d)(2).

[12] It is difficult to imagine how Eurowings could operate eight flights a week out of Miami without Florida employees to run the airport ticket counter, baggage handling, and gate operations.

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025
- 20 -
PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

Nevada, and Massachusetts since January 2016; and (ii) Washington since January 2017. (*Id.* ¶ 32-35, Exs. 29-32; RJN No. 16.) Eurowings also has a website directed at soliciting business from U.S. customers that is in English whereby Eurowings markets tickets to U.S. customers flying out of Las Vegas, Orlando, Seattle, or Miami. (*Id.* ¶ 36, Ex. 33; RJN No. 17.)[13]

Lufthansa is also a German corporation with ample national U.S. contacts. (Mullins Decl. ¶ 3-4.) It has an office in New York; flies to and from 19 different U.S. destinations (including Virginia); operates 226 flights to the U.S. each day (three of which go to Virginia); and employs 430 people in the U.S. (17 of them in Virginia). (*Id.* ¶ 42-45.) Lufthansa has an English website directed at soliciting business from U.S. customers whereby Lufthansa markets tickets to U.S. customers flying out of Atlanta, Boston, Chicago, Charlotte, Dallas, Denver, Detroit, Houston, Las Vegas, Los Angeles, Miami, New York, Orlando, Philadelphia, San Francisco, San Diego, San Jose, Tampa, or Washington DC. (*Id.* ¶ 38, Exs. 35; RJN No. 18.) Lufthansa earned approximately 5,250,000,000 euro in U.S. revenue in 2015 and 4,359,000,000 euro in U.S. revenue in 2014. (Ex. 18, at 178-79; RJN No. 19.)

Fourth, "[o]nce the plaintiff has made a prima facie showing that the defendant's contacts with the nation as a whole satisfy the constitutional requirements, 'the burden shifts to the defendant to produce evidence which, if credited, would show either that one or more specific states exist in which it would be subject to suit or that its contacts with the United States are constitutionally insufficient.'" *Silver Ring Splint Co. v. Digisplint, Inc.*, 508 F. Supp. 2d 508, 516 (W.D. Va. 2007). Lufthansa and Eurowings failed to meet their burden in their motion to dismiss because they only argued that they were not subject to *this* court's jurisdiction and did not address plaintiffs' allegations of FRCP 4(k)(2) jurisdiction. (*See* Mem. of Law 11-20, ECF No. 43.)

Because plaintiffs' Montreal Convention claims arise under federal law; Eurowings and Lufthansa filed waivers of service; they both have sufficient contacts with the U.S. as a whole; and they failed to meet their burden of showing that they are subject to personal jurisdiction in a

---

[13] Because Eurowings merged with Germanwings after the crash (Part II(b) below), Germanwings is also subject to FRCP 4(k)(2) jurisdiction based on Eurowings' national contacts.

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 21 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

U.S. court of general jurisdiction, this court has FRCP 4(k)(2) jurisdiction over them.

## II. LUFTHANSA AND EUROWINGS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

### a. Germanwings, Lufthansa, and Eurowings are subject to this court's jurisdiction and are liable for the crash of Flight 9525 pursuant to their agency, partnership, and/or joint venture relationship with United.

Only Lufthansa and Eurowings (but not Germanwings) dispute plaintiffs' claim that they are subject to this court's jurisdiction and liable for the crash of Flight 9525 pursuant to their agency, partnership, and/or joint venture relationship with United.[14] (Complaint ¶ 10-11, 26-27, 37, 40-43, 80-81, & 93-94; *see* Mem. of Law 25-26, ECF No. 43.) Alternate bases of liability, such as alter ego and joint venture liability, "can be asserted under the [Montreal] Convention, if they are recognized under the law of the forum." *In re Air Crash Near Rio Grande Puerto Rico on Dec. 3, 2008*, No. 10-CV-81551, 2015 WL 328219, at *4 (S.D. Fla. Jan. 23, 2015) (hereinafter "*Air Crash Near Rio Grande*"); *see* Ex. 3, Montreal Convention art. 37.)[15] Genuine issues of material fact exist regarding these bases of jurisdiction and liability.

