IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| RAYMOND C. SELKE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-00121-GBL-TCB |
| | ) | |
| GERMANWINGS GMBH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants Germanwings GmbH ("Germanwings"), Deutsche Lufthansa AG ("Lufthansa"), and Eurowings GmbH's ("Eurowings") (collectively "Defendants") Motion to Dismiss and/or for Summary Judgment[1] Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 56. (Dkt. No. 42.) This case concerns a suit for money damages brought by Plaintiffs Raymond C. Selke and Trevor J. Selke ("Plaintiffs") on two claims against Defendants for liability in the crash of Germanwings Flight 9525, which resulted in the death of Plaintiffs' family members, Yvonne C. Selke and Emily E. Selke ("Selke decedents"). First, Plaintiffs allege that Defendants owe money damages under the liability parameters of the *Convention for the Unification of Certain Rules for International Carriage by Air* ("Montreal Convention"),[2] an international air carriage treaty ratified by the United States. Second, Plaintiffs in the alternative charge that Defendants are liable for the deaths of the Selke decedents based on a claim of negligence under Virginia state law.

---

[1] The Court notes that Defendant Germanwings does not join Defendants' Motion for Summary Judgment. (Dkt. No. 42 at 1.) Accordingly, the Court considers only Defendants' Motion to Dismiss as it pertains to Germanwings.

[2] *Convention for the Unification of Certain Rules of International Carriage by Air*, ICAO Doc. 9740, *reprinted in* Treaty Doc. No. 106-45, 1999 WL 33292734 (2000) [hereinafter *Montreal Convention*].

There are five issues before the Court. The first issue is whether, under Federal Rule of Civil Procedure 12(b)(2), the Court should grant Defendant Germanwings' Motion to Dismiss for lack of personal jurisdiction, where Germanwings maintained no physical presence in Virginia but sold tickets to Virginia residents through an agent located in the Commonwealth. The Court denies Germanwings' Motion to Dismiss because Germanwings expressly authorized another airline to sell its tickets in Virginia, thus availing itself of the privilege of conducting business in the forum.

The second issue is whether the Court should grant Defendant Lufthansa's Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction, where Lufthansa authorized another airline to sell tickets in Virginia on its behalf and maintained steady operations from a Virginia airport. The Court denies Lufthansa's Motion to Dismiss because in addition to selling its tickets to Virginia residents through an agent based in the forum, Lufthansa also employs Virginia citizens and operates daily flights from Dulles International Airport.

The third issue is whether the Court should grant Lufthansa's Rule 56 Motion for Summary Judgment, where Lufthansa did not provide the actual carriage that resulted in the deaths of Plaintiffs' decedents. The Court grants Lufthansa's Motion for Summary Judgment because the Montreal Convention exclusively governs Plaintiffs' claims and Lufthansa's status as a "successive carrier" under the Convention does not confer liability for the crash of Germanwings Flight 9525.

The fourth issue is whether the Court should grant Defendant Eurowings' Motion to Dismiss for lack of personal jurisdiction, where the airline has no physical presence in Virginia, was not party to the transaction that provided the Selke decedents with carriage to Europe, and did not sell tickets via its contractual relationship with an agent in Virginia. The Court grants

2

Eurowings' Motion to Dismiss because Eurowings does not have minimum contacts in Virginia sufficient for the Court to assert jurisdiction under the requirements of the Due Process Clause.

The fifth issue is whether the Court should grant Eurowings' Rule 56 Motion for Summary Judgment where the airline did not participate in nor contribute to any of the carriage that resulted in the crash of Germanwings Flight 9525. Because the Court may not exercise jurisdiction over Eurowings, the Court does not address the issues raised by Eurowings' Rule 56 motion.

## I. BACKGROUND

### A. The Parties

Plaintiffs Raymond C. Selke and Trevor J. Selke ("Plaintiffs") are the surviving members of the Selke family. Plaintiff Raymond C. Selke is the surviving husband of Yvonne C. Selke and father of decedent Emily E. Selke. (Dkt. No. 1 ¶ 2.) Plaintiff Raymond C. Selke is also administrator of the decedents' estates. *Id.* Plaintiff Trevor J. Selke is the surviving son of Yvonne C. Selke and brother of Emily E. Selke. (*Id.* ¶¶ 13, 14.)

Defendant Germanwings GmbH is a commercial airline organized and existing under the laws of Germany. (Dkt. No. 42 ¶ 2.) Germanwings also maintains its headquarters and its principal place of business in Cologne, Germany. (*Id.* ¶ 3.) Germanwings is an international air carrier that operates flights to 103 destinations worldwide, none of which have ever operated to or from Virginia, or any other state in the United States. (Dkt. No. 45.) Germanwings does not have an office in Virginia, or in any other state of the United States, and does not employ any citizens of either Virginia or the United States as a whole. (*Id.* at 10.) Germanwings is a wholly owned subsidiary of Defendant Lufthansa. (Dkt. No. 43-1 at 2.)

Defendant Deutsche Lufthansa AG is a commercial airline organized and existing under

3

the laws of Germany, with a headquarters and principal place of business in Cologne, Germany. (Dkt. No. 43-1 at 11.) Lufthansa operates flights to 205 international destinations, 19 of which are located in the United States, including one in Virginia. (*Id.* at 10.) Lufthansa also employs 430 citizens of the United States, 17 of whom are residents of Virginia. *Id.* Lufthansa is the parent corporation of both Germanwings and Eurowings. (Dkt. No. 43-1 at 2.)

Defendant Eurowings GmbH is a commercial airline organized and existing under the laws of Germany. (Dkt. No. 42 at 6.) Eurowings' headquarters and principal place of business are located in Düsseldorf, Germany. *Id.* Eurowings offers flights to 124 international destinations, operating approximately 2,767 flights per week. (*Id.* at 11.) Eurowings provides carriage to several destinations in the United States, including Seattle, Washington; Las Vegas, Nevada; and Miami, Florida. *Id.* Eurowings has never operated any flights from or to Virginia, does not maintain an office in Virginia, and has never employed any Virginia residents. *Id.* Eurowings is a wholly owned subsidiary of Defendant Lufthansa. (Dkt. No. 43-1 at 2.)

Defendant United Airlines, Inc. ("United") is a Delaware corporation with its principal place of business in Illinois. (Dkt. No. 1 ¶ 15.) United is a domestic and international air carrier that operates flights to and from five destinations within the Commonwealth of Virginia and employs 5,700 Virginia citizens. (Dkt. No. 15-1 ¶ 34.)