First, Virginia law holds defendants liable and subject to personal jurisdiction based on their involvement in a partnership/joint venture relationship. *Roark v. Hicks*, 234 Va. 470, 475 (1987). Although Lufthansa and Eurowings claim that they are not in a partnership/joint venture relationship with United, defendants' public financial filings tell a different story. (Exs. 17-18; RJN Nos. 3-4.) United's Securities and Exchange Commission ("SEC") 10-K report[16] for 2015 states that it "participates in joint ventures . . . [with] Lufthansa Group" that enable them to

---

[14] All defendants admit that plaintiffs have valid Montreal Convention claims, only disputing which of them is liable. (*See* Mem. of Law 20-26, ECF No. 43; *see* Mem. of Law 11-20, ECF No. 15.)

[15] Also, defendants may not disclaim these liabilities through any "Contract of Carriage" because to do so would be invalid, unconscionable, and violate Article 26: "Any provision tending to relieve the carrier of liability or to fix a lower limit than that which is laid down in this Convention shall be null and void . . . ." (Ex. 3, Montreal Convention art. 26.)

[16] "The annual report on Form 10-K provides a comprehensive overview of the company's business and financial condition and includes audited financial statements." *Form 10-K*, U.S. Securities and Exchange Commission (Apr. 24, 2017, 2:48 PM), https://www.sec.gov/fast-answers/answers-form10khtm.html.

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 22 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

"integrate services they provide in the respective regions, capturing revenue synergies and delivering highly competitive flight schedules, fares and services." (Ex. 17, at 5.) Lufthansa's 2015 annual financial report confirms this joint venture relationship and admits that Germanwings and Eurowings are both part of the Lufthansa Group. (Ex. 18, at U3 & 44.)

Second, assuming, *arguendo*, that United sold the tickets for Flight 9525 pursuant to its interline agreement with Germanwings, the terms of that agreement create a partnership/joint venture relationship. The interline agreement has an Illinois choice of law provision (Mullins Decl. ¶ 25, Ex. B, at 3) and Illinois law holds defendants liable and subject to personal jurisdiction based on their involvement in a partnership/joint venture relationship. *Wendt v. Handler, Thayer & Duggan, LLC*, 613 F. Supp. 2d 1021, 1030 (N.D. Ill. 2009); *Smith v. Metro. Sanitary Dist. of Greater Chicago*, 77 Ill. 2d 313, 318 (1979). And while the interline agreement claims that no agency, partnership, or joint venture relationship is created, the "**parties' labels do not control**." *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92, 100 (N.D. Ill. 2013) (emphasis added).

The interline agreement incorporates the terms of IATA Resolution 780, which state that both United and Germanwings expressly agreed to "sell transportation over the routes of the others" whereby Germanwings made a profit by selling its tickets through United to U.S. customers and United collected an "interline service charge" for making these sales. (Ex. 21, at 1 & 7; RJN No. 7.) United had to issue Germanwings tickets "in the form approved by" Germanwings; United could not issue any Germanwings tickets or receive its interline service charge until United "received payment of the total charges"; United could not change or refund Germanwings tickets unless it "observ[ed] . . . any restrictions" of Germanwings; and United could not make any representations regarding Germanwings' tickets "except those representations specifically authorised by" Germanwings. (*Id.* at 2, 3, & 8; RJN No. 8.)

Third, the terms of the interline agreement created an agency relationship between United and Germanwings, which is a recognized basis for liability and personal jurisdiction in Illinois and Virginia. *Kaporovskiy v. Grecian Delight Foods, Inc.*, 338 Ill. App. 3d 206, 210 (2003); *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 534 (E.D. Va. 2009). Germanwings had

a great deal of control over how United sold its plane tickets for Flight 9525 to Yvonne and Emily, Germanwings held out United as its agent and induced reliance by Yvonne and Emily based on that appearance, and Germanwings ratified United's sale of the tickets by honoring Yvonne and Emily's tickets and paying Germanwings a commission. (Ex. 21 at 1-3 & 7-8; RJN Nos. 7-8; Selke Decl. ¶ 9-16; *Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004); *ABN AMRO, Inc. v. Capital Int'l Ltd.*, 595 F. Supp. 2d 805, 821 (N.D. Ill. 2008).)