### B. Defendants' Business Relationships with United Airlines, Inc.

Defendants maintain business agreements with United that permit United to sell tickets for flights performed by Germanwings, Eurowings, and Lufthansa. (Dkt. 43-1 at 4–6.) Defendants' ticketing agreements with United fall into two categories: "interline" agreements and "codeshare" agreements. *Id.* Germanwings, Eurowings, and Lufthansa maintain interline agreements with United, which involve business relationships where the carriers engage in

4

mutual acceptance of tickets and baggage, but operate independently from one another. *Id.*
Germanwings, Eurowings, and Lufthansa each also have separate codeshare agreements with
United wherein United may sell under its own authority passage on one of the other carriers.
(Dkt. No. 43-1 at 6.) Under these codeshare sales, United assumes responsibility for any flights
booked despite the performance of actual carriage by another airline. *Id.*

Lufthansa and United, along with 27 other airlines, are members of the "Star Alliance,"
an international group of air carriers sharing mutual connection locations, reciprocal frequent
flier membership benefits, and flight check-in recognition. (Dkt. 43-1 at 7.) Neither
Germanwings nor Eurowings is a member of the Star Alliance. *Id.*

### C. Crash of Germanwings Flight No. 9525

Plaintiffs allege that in or around February 2015, the Selke decedents booked air carriage
on five flights through United's website for a European vacation scheduled from March 20, 2015
to March 29, 2015. (Dkt. 45 at 8.) Decedents were scheduled to travel from Washington Dulles
Airport in Virginia to Munich, Germany on United, and then from Munich to Barcelona, Spain
on March 20, 2015 via Lufthansa. *Id.* On March 24, 2015, the Selke decedents were scheduled
to travel from Barcelona to Düsseldorf, Germany on Germanwings, and then from Düsseldorf to
Manchester, England on Germanwings. *Id.* Finally, on March 29, 2015, decedents were
scheduled to return home from Manchester to Washington Dulles via carriage provided by
United. *Id.*

On the flight between Barcelona and Düsseldorf on Germanwings Flight No. 9525
("Flight 9525"), co-pilot Andreas Lubitz locked himself in the cockpit and caused the plane to
rapidly descend and crash into the French Alps. (Dkt. No. 1 ¶ 1.) Tragically, all 6 crew
members and 144 passengers, including the Selke decedents, were killed. *Id.*

5

Plaintiffs allege that by not maintaining safety measures requiring two crew members to remain present in the cockpit at all times, Germanwings and, by association, Eurowings, Lufthansa and United negligently operated Flight 9525, proximately causing the crash that killed the Selke decedents. *Id.*

## II. DISCUSSION

### A. Standards of Review

#### 1. Rule 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), the Court may dismiss a case for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). Plaintiffs bear the burden of proving that personal jurisdiction exists by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When a court rules on personal jurisdiction without an evidentiary hearing, the plaintiff must make a *prima facie* showing of a sufficient jurisdictional basis to survive the challenge. *Id.* In such circumstances, a court must view all relevant allegations in the light most favorable to the plaintiff and draw all reasonable inferences for the existence of jurisdiction. *Combs*, 886 F.2d at 676; *see also Mylan Labs v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993).

Determining whether a person is subject to personal jurisdiction requires a two-step analysis. First, a court must conclude that jurisdiction is authorized by the state's long-arm statute. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). Second, the court must find that the exercise of personal jurisdiction is consistent with the constitutional requirements of the Due Process Clause of the Fourteenth Amendment. *Id.* Virginia's long-arm statute extends personal jurisdiction to the constitutionally permissible limits of the Due Process Clause of the Fifth Amendment. *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). Accordingly, "[b]ecause Virginia's long-arm statute is intended to extend personal jurisdiction to the extent

6

permissible under the due process clause, the statutory inquiry merges with the constitutional inquiry." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

### 2. Rule 56

Pursuant to Federal Rule of Civil Procedure 56, the Court must grant summary judgment if the moving party establishes that there is no genuine dispute as to any material fact. FED. R. CIV. P. 56(a).

When reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). If a motion for summary judgment under Federal Rule of Civil Procedure 56 is properly made and sufficiently supported, an opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Furthermore, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48.

A "material fact," for the purposes of the summary judgment inquiry, is a fact that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Similarly, whether a fact is considered "material" is determined by the substantive law governing the claims alleged in the complaint. *Anderson*, 477 U.S. at 248. Accordingly, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see also Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). Likewise, a "genuine" dispute concerning a "material" fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *Anderson*, 477 U.S. at 248. Additionally,

7

Federal Rule of Civil Procedure 56(e) requires that the non-moving party go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B. Analysis

The Court denies Germanwings' Rule 12(b)(2) Motion to Dismiss because Germanwings expressly authorized United to sell its tickets in the forum of Virginia, thus reaching into the state to conduct business using an agent as a sales proxy.

The Court likewise denies Lufthansa's Rule 12(b)(2) Motion to Dismiss because Lufthansa employs Virginia citizens, enjoys the protection of Virginia laws while conducting business in the forum, and operates daily flights from Dulles International Airport in Virginia. However, the Court grants Lufthansa's Rule 56 Motion for Summary Judgment because Lufthansa's role as an interline carrier in the travel of the Selke decedents does not confer liability under the governing articles of the Montreal Convention, which expressly preempts Plaintiffs' state law claims.

Lastly, the Court grants Eurowings' Rule 12(b)(2) Motion to Dismiss because Eurowings does not have sufficient contacts in Virginia to satisfy the constitutional requirements for the Court to assert specific personal jurisdiction. Specifically, because Eurowings was not in any way a party to United's sale of tickets to the Selke decedents, the transaction does not implicate Eurowings, which otherwise has no contacts with Virginia whatsoever.

Because the Court cannot assert personal jurisdiction, the Court need not address Eurowings' Rule 56 Motion for Summary Judgment.

### 1. Personal Jurisdiction Over Germanwings

8

The Court has personal jurisdiction over Germanwings because the airline purposely availed itself of Virginia by transacting business in the Commonwealth through its agent, United. This business activity resulted in the sale of tickets that gave rise to Plaintiffs' cause of action. Furthermore, because Plaintiffs are citizens of Virginia and adjudicating the matter in this forum would not unduly inconvenience Germanwings, the Court's assertion of personal jurisdiction comports with the reasonableness requirements of the Due Process Clause.