> **b.   Eurowings is both liable and subject to this court's jurisdiction because it has merged with Germanwings and is therefore its successor corporation.**

Plaintiffs sufficiently allege that Eurowings is the successor corporation to Germanwings, which makes Eurowings both liable and subject to personal jurisdiction in this court. (Complaint ¶ 22 & 26-27; *City of Richmond, Va. v. Madison Mgmt. Grp., Inc.*, 918 F.2d 438, 454-55 (4th Cir. 1990).) Defendants argue that Germanwings is still in existence today and has never merged with Eurowings. (Mem. of Law 3, ECF No, 43.) Mr. Mullins declares that, since the crash of Flight 9525, "Germanwings and Eurowings have operated their respective commercial airlines as separate and distinct business entities." (Mullins Decl. ¶ 13, ECF No. 43-1.) While plaintiffs have not had the opportunity to conduct discovery regarding this issue, other evidence reveals that parent corporation Lufthansa has in fact merged Germanwings with Eurowings.

For example, Lufthansa recently announced that its airlines were dropping the "two in the cockpit" rule they adopted after the Flight 9525 crash. (Ex. 22; RJN No. 10.) While reporting this news, the BBC also stated that Germanwings merged with Eurowings in 2015. (*Id.*; RJN No. 11.) In 2016, Reuters reported that "Lufthansa has been putting Eurowings through a major transformation in recent years, and has merged its operations with that of the company's other low-cost subsidiary, Germanwings." (Ex. 23; RJN No. 11.) At the time of the Flight 9525 crash in 2015, the Chicago Tribune reported that "[t]he Germanwings brand will be merged into Eurowings later this year for sales purposes, . . . although passengers will still see planes painted with Germanwings markings for the time being and Germanwings flight codes will remain." (Ex. 24; RJN No. 11.) As part of this merger, Germanwings transferred 60 of its routes to Eurowings

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 24 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

in 2015, and Eurowings absorbed 60 aircraft from Germanwings. (Exs. 25-27; RJN No. 12.)

In fact, according to Lufthansa's website, "short- and medium-haul flights of the two existing airlines Germanwings and Eurowings, with their existing networks and crews have flown under the umbrella brand of the new Eurowings" since November 2015. (Ex. 28 RJN No. 13.) The Germanwings website is no longer in existence and it redirects customers to Eurowings' website, which reads: "Modelled [sic] on the successful Germanwings, the new, standalone low-cost airline group was founded under the brand Eurowings." (Ex. 34; RJN No. 14.) According to the U.S. Department of Transportation, the codeshare agreement between Germanwings and United in effect in 2015 includes "Eurowings d/b/a Germanwings." (Ex. 43; RJN No. 22.)  Thus, Plaintiffs respectfully request discovery concerning the merger of Germanwings with Eurowings. *Base Metal Trading, Ltd.*, 283 F.3d at 216 n.3.

### c.   The Montreal Convention does not preempt plaintiffs' negligence claim.

According to Article 29, "any action for damages, *however founded*, whether under this Convention *or in contract or in tort or otherwise*, can only be brought subject to the conditions and such limits of liability as are set out in this Convention . . . ." (Ex. 3, Montreal Convention art. 29 (emphasis added).) Therefore, the Montreal Convention expressly contemplates that alternative actions may be brought, such as plaintiffs' negligence claim.

### d.   Plaintiffs request leave to conduct discovery in order to oppose Lufthansa and Eurowings' motion for summary judgment pursuant to FRCP 56(d).

Because Lufthansa and Eurowings filed a motion for summary judgment as their initial response to the complaint, prior to making their FRCP 26 disclosures, this court should either deny their motion or allow plaintiffs to conduct discovery. Fed. R. Civ. P. 56(d). Also, because this motion makes no clear distinction between FRCP 12 and 56, plaintiffs should also be allowed to conduct discovery regarding jurisdictional issues as to all defendants. *Id.*

Although plaintiffs have demonstrated herein that there are triable issues of material fact concerning agency, partnership, joint venture, and/or successor corporation liability for Lufthansa and/or Eurowings, the majority of the evidence and information about defendants' business

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 25 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

relationship is privately held by defendants and only obtainable by plaintiffs through discovery. (Akbari Decl. ¶ 2.) They seek defendants' commercial agreements, as well as to depose the persons most knowledgeable concerning those agreements and the revenues defendants earn from them, and details of the merger of Germanwings with Eurowings. (*Id.* ¶ 3.)