When considering a challenge to personal jurisdiction, the Court first asks whether Virginia's long-arm statute authorizes personal jurisdiction over the defendant, and, second, whether the assertion of jurisdiction runs afoul of the requirements of the Due Process Clause of the Fourteenth Amendment. Because Virginia's long-arm statute sweeps as broadly as permitted by due process, the two inquiries collapse into the same analysis of whether the assertion of personal jurisdiction can withstand due process scrutiny. *See Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982).

For a court's assertion of personal jurisdiction to withstand this review, a defendant must have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Such "minimum contacts" exist if a defendant has "purposely avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts."). In the Fourth Circuit, courts consider three factors when analyzing personal jurisdiction over a

9

nonresident defendant: "[1] the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; [2] whether the plaintiffs' claims arise out of those activities; and [3] whether the assertion of personal jurisdiction is constitutionally reasonable." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301–02 (4th Cir. 2012); *see also Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). Each prong must be satisfied. *Consulting Eng'rs*, 561 F.3d at 278–79.

### a. Germanwings' Purposeful Availment of the Virginia Forum

Although Germanwings has no physical presence in Virginia, its ticketing arrangements with United and express authorization of United selling its services to Virginia citizens reflects sufficient purposeful availment of the forum to justify the assertion of personal jurisdiction.

Generally, if a defendant has created a "substantial connection" to the forum, then it has purposefully availed itself of the privilege of conducting business there. *Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993) (citing *Burger King*, 471 U.S. at 476). A non-exhaustive list of factors includes: (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant long-term business activities in the forum state; (5) whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality, and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum. *Consulting Eng'rs*, 561 F.3d at 278.

Plaintiffs argue that because Germanwings had in place certain business agreements related to ticket sales, Germanwings transacted business within the Virginia forum when United sold interline tickets to the Selkes for air carriage on Germanwings Flight 9525. (Dkt. No. 45 at 13.) Even if the tickets were sold pursuant to an interline agreement, Plaintiffs contend, the nature of the agreement was such that United's sale of the tickets reflected not only United's solicitation of business in Virginia, but also Germanwings.[3] (*Id.* at 15.) In support of this theory, Plaintiffs cite to several cases of persuasive authority where courts held foreign airlines subject to personal jurisdiction in the forum where they sold tickets through an express agreement with an agent. *See Vergara v. Aeroflot*, 390 F. Supp. 1266, 1269 (D. Neb. 1975); *Mohler v. Dorado Wings, Inc.*, 675 S.W.2d 404, 406–07 (Ky. Ct. App. 1984). The District Court of Nebraska's holding in *Vergara* best illustrates Plaintiffs' contention. In *Vergara*, two residents of Nebraska pursued claims under the Warsaw Convention in federal court against a Russian airline ("Aeroflot"), alleging that the plaintiffs were forcibly detained in Pakistan after Aeroflot failed to obtain permission to enter Pakistani airspace. *Vergara*, 390 F. Supp. at 1267–68. In response, Aeroflot, which had no offices and no employees in Nebraska, moved to dismiss for lack of personal jurisdiction. The District Court of Nebraska denied Aeroflot's motion, noting that in expressly authorizing a Nebraska travel agent to sell tickets on its behalf, Aeroflot "transacted business" in the forum. *Id.* Similarly, in *Mohler*, the Kentucky Court of Appeals held that although Delta Airlines did not have any assets or employees in Kentucky, Delta nevertheless

---

[3] The Court notes that this argument for personal jurisdiction appears to be different than the "partnership, joint venture, joint adventure, or joint enterprise" theory for personal jurisdiction advanced at times by Plaintiffs in their Complaint. (Dkt. No. 1 at 4.) Under that theory, which Plaintiffs appear to abandon in their Reply to Defendants' Motion, Plaintiffs seem to argue that the nature of the relationship between United and Germanwings, Eurowings, and Lufthansa is such that the minimum contacts of each are attributable to the partners. Because Plaintiffs do not address this argument in their Reply, and because the Court finds the matter of personal jurisdiction resolvable without it, the Court does not address it in this opinion.

11

availed itself of the forum because Delta authorized the sale of its tickets through a Kentucky-based travel agent. *Mohler*, 675 S.W.2d at 406.

In response, Defendants call into question the persuasive weight of these cases based on their age and "recent Supreme Court cases addressing the issue of specific personal jurisdiction." (Dkt. No. 47 at 7.) But Defendants cite to no authority that expressly contradicts or renders obsolete the holdings in *Vergara* and *Mohler*. By quoting *Walden v. Fiore*, Defendants analogize that because a "substantial connection with the forum state . . . must arise out of contacts that the 'defendant *himself*' creates with the forum state," United's sale of the tickets in Virginia cannot reflect Germanwings' contacts with the forum. *Id.* (quoting 134 S. Ct. 1115, 1121 (2014)). However, this characterization of modern federal procedure jurisprudence misconstrues the central holdings of both *Walden* and *Burger King*. Principally, while the assertion of personal jurisdiction requires that the defendant himself create contacts with a forum state, this condition does not preclude a defendant from establishing those contacts through a contractual relationship with a resident party. To the contrary, the Supreme Court of the United States in *Burger King* distinguished that, even absent physical contacts in a forum, a defendant can be subjected to the personal jurisdiction of that state based solely on "a carefully structured . . . relationship that envision[s] continuing and wide-reaching contacts [with a party in the forum]." 471 U.S. at 480.

By entering into ticketing agreements with United and expressly authorizing United to sell tickets to Virginia residents on its behalf, it was Germanwings itself who established contacts in Virginia. Defendants' argument to the contrary—that the mere existence of a business intermediary between Germanwings and the physical forum is sufficient to shield Germanwings from jurisdiction—is inapposite to the *Walden* holding and the principle

12

articulated in *Burger King*. Thus, the Court finds more persuasive the standard established in *Vergara*, which speaks directly to the jurisdictional relevance of an agent selling tickets on a foreign airline's behalf. Here, as in *Vergara*, tickets were sold through contracts arising from mutual membership in the International Air Transport Association ("IATA"). (Dkt. No. 15-1 at 12.) Article 2 of the ticketing agreement between Germanwings and United also includes explicit references to how and when United will be reimbursed for the sale of Germanwings tickets, including billing information, billing addresses, and invoice scheduling. *Id.* Furthermore, the preamble to the bilateral ticketing agreement states that "the Parties hereto operate scheduled air transportation services and desire to enter into arrangements under which United Airlines may sell transportation over the routes of [Germanwings]." *Id.* These factors, which proved decisive in *Vergara*, are controlling here as well. Germanwings had an express agency agreement with United to sell tickets on its behalf and paid a commission when United sold those tickets in Virginia. Thus, when Plaintiffs purchased tickets from United for carriage on Germanwings Flight 9525, Germanwings was transacting business in Virginia.