### III.   THIS COURT HAS MONTREAL CONVENTION ARTICLE 33 PERSONAL JURISDICTION OVER DEFENDANTS[17]

Plaintiffs have met the requirements of Article 33 of the Montreal Convention for personal jurisdiction vis-à-vis each defendant. (Complaint ¶ 1, 3, 6, 8, 24, 41, 43, & 73-74.) Germanwings[18] argues against this basis of jurisdiction in a footnote with only two cases, neither of which analyze the Montreal Convention as required by the U.S. Supreme Court in *Air France v. Saks*, 470 U.S. 392, 396-405 (1985).[19] In fact, the Court recently cited to *Air France* as the standard for analyzing treaties in its unanimous[20] decision in *Water Splash, Inc. v. Menon*, No. 16-254, 2017 WL 2216933, at *6 (U.S. May 22, 2017).

By arguing that Article 33 only provides subject matter jurisdiction, Germanwings ignores that "[t]he Montreal Convention is not an amendment to the Warsaw Convention. . . . [but] an entirely new treaty that unifies and replaces the system of liability that derives from the Warsaw Convention." *Ehrlich v. Am. Airlines, Inc.*, 360 F.3d 366, 371 (2d Cir. 2004). Indeed, one of the major flaws of the Warsaw Convention, which the drafters of the Montreal Convention corrected by expanding jurisdiction in Article 33, was that it did not always allow the families of those who died in aviation crashes to bring lawsuits in their home countries. (*See e.g.,* Akbari Decl. ¶ 10, Ex. 5, Exec. Rpt. No. 108-8, at 39 (July 29, 2003) (the family of a California resident who died in a

---

[17] Plaintiffs incorporate by reference the arguments concerning Article 33 jurisdiction from their opposition to United's concurrent motion to dismiss. (Mem. of Law 14-24, ECF No. 36.)

[18] Lufthansa and Eurowings concede this point by failing to argue it in their motion. (*See* Mem. of Law 15 n. 4, ECF No. 43; *Hunt*, 57 F.3d at 1338; *Pusey*, 938 F.2d at 501 n.4.)

[19] *Weinberg v. Grand Circle Travel, LCC*, 891 F. Supp. 2d 228, 239 (D. Mass. 2012) (finding that the Montreal Convention did not apply); *Luna v. Compania Panamena De Aviacion, S.A.*, 851 F. Supp. 826, 831 (S.D. Tex. 1994) (analyzing personal jurisdiction under the Warsaw Convention, which did not have the expanded jurisdiction provided by the Montreal Convention).

[20] Justice Gorsuch did not participate in the *Water Splash, Inc.* decision.

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 26 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

plane crash between Italy and Denmark had to litigate "costly and time-consuming disputes in four countries"); Ex. 6, MC Documents 104 (the families of several U.S. citizens who died when their plane was shot down by a Soviet fighter jet while on its way to South Korea had to litigate their cases in foreign jurisdictions, resulting in "inequitable recoveries").)

When Article 33 is analyzed properly, its legislative history (or "travaux preparatoires") reveals that the intent of the drafters was to expand jurisdiction so that an airline could be sued in the state where the plaintiff lives so long as the airline has certain minimum contacts with that state. (*Air France*, 470 U.S. at 396-405; Pls.' Opp'n 14-23, ECF No. 36; Akbari Decl. ¶ 8-21, Exs. 3-16.) For example, (i) Article 33's plain language refers simply to "jurisdiction" and does not differentiate between personal and subject matter jurisdiction; (ii) Articles 29, 34, and 49 limit jurisdiction exclusively to the places listed in Article 33; (iii) the original French text and its legal meaning give courts an automatic, all-encompassing jurisdiction; and (iv) our sister signatory nations (including the United Kingdom, France, Canada, and Germany) interpret Article 33 as providing an exclusive basis of jurisdiction that overrides domestic law. (*Id.*)

In fact, expanding jurisdiction in the Montreal Convention was so essential for U.S. ratification that the U.S. made it known during the conference where the treaty was drafted that it *would not* ratify the treaty unless jurisdiction was expanded. (Ex. 12, MC Preparatory 243; Ex. 6, MC Documents 102.)