   *b. Plaintiffs' Cause of Action Arises from Germanwings' Contacts with Virginia*

   Because Germanwings purposefully availed itself of Virginia, the Court next considers the second prong of specific jurisdiction analysis: whether the Plaintiffs' cause of action arises from Germanwings' contacts in the forum.

   The portions of Virginia's long-arm statute governing the second prong of this analysis appear in Section 8.01-328.1, which holds that a court may assert personal jurisdiction over a person:

> [W]ho acts directly or through an agent, as to a cause of action arising from the person's:
> 1. Transacting any business in this Commonwealth; . . .
> 3. Causing tortious injury by an act or omission in this Commonwealth;

13

4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth; . . . .

Va. Code Ann. § 8.01-328.1, *amended by* 2017 Virginia Laws Ch. 480 (H.B. 1737).

The Court notes that Virginia courts have spoken previously on the meaning of the phrase "arising from" in Section 8.01-328.1, with the controlling interpretation requiring that there be a causal link between the acts relied on for personal jurisdiction and the claims detailed in the complaint. *Chedid v. Boardwalk Regency Corp.*, 756 F. Supp. 941, 943 (E.D. Va. 1991); *see also Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 589 (E.D. Va. 1992) ("The plain meaning of the phrase 'arising from' is 'caused by.'"). However, the causation contemplated by the statute requires more than bare "but for" causation; instead, the connection between forum contacts and the cause of action must rise to the level of legal or proximate causation. *Chedid*, 756 F. Supp. at 943.

Defendants posit that the causation requirement should be viewed through the lens of a recent United States Supreme Court decision in *OBB Personenverkehr AG v. Sachs*, arguing that because Plaintiffs' cause of action arises from the crash of Germanwings Flight 9525 and not from Germanwings' contacts in Virginia, there is no specific personal jurisdiction over Germanwings. (Dkt. No. 43 at 16 (citing 196 S. Ct. 390, 396 (2015)). In *Sachs*, the United States Supreme Court held that a claim under the Foreign Sovereign Immunities Act ("FSIA") for personal injuries sustained in a train accident in Austria did not "arise from" the purchase of tickets in California. *Sachs*, 196 S. Ct. at 396. However, the central holding in *Sachs* does not readily apply here. First, the Supreme Court in *Sachs* involved the interpretation of the phrase "based upon" as it applied to the commercial activity exception for sovereign immunity under the FSIA. *Id.* at 392. No part of the Court's holding concerned in any way the causation

14

standard required by Virginia's long-arm statute or the interpretation of "arising from" in Va. Stat. Ann. § 8.01-328.1. Second, the Court's interpretation of "based upon" under the FSIA commercial activity exception has not been extended to all other exceptions of the FSIA itself. Rather, the Circuit Court for the District of Columbia recently noted the "limited usefulness" of the *Sachs* holding, distinguishing that the *Sachs* interpretation of "based upon" was isolated to the commercial activity exception of the FSIA and did not apply to the non-commercial tort exception. *Doe v. Fed. Democratic Republic of Eth.*, 851 F.3d 7, 12 (D.C. Cir. 2017). Because *Sachs* does not control all exceptions to the FSIA, much less the causation standard for Virginia's long-arm statute, the Court does not find it relevant here.

The standard for causation that controls in this matter is better articulated as an inquiry into whether Germanwings' activity in the forum state precipitated Plaintiffs' claims. In the Fourth Circuit, courts acknowledge that a plaintiff's claims arise out of a defendant's activity in a forum when the defendant's activity is "the genesis of [the] dispute." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009). Thus, if "substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim," then a plaintiff's claims properly "arise from" a defendant's activities in the forum. *Tire Eng'g and Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 303 (4th Cir. 2012).

Applied to Germanwings, the *CFA* and *Shandong* standards yield the conclusion that Germanwings' connections with Virginia were the catalyst for Plaintiffs' cause of action. Certainly, if Germanwings had not expressly authorized United to sell tickets on its behalf, the Selke decedents would not have been able to book the "conjunction tickets" United provided that included passage on Germanwings Flight 9525. (Dkt. No. 15-1 ¶ 4.) Nor is the crash of that

flight so far removed from the sale of the tickets necessary for carriage as to sever the causal nexus between the act of selling the tickets and Plaintiffs' cause of action. It was Germanwings that engaged with Virginia when it authorized United to sell tickets for Flight 9525 to Virginia citizens, and it was Germanwings' sale of those tickets through United that formed the "genesis of [the] dispute" as contemplated in *CFA*. 551 F.3d at 295. Thus, Germanwings' activities in Virginia proximately resulted in Plaintiffs' cause of action, satisfying the second prong of the specific personal jurisdiction inquiry.

### c. Personal Jurisdiction over Germanwings is Constitutionally Reasonable

The matter remains as to whether it is constitutionally reasonable for Virginia to exercise personal jurisdiction over Germanwings. However, because Plaintiffs and their decedents are both Virginia residents and the Commonwealth has a strong interest in adjudicating this dispute, the Court finds that it is not constitutionally unreasonable to assert jurisdiction over Germanwings.

Whether a state jurisdiction is an appropriate forum for the adjudication of a dispute involving a particular defendant requires taking into account: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the efficient resolution of controversies as between states; and (5) the shared interests of the several states in furthering fundamental substantive social policies. *See Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946 (4th Cir. 1994).

Defendants in their Motion to Dismiss do not raise any arguments as to there being a forum better-suited for this dispute, nor do they reference any difficulty Germanwings might have in litigating in Virginia. Plaintiffs, on the other hand, have a strong interest in obtaining relief in this matter, which resulted in the loss of family members who were also Virginia

16

residents.   Plaintiffs are also residents of Virginia, which has considerable interest in the resolution of a dispute involving citizens of the Commonwealth and an airline doing business in the forum.   Germanwings, based in Germany, may face some inconveniences in litigating in Virginia, but seeing as the airline's business centers around international travel, it can hardly be considered a burden of such magnitude as to render the assertion of personal jurisdiction unreasonable.