> The United States felt strongly about [expanding jurisdiction] . . . as it had seen the plight of the survivors of aviation crashes when they were in bereavement, their lives devastated by a horrible event, and some were compelled, under those circumstances, to undertake litigation in a distant place that had little or nothing to do with their way of life, with how their financial plans were arranged, or with any of their reasonable expectations as to what life would bring them. . . .

(Ex. 11, MC Minutes 107.)

Of course the U.S.'s intent to expand jurisdiction to where the victims' families live and where the carriers have sufficient minimum contacts is further demonstrated by the records of the U.S. Senate's ratification of the Montreal Convention. *See Ehrlich*, 360 F.3d at 371 n.4 (reviewing the Senate's ratification of the Montreal Convention in order to interpret its terms).

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025
- 27 -
PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

During the meeting of the U.S. Senate Committee on Foreign Relations, where it considered whether to ratify the Montreal Convention, the Honorable Jeffrey Shane, Under Secretary for Policy at the U.S. Department of Transportation, recommended the ratification of the Montreal Convention and voiced his opinion that:

> [u]nder the new Convention, an action on behalf of a U.S. citizen . . . that was permanently resident in the United States at the time of the accident may be brought in a U.S. court as long as the carrier meets certain reasonable tests to determine whether it has a commercial presence in the United States . . . .

(Ex. 5, at 15.) John R. Byerly, Deputy Assistant Secretary of the State for Transportation Affairs, also expressed his support for ratification of the Montreal Convention, highlighting the benefit of the expanded jurisdiction for American families of international plane crash victims:

> [T]he Montreal Convention, if ratified, will make a true difference in the lives of American citizens. It will facilitate prompt assistance to survivors and to the relatives of victims. It will bypass time-consuming litigation over the myriad complexities of the Warsaw legal patchwork, and it will also end the burden imposed on so many American families of having to pursue legal redress far from home, in foreign legal systems, at great expense, and with huge uncertainty.

(*Id.* at 17.) Mr. Byerly then had the following exchange with the Chairman where he explained the impact of the Montreal Convention's expanded jurisdiction for U.S. citizens:

> THE CHAIRMAN. . . . When you have mentioned, Mr. Byerly, that the Montreal Protocol would clear up the problem of attempting to bring suits or legal action in far-off countries, do you mean by this that an American citizen who was aggrieved could seek redress in American courts? In other words, how does this simplification occur?
>
> MR. BYERLY. Precisely as you stated, Mr. Chairman. The Montreal Convention *creates for the first time a basis of jurisdiction*, the so-called fifth basis of jurisdiction, in addition to the four bases of jurisdiction in which the courts of any State party to the Warsaw system could hear a case. This allows jurisdiction by the U.S. courts not only in cases against an airline that is domiciled or has its principal place of business here, or where the passenger's destination was the United States, or where the passenger made the contract for carriage in the United States, *but in addition, where the passenger has his principal and permanent residence* in all cases where the carrier serves the United States, with its own air craft or through a commercial agreement such as code-sharing, and that carrier has a presence here. It can have that presence either itself, in its own name, or through a code-share partner. *Given the vastness of the United States' aviation relations with countries and carriers around the world, virtually all American citizens who*

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 28 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

> *are injured or killed in airline accidents should be able to obtain access to U.S. courts through this fifth basis of jurisdiction.*
>
> *This has been a longstanding objective of the United States. It was one that was opposed by many others, and in achieving that in 1999, we achieved the breakthrough that was critical, and that we had sought for decades.*

(*Id.* at 21-22 (emphasis added).)