Because the Court finds that the Commonwealth of Virginia and Plaintiffs have great interest in adjudicating this matter in this forum, and because Germanwings will not be unduly burdened by litigation here, the Court's assertion of personal jurisdiction is not constitutionally unreasonable.   Accordingly, the Court denies Germanwings' Motion to Dismiss pursuant to Rule 12(b)(2).

### 2. Personal Jurisdiction Over Lufthansa

The Court holds that Lufthansa is subject to the personal jurisdiction of the Court because in addition to authorizing United to sell its tickets in Virginia, Lufthansa operates flights out of Virginia and employs Virginia citizens.   Additionally, as was the case with Germanwings, were it not for Lufthansa's authorization of United in the sale of tickets that placed Plaintiffs on Flight 9525, this action would not be before the court.   It is also not constitutionally unreasonable for this Court to assert jurisdiction because Lufthansa operates daily flights to and from Dulles Airport in Virginia, demonstrating that the forum is neither wholly alien nor a problematic setting for litigation.

As outlined above, the extension of Virginia's long-arm statute to the constitutionally permissible limits essentially reduces the inquiry into whether the Court may assert personal

jurisdiction over Lufthansa pursuant to the three-prong test articulated in *Shandong*.  682 F.3d at 302.

### a. *Lufthansa's Purposely Availed Itself of Virginia's Jurisdiction*

Lufthansa, like Germanwings, expressly authorized United to sell its tickets in Virginia, purposely availing itself via proxy of the commercial opportunities of the forum.  However, unlike Germanwings, Lufthansa also maintains an office in Virginia and operates regularly scheduled flights to and from Dulles International Airport.  (Dkt. No. 1 at 5–6.)

Defendants in their motion do not dispute the existence of Lufthansa's interline ticketing agreement with United, choosing instead to focus on the second prong of the personal jurisdiction inquiry.  Because the Court finds that expressly authorizing an agent located in a forum to sell tickets to forum residents equates to the privilege of conducting business there,[4] the Court recognizes that Lufthansa demonstrated purposeful availment of Virginia in the same manner as Germanwings.  That activity, even absent the additional contacts evident in Lufthansa's operations at Dulles airport, is sufficient to satisfy the purposeful availment requirement of the personal jurisdiction test employed by the Fourth Circuit.

### b. *Plaintiffs' Cause of Action Arises from Lufthansa's Contacts with Virginia*

Just as Germanwings' contacts with Virginia were the genesis of the dispute now at hand, so too was Lufthansa's sale of tickets through United an inseparable contribution to the transaction that gave rise to Plaintiffs' cause of action.

As articulated above, the controlling interpretation of the phrase "arising from" in Virginia's long-arm statute is best simplified as a question as to whether Lufthansa's contacts in Virginia were the "genesis of the dispute."  While simple "but for" causation is too tenuous a

---

[4] *See Vergara*, 390 F. Supp. at 1269; *Mohler*, 675 S.W.2d at 406–07.

connection, contacts that stand up to the rigors of a proximate cause standard are sufficient. *Chedid*, 756 F. Supp. at 943.

Defendants argue that because Lufthansa was not involved in the operation of Flight 9525 and the resulting crash, Lufthansa's contacts with Virginia cannot satisfy the causal requirement of Virginia's long-arm statute. But the Court has already clarified that the sale of airline tickets to Plaintiffs' decedents was the genesis of the dispute, not solely the crash itself. Lufthansa, along with United and Germanwings, was integral to the transaction and transportation schedule that ultimately brought Plaintiffs' decedents to Düsseldorf for their carriage on Flight 9525. It was this transaction, and not the crash of Flight 9525, that encompasses the causal nexus representing the genesis of the dispute now before the Court. Accordingly, because it was Lufthansa's contacts with Virginia that made that transaction possible, Defendants cannot exclude Lufthansa from the jurisdiction of the Court by narrowing the basis for jurisdiction to only the crash of Flight 9525.

Lufthansa purposely availed itself of the privilege of transacting business in Virginia when it expressly authorized United to sell its tickets to Virginia citizens, resulting in its involvement in a ticket transaction that gave rise to Plaintiffs' cause of action. As a result, the Court holds that Lufthansa's contacts satisfy the second prong of personal jurisdiction analysis.

### c. Personal Jurisdiction Over Lufthansa is Constitutionally Reasonable

The final question concerning the assertion of personal jurisdiction over Lufthansa is whether it is constitutionally reasonable to do so.

As mentioned above, the Fourth Circuit considers several factors, including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, the

19

efficient resolution of possible controversies between states, and the shared interests of several states. *Lesnick*, 35 F.3d at 946.

Applied to Lufthansa, the assertion of personal jurisdiction does not offend traditional considerations of reasonableness because the Plaintiffs' interest in obtaining relief is great and Lufthansa's consistent presence in the forum demonstrates that it would not be difficult for the airline to litigate in Virginia. While it might be preferable for Lufthansa to litigate in its home forum, the Court is not persuaded that such convenience in any way outweighs Plaintiffs' significant interest in resolving this matter in Virginia or the Commonwealth's interest in the case.

Because Lufthansa will not be unduly burdened by litigating in Virginia, the Court's assertion of personal jurisdiction does not offend considerations of constitutional reasonableness. Accordingly, the Court denies Lufthansa's Motion to Dismiss pursuant to Rule 12(b)(2).

### 3. Summary Judgment for Lufthansa

Because the Court has personal jurisdiction over Lufthansa, the Court now turns to the question of whether Summary Judgment is appropriate in favor of Lufthansa under Rule 56. The Court holds that Lufthansa is entitled to judgment as a matter of law because the Montreal Convention expressly preempts Plaintiffs' state law claims, and there is no genuine dispute of material fact that Lufthansa is not liable under the controlling provisions of the treaty.

Summary judgment in favor of Lufthansa is appropriate because Plaintiffs fail to raise allegations amounting to a genuine dispute of material fact regarding whether Lufthansa is liable for the crash of Flight 9525 based on a theory of negligence under state law or based on the liability articles of the Montreal Convention. Plainitffs' Complaint alleges two counts based on these theories, giving rise to two issues which this Court must address. The first issue is whether

Plaintiffs may charge negligence under state law against Lufthansa in the alternative, or in addition to, their claim for liability under the Montreal Convention. The second issue concerns whether Lufthansa may be held liable under the relevant articles of the Montreal Convention. In response to Defendants' Rule 56 motion, Plaintiffs bear the burden of demonstrating that a genuine dispute exists. *See Matsushita*, 475 U.S. at 587.