Even United Airlines and other U.S. carriers believed that the expansion of jurisdiction was important, and it made such a statement to the Committee on Foreign Relations by way of their representative, the Air Transportation Association of America:

> The Montreal Convention reflects many improvements that will bring up to date the application of the Warsaw system's rules. *Important among these is the addition of a rule that expands the jurisdictional options available to passengers in the case of transportation that is not to and from the passenger's state of principal and permanent residence, the so-called fifth basis of jurisdiction.* The Air Transport Association of America has been a consistent supporter of this reform, which we hope will encourage courts to apply the law of passengers' country of residence to determine the amount of damages to which they are entitled.

(*Id.* at 40-41 n.1 (emphasis added).)

Finally, in its Report, the Senate expressed its view that "[u]nder Article 33, . . . U.S. courts will have jurisdiction in nearly all cases involving death or personal injury to passengers who reside in the United States, thus eliminating the need for such passengers or their heirs to bring suit in foreign courts in order to obtain jurisdiction over air carriers." (*Id.* at 4.)

When the U.S. ratified the Montreal Convention with the intent of expanding jurisdiction to places where both the carrier and the victims had sufficient minimum contacts, it created an all-encompassing jurisdictional rule that governs in Montreal Convention cases and overcomes domestic jurisdiction rules. *Berner*, 2 Misc. 2d at 263; *see* U.S. Const. art. VI; *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 111 (1987); *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 711 (1982) (Powell, J., concurring); *see e.g.,* 28 U.S.C. § 1330(b) (establishing personal jurisdiction without reference to domestic law).

In our case, Article 33 provides personal jurisdiction in Virginia on several grounds.  First, Virginia is "where [the carrier] has a place of business through which the contract was made" (Ex.

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 29 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT OF DEFENDANTS GERMANWINGS GMBH, ET AL.

3, Montreal Convention art. 33(1)) because Emily and Yvonne purchased their plane tickets in, departed from, and were to return to Virginia (Complaint ¶ 3, 43, & 73-74; Selke Decl. ¶ 9-10). *Polanski v. KLM Royal Dutch Airlines*, 378 F. Supp. 2d 1222, 1231 (S.D. Cal. 2005).

Second, this action is "before the court at the place of destination" (Ex. 3, Montreal Convention art. 33(1)) because Emily and Yvonne's ultimate destination was Virginia, the place where their trip began and was ticketed to end (Complaint ¶ 41; Selke Decl. ¶ 3 & 10). *Baah v. Virgin Atl. Airways Ltd.*, 473 F. Supp. 2d 591, 597 (S.D.N.Y. 2007); *see also Hornsby v. Lufthansa German Airlines*, 593 F. Supp. 2d 1132, 1136 n.3 (C.D. Cal. 2009).

Third, Virginia was the "principal and permanent residence" of Yvonne and Emily (Complaint ¶ 6; Selke Decl. ¶ 3), and also where United "operates services for the carriage of passengers by air . . . and . . . conducts its business of carriage of passengers by air from premises leased or owned by the carrier . . . ." (Complaint ¶ 1, 8, 24, & 41; Selke Decl. ¶ 6 & 10; Ex. 3, Montreal Convention art. 33(2)-(3)). Because defendants assert that Germanwings has an interline agreement (i.e. "commercial agreement"[21]) with United by which the Flight 9525 tickets were sold in Virginia, where plaintiffs' decedents' European journey began, plaintiffs' claims fall within the "fifth jurisdiction" of the Montreal Convention. (*Id.* art. 33(2); RJN Nos. 20-21.)

## CONCLUSION

The intent behind the Montreal Convention is to "ensur[e] the protection of the interests of consumers in international carriage by air." (Ex. 3, Montreal Convention 2.) The U.S. ratified the Montreal Convention because it contains the expanded jurisdiction in Article 33 that allows the families of American passengers who die in overseas plane crashes to bring lawsuits in U.S. courts against foreign carriers. (Ex. 12, MC Preparatory 243; Ex. 6, MC Documents 102; Ex. 11, MC Minutes 107.) Defendants' motion to dismiss and/or for summary judgment should be denied because it would defeat the purpose of the Montreal Convention to allow defendants to escape liability for the deaths of U.S. passengers Yvonne and Emily Selke.