### a. The Montreal Convention Preempts State Law Claims

Plaintiffs allege in Count I of the Complaint that United failed to require its common-carrier, codeshare, interline contractual partners, and fellow Star Alliance members Lufthansa and Germanwings to maintain certain safety requirements. Specifically, Plaintiffs contend that United's failure to ensure Germanwings had in place a safety policy preventing a single crew member from taking sole possession of the cockpit directly and proximately caused the crash of Germanwings Flight 9525, which resulted in the deaths of the Selke decedents. (Dkt. No. 1 ¶ 78–81; *see also* Dkt. No. 15 at 5.) Further, Plaintiffs contend that "[d]efendants Germanwings, Lufthansa, and Eurowings represented or held out United to [decedents] as their agent and induced reliance by [decedents] on the appearance of agency." (Dkt. No. 1 ¶ 80.) Based on the existence of agency, partnership, and/or joint venture relationships with Germanwings, Plaintiffs allege that regardless of whether United sold tickets for Germanwings under a codeshare or interline agreement, all Defendants, including Lufthansa, are liable for the deaths of the Selke decedents. (*Id.* ¶¶ 81, 94; *see also* Dkt. No. 36 at 25.)

The Court finds that Plaintiffs' state law negligence claims cannot stand because the Montreal Convention provides the exclusive remedy for claims expressly contemplated in its governing articles. The District Court for the Southern District of New York directly addressed this issue when it held that when state law claims mirror the liability provisions set forth in the

Montreal Convention, those state law claims are preempted. *Paradis v. Ghana Airways, Ltd.*, 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004), *aff'd*, 194 F. App'x 5 (2d Cir. 2006). The District Court for the Southern District of New York has also specifically recognized state law claims of negligence, breach of warranty, and negligent misrepresentation as substantive charges that are replicated in the Montreal Convention. *Shirobokova v. CSA Czech Airlines, Inc.*, 376 F. Supp. 2d 439, 441 (S.D.N.Y. 2005). Furthermore, this Court very recently recognized and affirmed the same basic holding: additional claims brought under liability theories provided for under the Montreal Convention are expressly preempted. *Asiedu-Ofei v. South African Airlines*, 2016 WL 8229875, at *2 (E.D. Va. June 17, 2016). This Court must also follow binding precedent from the Supreme Court of the United States, which in *El Al Israel Airlines, Ltd. v. Tseng* spoke directly to this issue, stating that the "Convention's preemptive effect is clear: The treaty precludes passengers from bringing actions under local law when they cannot establish air carrier liability under the Treaty."[5] 525 U.S. 155, 175 (1999).

Plaintiffs argue that their state law negligence claims are not preempted by the Montreal Convention because Lufthansa was in an "agency, partnership, and/or joint venture relationship" with Germanwings, which contemplates an alternate basis for liability that is not precluded by the treaty. (Dkt. No. 45 at 22.) In support, Plaintiffs cite to a Southern District of Florida case where plaintiffs were permitted to pursue state law doctrines of alter ego and joint venture

---

[5] While the Court notes that *Tseng* involved the Warsaw Convention, the predecessor to the Montreal Convention, persuasive authority makes clear that decisions involving the Warsaw Convention should be recognized in liability matters involving the successor Montreal Convention treaty. *See Eli Lilly & Co. v. Air Express Int'l USA, Inc.*, 615 F.3d 1305, 1308 (11th Cir. 2010) (acknowledging that the Montreal Convention replaced the Warsaw Convention); *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 453 (E.D.N.Y. 2008) ("Because the two conventions' preemptive language is substantially similar, they have 'substantially the same preemptive effect.'") (citing *Paradis v. Ghana Airways, Ltd.*, 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004)).

liability against third parties despite the applicability of the Montreal Convention to their cause of action. *In re Air Crash Near Rio Grande Puerto Rico on Dec. 3, 2008*, No. 10-CV-81551, 2015 WL 328219, at *4 (S.D. Fla. Jan. 23, 2015). However, that case is easily distinguishable because the plaintiffs in *Rio Grande* brought alternate liability claims against parties not involved in the events that gave rise to the crash. The District Court for the Southern District of Florida even clarified that the state law claims were not preempted only because they involved parties that "were not direct participants in the event or transaction." *Id.* Conversely, in this case Lufthansa was a direct participant in the transaction that gave rise to Plaintiffs' claim, thus rendering the exception noted in *Rio Grande* inapplicable for the purposes of liability. Lufthansa's role in the ticket transaction with the Selke decedents and its ensuing participation in the chain of flights that brought decedents to Germany place it firmly within the ambit of the Montreal Convention. Specifically, because the Montreal Convention explicitly covers carrier liability in Articles 1(3), 36, 39, and 40, Plaintiffs cannot bring state law claims for negligence or agency, partnership, or joint-partnership liability.[6] Thus, Plaintiffs' alternate theories for liability based on state law claims are expressly preempted.

### b. *Lufthansa Cannot be Held Liable Under the Montreal Convention*

The Court grants Lufthansa judgment as a matter of law because Plaintiffs do not raise a genuine dispute as to whether Lufthansa qualifies for liability under the Montreal Convention. This issue turns on whether Lufthansa qualifies as a "successive carrier" or a "contracting carrier" under Articles 36 and 39 of the Montreal Convention.

---

[6] *See Montreal Convention, supra*, note 2, at *30 (defining carriage by several successive carriers as one undivided operation in Article 1(3)); *Id.* at *40 (limiting liability of successive carriers to "case[s] where, by express agreement, the first carrier has assumed liability for the whole journey" in Article 36); *Id.* (defining "contracting carrier" and "actual carrier" in Article 39); *Id.* at *41 (detailing liability of contracting and actual carriers in Article 40).

Plaintiffs allege in Count II of the Complaint that Lufthansa is liable for the deaths of the Selke decedents because the crash of Germanwings Flight 9525 was an "accident" within the meaning of Article 17(1) of the Convention.  (Dkt. No. 1 ¶ 85.)  Plaintiffs also allege that because Lufthansa maintained a contractual ticketing relationship with Germanwings and wholly owned Germanwings at the time of the crash, the Montreal Convention assigns vicarious liability pursuant to Articles 39, 40, and 41.  (*Id.* ¶ 91; *see also* Dkt. No. 36 at 27.)