---

[21] "It is generally accepted that interline agreements, codeshare agreements, alliance agreements, blocked space agreements and similar intercarrier marketing agreements, fall within the scope of 'commercial agreement' as used in [Article 33]." (Akbari Decl. ¶ 44, Ex. 43, at 37.)

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 30 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

Dated: May 24, 2017

Respectfully submitted,

**MILLER DELLAFERA, PLC**


By:_____/s/_____
        Thomas F. DellaFera Jr., Esq.

Thomas F. DellaFera Jr., Esq.
*tdellafera@millerdellafera.com*
MILLER DELLAFERA, PLC
3420 Pump Road, PMB 404
Henrico, Virginia 23233
Tel: (800) 401-6670
Fax: (888) 830-1488

**BAUM HEDLUND ARISTEI & GOLDMAN, PC**
Ronald L.M. Goldman, Esq. (California Bar No. 33422)
*rgoldman@baumhedlundlaw.com*
*[Admitted pro-hac vice]*
A. Ilyas Akbari, Esq. (California Bar No. 228051)
*iakbari@baumhedlundlaw.com*
*[Admitted pro-hac vice]*
Diane Marger Moore, Esq. (Virginia Bar. No. 88879)
*dmargermoore@baumhedlundlaw.com*
12100 Wilshire Boulevard., Suite 950
Los Angeles, California  90025-7114
Telephone:  (310) 207-3233
Facsimile:  (310) 207-4204
*Attorneys for Plaintiffs*

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 31 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.

## CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2017, I electronically filed **PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT OF DEFENDANTS GERMANWINGS GMBH, DEUTSCHE LUFTHANSA AG, AND EUROWINGS GMBH PURSUANT TO FED. R. CIV. P. 12(B)(2) AND 56; DECLARATION OF A. ILYAS AKBARI, ESQ. IN SUPPORT OF PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT OF DEFENDANTS GERMANWINGS GMBH, DEUTSCHE LUFTHANSA AG, AND EUROWINGS GMBH FED. R. CIV. P. 12(B)(2) AND 56; DECLARATION OF CRAWFORD APPLEBY, ESQ. IN SUPPORT OF PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT OF DEFENDANTS GERMANWINGS GMBH, DEUTSCHE LUFTHANSA AG, AND EUROWINGS GMBH FED. R. CIV. P. 12(B)(2) AND 56; DECLARATION OF RAYMOND C. SELKE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS GERMANWINGS, LUFTHANSA AND EUROWINGS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 56; REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT OF DEFENDANTS GERMANWINGS GMBH, DEUTSCHE LUFTHANSA AG, AND EUROWINGS GMBH FED. R. CIV. P. 12(B)(2) AND 56; EXHIBITS 1 THROUGH 44** with the Clerk of the United States District Court for the Eastern District of Virginia using the Court's CM/ECF system.  The Court's CM/ECF system will send electronic notification of this filing (NEF) to counsel of record:

Jeffrey S. Portez, Esquire
jportez@milesstockbridge.com
Courtney B. Schaefer, Esquire
cschaefer@milesstockbridge.com
Miles & Stockbridge, P.C.
1751 Pinnacle Drive, Suite 1500
Tysons Corner, VA 22102-3833
703-903-9000 (p)
703-610-8686 (f)
*Counsel for Defendants*

Christopher Carlsen, Esquire
Christopher.Carlsen@clydeco.us
Clyde & Co. US LLP
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
212-710-3900 (p)
212-710-3950 (f)
*Counsel for Defendants*

By:_____/s/_____
          Thomas F. DellaFera Jr., Esq.

Thomas F. DellaFera Jr., Esq.
*tdellafera@millerdellafera.com*
MILLER DELLAFERA, PLC
3420 Pump Road, PMB 404
Henrico, Virginia 23233
Tel: (800) 401-6670
Fax: (888) 830-1488
*Attorneys for Plaintiffs*

BAUM HEDLUND ARISTEI & GOLDMAN PC
12100 Wilshire Blvd., Suite 950
Los Angeles, California 90025

- 32 -

PLAINTIFFS' OPPOSITION TO THE MOTION TO
DISMISS AND/OR FOR SUMMARY JUDGMENT OF
DEFENDANTS GERMANWINGS GMBH, ET AL.