However, the Montreal Convention in Article 36 excludes from liability air carriers that contribute independent flights as separate legs of a larger travel plan. *Montreal Convention*, 1999 WL 33292734, at \*40.  Under such circumstances, those carriers are deemed successive carriers and held liable for an accident on a separate leg of the travel plan only if "by express agreement, the first carrier assumed liability for the whole journey." *Id.*  Additionally, Article 39 provides for liability of multiple carriers when there exists between them an express agreement that the "actual carrier," the carrier engaged in actual transport, acted by "virtue of authority" of the "contracting carrier," the carrier acting as the agent for the entire transaction. *Id.*

Lufthansa fits none of the parameters that confer liability.  Lufthansa, although it sold its ticket through United to the Selke decedents, was not the agent for the entire transaction.  That was United's role.  Thus, it cannot qualify as the contracting carrier.  Similarly, because Lufthansa did not operate Flight 9525, it cannot qualify as the actual carrier for the purposes of liability.  There is therefore no avenue for Montreal Convention liability under Article 39.  The remaining question concerns whether Article 36 confers any liability based on Lufthansa's participation in the overall travel plan.

Article 36(2) of the Montreal Convention stipulates that in the case of successive carriers only the carrier that performed the flight on which the accident occurred and the first carrier,

24

subject to certain conditions, can be held liable. *Id.* Thus, if Lufthansa qualifies as a successive carrier, it is exempt from Montreal Convention liability because it was neither the actual carrier nor the first carrier in the travel schedule.

Plaintiffs appear to argue that Lufthansa's whole ownership of Germanwings subjects Lufthansa to liability for the crash of Flight 9525. (Dkt. No. 1 ¶ 93.) However, aside from a cursory reference to Article 17(1) in setting forth the scope of the treaty, Plaintiffs do not identify in the Complaint any specific provisions of the Montreal Convention that apply to Lufthansa, or in what manner they confer liability. Nor do Plaintiffs' arguments in opposition to Defendants' Motions contain any mention of how the Montreal Convention applies to Lufthansa. Instead, Plaintiffs seek to reinforce state law claims involving a partnership or joint venture relationship between the Defendants. But as the Court has already established, the Montreal Convention is the sole remedy for the Plaintiffs. Hence, because Plaintiffs set forth no theory as to how allegations of a partnership or joint venture relationship tie into Montreal Convention liability, the Court finds unavailing Plaintiffs' arguments concerning the existence of such a business relationship.

Rather, the Court finds decisive on this issue persuasive authority from the Eastern District of New York concerning the relevancy of interline ticketing agreements to the liability provisions of the Montreal Convention. In *Best v. BWIA West Indies Airways Ltd.*, the District Court for the Eastern District of New York held that the Montreal Convention does not place liability on sellers of interline tickets because they fall within the definition of successive carrier arrangements, which are expressly excluded from the Convention's liability scheme. 581 F. Supp. 2d 359, 364 (E.D.N.Y. 2008); *see also Kapar v. Kuwait Airways Corp.*, 845 F.2d 1100, 1103 (D.C. Cir. 1988) (holding that the drafters of the Convention "precluded the possibility that

the actual carrier for one leg of a scheduled multi-leg trip could be held liable for injuries suffered on another airline during a different leg of the trip."). Thus, because Lufthansa provided air carriage subject to an interline agreement between itself and United, the first carrier, and because there is no evidence Lufthansa directly authorized Germanwings Flight 9525, it cannot be held liable under the Montreal Convention.

As a result, because there is no dispute of fact that would alter the result of this case at trial, the Court grants Lufthansa's Motion for Summary Judgment.

### 4. Personal Jurisdiction Over Eurowings

The Court does not have personal jurisdiction over Eurowings because Eurowings does not have any physical contacts with Virginia, and although the airline did maintain a contractual agreement with United, the ticket transaction that gave rise to Plaintiffs' cause of action did not involve Eurowings. Additionally, alternative means of asserting jurisdiction over Eurowings through Federal Rule of Civil Procedure 4(k)(2) and Article 33 of the Montreal Convention do not apply because Plaintiffs do not allege facts sufficient to make a *prima facie* case for jurisdiction.

First, Plaintiffs allege that Eurowings is subject to the Court's jurisdiction because its contractual ticketing agreements with United hold Eurowings accountable for United's ticket sales in Virginia. (Dkt. No. 4 ¶ 10.) However, while an agent relationship is sufficient to reflect purposeful availment by both Germanwings and Lufthansa, the transaction cannot reflect purposeful availment by Eurowings because no Eurowings tickets were sold as part of the transaction. The conjunction ticket United sold to the Selke decedents shows that only United, Germanwings, and Lufthansa were contracted to provide carriage. (Dkt. No. 15-1 ¶ 4.) Similarly, it was only United, Germanwings, and Lufthansa who, in exercising their bilateral

26

interline contracts, purposely availed themselves of conducting business in Virginia. Eurowings, by comparison, had no role whatsoever in the transaction. Furthermore, absent its bilateral interline and codeshare agreements with United—neither of which were implicated in the transaction giving rise to Plaintiffs' cause of action—Eurowings has no contacts with Virginia that could satisfy the constitutional requirements of specific personal jurisdiction. Thus, the Court cannot assert personal jurisdiction over Eurowings through Virginia's long-arm statute.

Plaintiffs in the alternative urge that personal jurisdiction over Eurowings is proper under Federal Rule of Civil Procedure 4(k)(2), which provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
> (A) The defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> (B) Exercising jurisdiction is consistent with the United States Constitution and laws.

FED. R. CIV. P. 4(k)(2).

Plaintiffs argue that Rule 4(k)(2) ensnares Eurowings because their claim arises under the Montreal Convention, a federal treaty; Eurowings is not subject to any state's courts of general jurisdiction; and the Court's assertion of personal jurisdiction over Eurowings is consistent with the Constitution. (Dkt. No. 1 ¶ 7.) While the Court acknowledges that Plaintiffs' claim arises under federal law, Plaintiffs' argument as to the applicability of Rule 4(k)(2) is unavailing because Plaintiffs fail to demonstrate that Eurowings is not subject to personal jurisdiction in the courts of any other state.

In the Fourth Circuit, Plaintiffs are permitted to pursue alternate theories of personal jurisdiction, but Rule 4(k)(2) requires some attempt to demonstrate that the defendant is not subject to personal jurisdiction in any state. *Base Metal Trading, Ltd. v. OJSC "Novokuznetsky Aluminum Factory"*, 283 F.3d 208, 215 (4th Cir. 2002); *see also United States v. Swiss Am.*

*Bank, Ltd.*, 191 F.3d 30, 41 (1st Cir. 1999) ("The plaintiff, moreover, must certify that, based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state."). At no point in the Complaint or in Plaintiffs' supporting memoranda do Plaintiffs make any such attempt.[7]   To the contrary, Plaintiffs acknowledge that Defendant Eurowings "engages in continuous and systematic business in this District as well as many other United States districts . . . ." (Dkt. No. 1 ¶ 21.) Plaintiffs also agree that Eurowings operates flights to and from at least Nevada, Florida, and Washington.   (*Id.* ¶ 23.)   This admission, which specifies alternative fora where personal jurisdiction over Defendant Eurowings conceivably exists, fatally undermines Plaintiffs' argument for the assertion of Rule 4(k)(2) personal jurisdiction under the standards required by the Fourth Circuit.

Finally, Plaintiffs urge that the Montreal Convention itself confers personal jurisdiction pursuant to specific parameters of Article 33 of the treaty. (*Id.* ¶ 6.)   Both Plaintiffs and Defendants argue at length over whether Article 33 speaks to personal jurisdiction, but the Court

---

[7] Plaintiffs instead cite to *Silver Ring Splint Co. v. Digisplint, Inc.*, arguing that the burden is on Defendants to "show either that one or more specific states exist in which [Eurowings] would be subject to suit or that its contacts with the United States are constitutionally insufficient." 508 F. Supp. 2d 508, 516 (W.D. Va. 2007). However, the District Court for the Western District of Virginia in *Silver Ring* clarified that the burden of proof remains on the plaintiff, not the defendant, in all circumstances when the plaintiff invokes Rule 4(k)(2). *Id.* ("Although there is room under Rule 4(k)(2) for shifting the burden of production, let there be no mistake: 'when a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence.'") (quoting *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005)). Because Plaintiffs have not made any arguments as to Eurowings lacking contacts in any other state, Plaintiffs have not established a *prima facie* case for the application of Rule 4(k)(2) per the requirements of the Fourth Circuit. *See Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 275 (4th Cir. 2005) ("In order to obtain jurisdiction under Rule 4(k)(2) . . . three requirements must be met. First, the suit must arise under federal law. Second, the defendant must not be subject to personal jurisdiction in any state. Third, the defendant must have contacts with the United States consistent with the Constitution and laws of the United States.") (quoting FED. R. CIV. P. 4(k)(2)).

need not reach a decision on the matter because the provision in question does not apply to

Eurowings.

Article 33 of the Montreal Convention, the article in dispute, reads as follows:

Article 33 – Jurisdiction
1.  An action for damages must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination.
2.  In respect of damage resulting from the death or injury of a passenger, an action may be brought before one of the courts mentioned in paragraph 1 of this Article, or in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air, either on its own aircraft, or on another carrier's aircraft pursuant to a commercial agreement, and in which that carrier conducts its business of carriage of passengers by air from premises leased or owned by the carrier itself or by another carrier with which it has a commercial agreement.
3.  For the purposes of paragraph 2,
(a)   "commercial agreement" means an agreement, other than an agency agreement, made between carriers and relating to the provision of their joint services for carriage of passengers by air;
(b)  "principal and permanent residence" means the one fixed and permanent abode of the passenger at the time of the accident. The nationality of the passenger shall not be the determining factor in this regard.
4.  Questions of procedure shall be governed by the law of the court seised of the case.

*Montreal Convention*, 1999 WL 33292734, at *39.

Even assuming the Montreal Convention provides an alternative means of asserting

personal jurisdiction, paragraphs 2 and 3 of Article 33 are fatal to Plaintiffs' arguments for its

application. While the Selke decedents had their principal and permanent residences in Virginia

at the time of the Flight 9525 crash, paragraph 2 requires that the carrier assigned liability

operate services to or from that forum. As acknowledged by both Plaintiffs and Defendants,

Eurowings does not operate flights in Virginia. (Dkt. No. 45 at 7.). Eurowings does not fall into

the exception either, for while Article 33 contemplates jurisdiction over a carrier that operates

"on another carrier's aircraft pursuant to a commercial agreement," paragraph 3(a) clarifies that an agency agreement is exempt from the meaning of "commercial agreement." Thus, even assuming United's sale of the tickets implicated Eurowings for the purposes of personal jurisdiction, the mere existence of an agency agreement would not satisfy the requirements of Article 33.

Accordingly, because the Court finds that Plaintiffs do not make a *prima facie* case for personal jurisdiction over Eurowings, the Court grants Eurowings' Motion to Dismiss pursuant to Rule 12(b)(2).

Because the Court finds it cannot assert personal jurisdiction over Eurowings, the Court need not address the merits of Eurowings' Rule 56 Motion for Summary Judgment. Consequently, the Court holds that Plaintiffs' claims against defendant Eurowings are DISMISSED.

## III. CONCLUSION

The Court **DENIES** Germanwings' Rule 12(b)(2) Motion to Dismiss because Germanwings expressly authorized United to act as its agent in the sale of tickets in Virginia, thus availing itself of the privilege of conducting business in the forum.

The Court **DENIES** Lufthansa's Rule 12(b)(2) Motion to Dismiss because in addition to selling its tickets through United to Virginia residents, Lufthansa employs Virginia citizens and operates daily flights from Dulles International Airport, demonstrating its considerable contacts with the Commonwealth. However, the Court **GRANTS** Lufthansa's Rule 56 Motion for Summary Judgment because Lufthansa's tickets were sold by United as part of an interline agreement, which identifies Lufthansa as a successive carrier free from liability under the controlling provisions of the Montreal Convention.

30

Finally, the Court **GRANTS** Eurowings' Rule 12(b)(2) Motion to Dismiss because Eurowings does not have sufficient minimum contacts with Virginia and is not subject to personal jurisdiction through other procedural means.  Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Dkt. No. 42) is **DENIED IN PART** as to Defendants Germanwings and Lufthansa and **GRANTED IN PART** as to Defendant Eurowings.  Thus, all claims against Defendant Eurowings GmbH are **DISMISSED**;

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Dkt. No. 42) is **GRANTED** as to Defendant Lufthansa. Thus, all claims against Defendant Deutsche Lufthansa AG are **DISMISSED**.

**IT IS SO ORDERED**.

ENTERED this 20th day of July, 2017.

Alexandria, Virginia
    7/20/17

_____/s/_____
Gerald Bruce Lee
United States District Judge

31