IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

RAYMOND C. SELKE, et al.,           )
                                    )
        Plaintiffs,                 )
                                    )
    v.                              )       Case No. 1:17-cv-00121-GBL-TCB
                                    )
GERMANWINGS GMBH, et al.,           )
                                    )
        Defendants.                 )

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant United Airlines, Inc.'s ("Defendant" or "United") Motion to Dismiss and/or for Summary Judgment Pursuant to Federal Rules of Civil Procedure 12(b)(2) and 56. (Dkt. No. 14.) This case concerns a suit for money damages brought by Plaintiffs Raymond C. Selke and Trevor J. Selke ("Plaintiffs") on two claims against Defendant for liability in the crash of Germanwings Flight 9525, which resulted in the death of Plaintiffs' family members, Yvonne C. Selke and Emily E. Selke. First, Plaintiffs allege that Defendant owes money damages under the liability parameters of the *Convention for the Unification of Certain Rules for International Carriage by Air* ("Montreal Convention" or "Convention"),[1] an international air carriage treaty ratified by the United States. Second, Plaintiffs in the alternative charge that Defendant is liable for the deaths of Yvonne C. Selke and Emily E. Selke ("Selke decedents") based on a claim of negligence under Virginia law.

There are two issues before the Court. The first issue is whether, under Federal Rule of Civil Procedure 12(b)(2), the Court should grant Defendant's Motion to Dismiss for lack of personal jurisdiction, where specific personal jurisdiction over a nonresident defendant is

---

[1] *Convention for the Unification of Certain Rules of International Carriage by Air*, ICAO Doc. 9740, *reprinted in* Treaty Doc. No. 106-45, 1999 WL 33292734 (2000) [hereinafter *Montreal Convention*].

permitted if the exercise of jurisdiction satisfies the constitutional requirements under the Due Process Clause of the Constitution. The Court DENIES United's Motion to Dismiss because Plaintiffs have made a *prima facie* showing that the Court has personal jurisdiction over United. Specifically, the Court has personal jurisdiction over United because in registering for business in Virginia, maintaining an agent for service of process in Virginia, and employing Virginia residents, United purposefully availed itself of the privilege of conducting activities in the forum. Additionally, because United itself acknowledged that it has previously brought no fewer than fourteen lawsuits in Virginia, the Court's exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice as required by the Due Process Clause.

The second issue is whether, under Federal Rule of Civil Procedure 56, the Court should grant Defendant's Motion for Summary Judgment, where Plaintiffs advance a theory of liability under the Montreal Convention and, in the alternative, negligence under Virginia law. The Court GRANTS United's Motion for Summary Judgment because even when viewing all alleged facts in a light most favorable to the Plaintiffs, United demonstrates that there is no genuine dispute of material fact for trial. Further, no theory of liability supports judgment in favor of the Plaintiffs under the Montreal Convention, which expressly preempts any similar claims under the common law.

## I. BACKGROUND

This federal question action involves the surviving members of the Selke family alleging that United is liable for selling Yvonne C. Selke and Emily E. Selke airline tickets in Virginia that proximately resulted in their deaths. The Court has subject matter jurisdiction because the Plaintiffs submitted a claim for damages under the Montreal Convention, a treaty ratified by the United States Senate. (*See* Dkt. No. 1 ¶ 2.) In the alternative, the Court has authority to hear the

2

case because the parties have diversity of citizenship, and the amount in question exceeds $75,000. (*See Id.* ¶ 8.)

Plaintiff Raymond C. Selke is the surviving husband of Yvonne C. Selke and father of decedent Emily E. Selke, as well as administrator of both decedents' estates. (*Id.* ¶ 13.) Trevor J. Selke is the surviving son of Yvonne C. Selke and brother of Emily E. Selke. (*Id.* ¶¶ 13, 14.) Plaintiffs filed a two-count Complaint alleging state law negligence (Count I) and Montreal Convention liability (Count II). (*Id.* ¶¶ 70, 83.) Plaintiffs charge both Counts against Defendant United Airlines and three other defendants: Germanwings GmbH ("Germanwings"); Deutsche Lufthansa AG ("Lufthansa"); and Eurowings GmbH ("Eurowings"). (*Id.* ¶ 3.)

Plaintiffs allege that United is a Delaware corporation with its principal place of business in Illinois, and that United purposefully availed itself of the jurisdiction of the Eastern District of Virginia. (*Id.* ¶ 15.) Plaintiffs contend that in or around February 2015, United sold airline tickets to the decedents through United's online booking system. (*Id.* ¶ 40.) Plaintiffs charge that through United's contractual agreements and Star Alliance membership, United provided decedents with round-trip air transportation from Washington Dulles airport in Virginia to Manchester, England. (*Id.* ¶¶ 35, 41.) Plaintiffs argue that the incentives associated with United's loyalty membership program, United Mileage Plus, induced decedent Yvonne C. Selke to book through United additional flights operated by defendants Germanwings and Lufthansa to maximize membership rewards points. (*Id.* ¶ 42.)

The Selke decedents were scheduled to travel March 20, 2015 from Washington Dulles Airport in Virginia to Munich, Germany on United, and then from Munich to Barcelona, Spain on Lufthansa. (*Id.* ¶ 41.) On March 24, 2015, the Selke decedents were scheduled to travel from Barcelona to Düsseldorf, Germany on Germanwings, and then from Düsseldorf to Manchester,

3

England on Germanwings. *Id.* Finally, on March 29, 2015, the Selke decedents were set to return home from Manchester to Washington Dulles via carriage provided by United. *Id.*

Tragically, on the leg between Barcelona and Düsseldorf on Germanwings Flight No. 9525 ("Flight 9525"), co-pilot Andreas Lubitz locked himself in the cockpit and caused the plane to crash into the French Alps. (*Id.* ¶ 1.) All 6 crew members and 144 passengers, including the Selkes, were killed. *Id.*

Plaintiffs allege that by not maintaining adequate safety measures requiring two crew members present in the cockpit at all times, Germanwings, Eurowings, Lufthansa, and United negligently controlled Flight 9525. (*Id.* ¶ 46.) Plaintiffs allege that as a result of this negligence, Defendants proximately caused Flight 9525 to crash, resulting in the death of the Selkes. *Id.*

## II. DISCUSSION

### A. Standards of Review

#### 1. Rule 12(b)(2)

Under Federal Rule of Civil Procedure 12(b)(2), the Court may dismiss a case for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). Plaintiffs bear the burden of proving that personal jurisdiction exists by a preponderance of the evidence. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). When a court rules on personal jurisdiction without an evidentiary hearing, the plaintiff must make a *prima facie* showing of a sufficient jurisdictional basis to survive the challenge. *Id.* In such circumstances, a court must view all relevant allegations in the light most favorable to the plaintiff and draw all reasonable inferences for the existence of jurisdiction. *Combs*, 886 F.2d at 676; *see also Mylan Labs v. Akzo, N.V.*, 2 F.3d 56, 59–60 (4th Cir. 1993).

Determining whether a defendant is subject to specific personal jurisdiction requires a two-step analysis. First, a court must conclude that jurisdiction is authorized by the state's long-

4

arm statute. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004). Second, the court must find

that the exercise of personal jurisdiction is consistent with the constitutional requirements of the

Due Process Clause of the Fourteenth Amendment. *Id.* Virginia's long-arm statute extends

personal jurisdiction to the constitutionally permissible limits. *ePlus Tech., Inc. v. Aboud*, 313

F.3d 166, 176 (4th Cir. 2002). Accordingly, "[b]ecause Virginia's long-arm statute is intended

to extend personal jurisdiction to the extent permissible under the due process clause, the

statutory inquiry merges with the constitutional inquiry." *Consulting Eng'rs Corp. v. Geometric*

*Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009).

     *2. Rule 56*

     Pursuant to Federal Rule of Civil Procedure 56, the Court must grant summary judgment

if the moving party establishes that there is no genuine dispute as to any material fact. FED. R.

CIV. P. 56(a).

     When reviewing a motion for summary judgment, the Court views the facts in a light

most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255

(1986). If a motion for summary judgment under Federal Rule of Civil Procedure 56 is properly

made and sufficiently supported, an opposing party has the burden of showing that a genuine

dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

Furthermore, "the mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247–48.

     A "material fact," for the purposes of the summary judgment inquiry, is a fact that might

affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. v. Wash. Sports Ventures, Inc.*,

264 F.3d 459, 465 (4th Cir. 2001). Similarly, whether a fact is considered "material" is

determined by the substantive law governing the claims alleged in the complaint. Accordingly, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248; *Hooven-Lewis v. Caldera*, 249 F.3d 259, 265 (4th Cir. 2001). Likewise, a "genuine" issue concerning a "material" fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Anderson*, 477 U.S. at 248. Additionally, Federal Rule of Civil Procedure 56(e) requires that the nonmoving party go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

**B. Analysis**

The Court DENIES Defendant's Rule 12(b)(2) Motion to Dismiss because Defendant purposefully availed itself of the jurisdiction of Virginia, and in exercising personal jurisdiction the Court does not offend traditional notions of fair play and substantial justice under the Due Process Clause. The Court GRANTS Defendant's Rule 56 Motion for Summary Judgment because the Montreal Convention expressly preempts any claim for state law negligence, and no set of facts exist that result in liability for Defendant under the controlling articles of the treaty. Accordingly, the Court DISMISSES all claims against United because there is no genuine dispute of material fact as to United's role in the crash, and United is entitled to judgment as a matter of law.

*1. Personal Jurisdiction Under Rule 12(b)(2)*

The Court has personal jurisdiction over United because in registering for business in Virginia, maintaining an agent for service of process in Virginia, and employing Virginia

6

residents, United purposefully availed itself of the privilege of conducting activities in the forum. Additionally, because United itself acknowledged that it has previously brought no fewer than fourteen lawsuits in Virginia, the Court's exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice as required by the Due Process Clause.

In analyzing a challenge to personal jurisdiction, the Court first considers whether Virginia's long-arm statute authorizes personal jurisdiction over the defendants, and, second, addresses whether the exercise of jurisdiction comports with the Due Process Clause. Because Virginia's jurisdiction has been interpreted as applying as broadly as permitted by due process, review largely concerns a single inquiry into whether the assertion of personal jurisdiction can withstand due process scrutiny. *See Peanut Corp. of Am. v. Hollywood Brands, Inc.*, 696 F.2d 311, 313 (4th Cir. 1982).

Because of the singular nature of the inquiry, the sole question before the Court is whether the Court's assertion of personal jurisdiction over United comports with the protections of due process.

For a court's assertion of personal jurisdiction to withstand due process scrutiny, a defendant must have "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Such "minimum contacts" exist if a defendant has "purposely avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated'

7

contacts."). In the Fourth Circuit, courts consider three factors when analyzing personal jurisdiction over a nonresident defendant: "[1] the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; [2] whether the plaintiffs' claims arise out of those activities; and [3] whether the assertion of personal jurisdiction is constitutionally reasonable." *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301-02 (4th Cir. 2012); *see also Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 397 (4th Cir. 2003). Each prong must be satisfied. *Consulting Eng'rs*, 561 F.3d at 278-79.

Plaintiffs also argue that the Court has personal jurisdiction over United pursuant to Article 33 of the Montreal Convention. (Dkt. No. 36 at 14.) Because the Court can assert personal jurisdiction over United absent the application of the Montreal Convention, the Court will not address whether Article 33 applies.

### a. United Purposely Availed Itself of Virginia's Jurisdiction

United's activities in Virginia demonstrate purposeful availment because the airline maintains a physical presence in the forum and enjoys the protection of Virginia courts in its business dealings.

Generally, if a defendant has created a "substantial connection" to the forum, then it has purposefully availed itself of the privilege of conducting business there. *Ellicott Mach. Corp. v. John Holland Party Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993) (citing *Burger King*, 471 U.S. at 476). A non-exhaustive list of factors includes: (1) whether the defendant maintains offices or agents in the forum state; (2) whether the defendant owns property in the forum state; (3) whether the defendant reached into the forum state to solicit or initiate business; (4) whether the defendant deliberately engaged in significant long-term business activities in the forum state; (5)

8

whether the parties contractually agreed that the law of the forum state would govern disputes; (6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; (7) the nature, quality, and extent of the parties' communications about the business being transacted; and (8) whether the performance of contractual duties was to occur within the forum. *Consulting Eng'rs*, 561 F.3d at 278.

United maintained significant and long-term business activities in Virginia, maintained an office in Virginia, and, by the parameters of its contract of carriage with the decedents, agreed to perform certain duties within the forum state, thus availing itself of Virginia's jurisdiction. United acknowledges that it operates flights to five destinations within the Commonwealth of Virginia, employing 5,700 individuals in the forum to facilitate these business activities. (Dkt. No. 15-1 ¶ 34.) Likewise, United does not dispute that it is registered to conduct business in the Commonwealth. (*Id.* ¶ 15.) Accordingly, by employing Virginia citizens, maintaining offices at five separate locations within the forum, and registering to conduct business, United can hardly be surprised that it is being haled into Virginia court. Also persuasive is that United has previously availed itself of the utility of Virginia's courts on no less than fourteen separate occasions, suggesting United is not only subject to Virginia jursidiction, but also more than passingly familiar with the Commonwealth's court system. (Dkt. No. 45 ¶ 7.)

Furthermore, the parameters of United's own contract with the decedents stipulate that, upon issuance of a ticket, United consented to "conditions of carriage upon which [United] agree[d] to provide Domestic and International Carriage." (Dkt. No. 15-1 at 24.) Pursuant to its contract of carriage, United was bound to provide air transportation for decedents from an airport in Virginia to their destination in Europe. Thus, even absent United's other numerous and substantial connections to Virginia, United's express agreement that certain contractual duties be

9

performed in the forum is sufficient to demonstrate purposeful availment. *See Peanut Corp.*, 696 F.2d at 314 (holding that a defendant's agreement that a substantial performance of contractual duties take place in the forum state is dispositive on whether defendant purposefully availed itself of that forum).

Because United engaged in long-term business activities, specified Virginia as a forum in which to perform contractual duties, and took advantage of the protection of Virginia's judicial system, the Court finds that United purposely availed itself of the Commonwealth's jurisdiction.

   *b. Plaintiffs' Cause of Action Arises from United's Contacts with Virginia*

Although United purposefully availed itself of Virginia's jurisdiction, there is still a question of whether Plaintiffs' claims arise out of activities directed at the forum. Defendant correctly notes the relevancy of Section 8.01-328.1 of Virginia's long-arm statute, which is controlling in this matter. The General Assembly of Virginia, in an amendment approved March 13, 2017, established that a court may exercise personal jurisdiction over a person:

> [W]ho acts directly or through an agent, as to a cause of action arising from the person's:
> 1. Transacting any business in this Commonwealth; . . .
> 3. Causing tortious injury by an act or omission in this Commonwealth;
> 4. Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth; . . . .

Va. Code Ann. § 8.01-328.1, *amended by* 2017 Virginia Laws Ch. 480 (H.B. 1737).

United challenges personal jurisdiction based on the theory that Plaintiffs' cause of action does not "arise from" any actions of United that fall into the above subsections. As a threshold matter, the Court notes that the reference to "arising from" in Section 8.01-328.1 requires that there be a causal link between the acts relied on for personal jurisdiction and the claims detailed in the complaint. *Chedid v. Boardwalk Regency Corp.*, 756 F. Supp. 941, 943 (E.D. Va. 1991);

10

see also *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 589 (E.D. Va. 1992) ("The plain meaning of the phrase 'arising from' is 'caused by.'"). However, this causation element requires more than bare "but for" causation; instead, the connection between the forum and the cause of action must rise to the level of legal or proximate causation. *Chedid*, 756 F. Supp. at 943.

United argues that Plaintiffs' claims do not arise from United's sale of the tickets that provided decedents with international air carriage. United also cites to *OBB Personenverkehr AG v. Sachs*, where the United States Supreme Court held that a claim under the Foreign Sovereign Immunities Act ("FSIA") for personal injuries sustained in a train accident in Austria did not "arise from" the purchase of tickets in California. 196 S. Ct. 390, 396 (2015). This argument, and the analogical reasoning on which it relies, is unpersuasive. First, the Supreme Court's holding in *Sachs* involved the interpretation of "based upon" in the commercial activity exception for sovereign immunity under the FSIA. *Id.* at 392. No part of the Court's holding relates to the causation standard required by Virginia's long-arm statute or the interpretation of "arising from" in Va. Stat. Ann. § 8.01-328.1. It is therefore not dispositive on the issue at hand. Also, the Supreme Court's interpretation of "based upon" under the FSIA has not been accepted as controlling over all claims under the FSIA. *See Doe v. Fed. Democratic Republic of Eth.*, 851 F.3d 7, 12 (D.C. Cir. 2017) (distinguishing *Sachs* by noting that the Court's holding interpreted only the commercial activity exception of the FSIA, not the noncommercial-tort exception). Because *Sachs* does not articulate the causation standard applying to all exceptions to the FSIA, the Court does not find it relevant to the interpretation of Virginia's long-arm statute.

To the contrary, the standard for causation that controls in this matter is better interpreted as an inquiry into whether United's activity in the forum state directly precipitated Plaintiffs'

11

claims. In the Fourth Circuit, courts acknowledge that a plaintiff's claims arise out of a defendant's activity in a forum where defendant's activity is "the genesis of [the] dispute." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 295 (4th Cir. 2009). Thus, if "substantial correspondence and collaboration between the parties, one of which is based in the forum state, forms an important part of the claim," then a plaintiff's claims properly "arise from" a defendant's activities in the forum. *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 303 (4th Cir. 2012).

Applied here, United's activities in Virginia proximately resulted in Plaintiffs' cause of action. United, by its own admission, sold decedents tickets not only for the flight that carried them to Europe, but also for air carriage on Lufthansa and Germanwings for the additional legs between European destinations. (Dkt. No. 15 at 3.) Indeed, were it not for United's role as intermediary and the contractual relationships United maintained with both Lufthansa and Germanwings, decedents would not have been able to book passage using the "conjunction tickets" provided by United. (Dkt. No. 15-1 ¶ 4.) Furthermore, the crash of Germanwings Flight 9525, while not the direct result of United's sale of the tickets that placed the decedents on that flight, was certainly the genesis of the dispute now before the Court.

Because the Court finds United's argument as to Va. Code Ann. Section 8.01-328.1(A)(1) unavailing, there is no legitimate challenge to the Court's assertion of personal jurisdiction over United. Similarly, because the Court finds that Plaintiffs' cause of action arises from United transacting business in the Commonwealth of Virginia, there is no need to address Defendant's arguments as to the applicability of Va. Code Ann. Sections 8.01-328.1(A)(2) or (A)(3).

12

### c. *Personal Jurisdiction Over United is Constitutionally Reasonable*

A question remains as to whether it is constitutionally reasonable for Virginia to assert personal jurisdiction over United. However, this inquiry is easily resolved because of United's previous dealings with Virginia courts.

Whether a state jurisdiction is an appropriate forum for the adjudication of a dispute involving a particular defendant requires taking into account (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the efficient resolution of controversies as between states, and (5) the shared interests of the several states in furthering fundamental substantive social policies. *See Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946 (4th Cir. 1994).

United's litigation history in Virginia courts demonstrates that there is no legitimate burden on United in defending itself in the Commonwealth. Likewise, because the Plaintiffs in this action are both citizens of Virginia, the Commonwealth has an interest in adjudicating this matter. Because neither party has demonstrated that this action might be better suited to an alternative forum, any deference to the interests of other states need not be considered.

In conclusion, because United has considerable experience with the Virginia judicial system, the Court's assertion of personal jurisdiction does not run afoul of constitutional reasonableness requirements. Accordingly, the Court denies United's Motion to Dismiss pursuant to Rule 12(b)(2).

13

## 2. *Summary Judgment Under Rule 56*

The Court holds that United is entitled to judgment as a matter of law because the Montreal Convention[2] is the exclusive avenue through which Plaintiffs may assert a claim for relief, and there exists no genuine dispute of material fact that United sold tickets to the Selke decedents in a manner that does not qualify for liability under Articles 17[3] and 39[4] of the Montreal Convention.

The Court must grant United's motion for summary judgment because Plaintiffs fail to allege that there is a material fact in dispute regarding whether they may recover from United based on a theory of state law negligence, or, in the alternative, based on the liability provisions of the Montreal Convention. There are therefore two issues at hand. The first is whether Plaintiffs may pursue a claim against United for state law negligence concurrently or, in the alternative to, a claim for liability under the Montreal Convention. The second issue concerns whether United may be held liable pursuant to the relevant articles of the Montreal Convention. In response to Defendant's Rule 56 motion, Plaintiffs bear the burden of demonstrating that a genuine dispute exists. *See Matsushita*, 475 U.S. at 587.

---

[2] The Montreal Convention is an international treaty, signed by both the United States and Germany, that governs liability for international air carriage. (Dkt. No. 1 ¶ 2.) Entered into force in the United States on November 4, 2003, the Montreal Convention updated and replaced the Warsaw Convention, a uniform system of liability for "flights between the United States and Foreign States also party to the Convention and for international flights having their origin and destination in the United States (round trips)." *Montreal Convention, supra*, note 1, at *6.
[3] *Id.* at *33 (articulating scope of Montreal Convention liability).
[4] *Id.* at *40 (differentiating between liability of airline "mak[ing] a contract of carriage" and an airline "perform[ing], by virtue of authority from the contracting carrier, the whole or part of the carriage").

14

a. *The Montreal Convention Preempts State Law Claims*

Plaintiffs allege in Count I of the Complaint that United failed to require its common-carrier, codeshare, interline contractual partners, and fellow Star Alliance members Lufthansa and Germanwings to maintain certain safety requirements. Specifically, Plaintiffs contend that United's failure to ensure Germanwings had in place a safety policy preventing a single crew member from taking sole possession of the cockpit directly and proximately caused the crash of Germanwings Flight 9525, which resulted in the deaths of the Selke decedents. (Dkt. No. 1 ¶ 78-81; *see also* Dkt. No. 15 at 5.) Further, Plaintiffs contend that "[d]efendants Germanwings, Lufthansa, and Eurowings represented or held out United to [decedents] as their agent and induced reliance by [decedents] on the appearance of agency." (Dkt. No. 1 ¶ 80.) Based on the existence of agency, partnership, and/or joint venture relationships with Germanwings, Plaintiffs allege that regardless of whether United sold tickets for Germanwings under a codeshare or interline agreement, United is liable for the deaths of the Selke decedents. (*Id.* ¶¶ 81, 94; *see also* Dkt. No. 36 at 25.)

The Court finds that Plaintiffs' state law negligence and agency or joint partnership theories of liability cannot stand because the Montreal Convention expressly preempts both claims. The United States Supreme Court spoke directly on this issue in *El Al Israel Airlines, Ltd. v. Tseng*, holding that the predecessor to the Montreal Convention, the Warsaw Convention, provided the exclusive remedy for recovery for carrier liability. 525 U.S. 155, 175 (1999). Persuasive authority also makes clear that it is appropriate to rely on cases interpreting Warsaw Convention provisions when the equivalent provisions in the Montreal Convention are substantially similar. *See Eli Lilly & Co. v. Air Exp. Intern. USA, Inc.*, 615 F.3d 1305, 1308 (11th Cir. 2010) (acknowledging that the Montreal Convention replaced the Warsaw

15

Convention); *In re Nigeria Charter Flights Contract Litig.*, 520 F. Supp. 2d 447, 453 (E.D.N.Y. 2008) ("Because the two conventions' preemptive language is substantially similar, they have 'substantially the same preemptive effect.'") (citing *Paradis v. Ghana Airways, Ltd.*, 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004)). Thus, the "Convention's preemptive effect is clear: The treaty precludes passengers from bringing actions under local law when they cannot establish air carrier liability under the treaty." *Tseng*, 525 U.S. at 175. Because the Montreal Convention expressly addresses carrier liability in Articles 1(3), 36, 39, and 40, Plaintiffs cannot bring state law claims for negligence or agency, partnership, or joint-partnership liability.[5]

Plaintiffs in support of their challenge to United's motion for summary judgment cite to several cases where plaintiffs were allowed to recover from third parties on alter ego theories or joint venture theories of liability despite the applicability of the Montreal Convention. However, these cases are not persuasive in this matter because in each case the third parties involved did not qualify as "carriers" under the relevant articles in the Montreal Convention. Plaintiffs' central authority is illustrative. While the District Court for the Southern District of Florida indeed held that plaintiffs could pursue state law doctrines imposing liability on third parties, the court clarified that this was permitted only because they "were not direct participants in the event or transaction." *In re Air Crash Near Rio Grande Puerto Rico on Dec. 3, 2008*, No. 10-CV-81551, 2015 WL 328219, at *4 (S.D. Fla. Jan. 23, 2015). Similarly, while Article 37 of the Montreal Convention specifically states that a "person liable for damage in accordance with its provisions has a right of recourse against any other person," Articles 40 and 41 explicitly state

---

[5] *See Montreal Convention*, *supra*, note 1, at *30 (defining carriage by several successive carriage as one undivided operation in Article 1(3)); *Id.* at *40 (limiting liability of successive carriers to "case[s] where, by express agreement, the first carrier has assumed liability for the whole journey" in Article 36); *Id.* (defining "contracting carrier" and "actual carrier" in Article 39); *Id.* at *41 (detailing liability of contracting and actual carriers in Article 40).

16

that the Convention governs all liability for parties involved in the event or transaction precipitating a claim. *Montreal Convention, supra*, note 1, at *40–41.

Because United was directly involved in the transaction underlying Plaintiffs' theories for liability, any claim for negligence or joint liability falls within the Montreal Convention's substantive scope. Thus, the Montreal Convention expressly preempts Plaintiffs' parallel state law claims. Accordingly, the Court grants United's motion for summary judgment on Plaintiffs' claim for negligence (Count I).

### b. United Cannot be Held Liable Under the Montreal Convention

Plaintiffs allege in Count II of the Complaint that United is liable for the deaths of the Selke decedents because the crash of Germanwings Flight 9525 was an "accident" within the meaning of Article 17(1) of the Convention. (Dkt. No. 1 ¶ 85.) Plaintiffs also allege that because United maintained an agency relationship with Germanwings at the time of the crash, the Montreal Convention assigns vicarious liability pursuant to Articles 39, 40, and 41. (*Id.* ¶ 91; *see also* Dkt. No. 36 at 27.)

The Court holds that United is entitled to judgment as a matter of law because United selling Germanwings' tickets pursuant to an interline agreement is not a relationship that imputes liability to United under the Montreal Convention.

The Montreal Convention in Article 39 provides for liability of multiple carriers when there exists between them an express agreement that the "actual carrier," the carrier engaged in actual transport, acts by "virtue of authority" of the "contracting carrier," the carrier acting as the agent for the entire transaction. *Montreal Convention, supra*, note 1, Art. 39. Conversely, per Article 36, the Montreal Convention stipulates that when multiple carriers contribute individually to separate legs of a larger travel plan, those carriers are deemed "successive carriers." *Montreal*

17

*Convention, supra,* note 1, Art. 36. If an airline is a successive carrier, that airline is liable only if it was the carrier that performed the carriage when the accident or delay occurred. *Id.* The lone exception to this liability scheme is "in the case where, by express agreement, the first carrier has assumed liability for the whole journey." *Id.* Thus, the key issue is whether United qualifies as a contracting carrier under the Montreal Convention.

First, as a threshold matter, because the Montreal Convention provides the exclusive remedy for Plaintiffs, any theory of agency liability concerning airlines involved in the underlying ticket transaction or accident must arise from a provision of the Convention itself. *See Paradis v. Ghana Airways, Ltd.*, 348 F. Supp. 2d 106, 111 (S.D.N.Y. 2004), *aff'd*, 194 F. App'x 5 (2d Cir. 2006) ("The Conventions preempt all state law claims within their scope."); *see also, Asiedu-Ofei v. South African Airlines*, 2016 WL 8229875, at *2 (E.D. Va. June 17, 2016) (holding that additional claims brought under state law are preempted by the Montreal Convention); *Shirobokova v. CSA Czech Airlines, Inc.*, 376 F. Supp. 2d 439, 441 (S.D.N.Y. 2005) (enumerating claims for negligence, breach of warranty, and negligent misrepresentation as state law claims specifically preempted by the Montreal Convention). Accordingly, Plaintiffs' many arguments advancing a relationship of agency, partnership, and/or joint venture between United and Germanwings based on Virginia law have no persuasive weight in defeating United's motion for summary judgment.

Because United did not provide the actual carriage that resulted in the deaths of the Selke decedents, United can only be liable for agency liability under the Montreal Convention pursuant to the provisions of either Article 36 or Article 41. Article 36 governing "successive carriage" applies if international carriage was contemplated as a single undivided carriage but was to be performed by various successive carriers after the first. *Montreal Convention, supra,* note 1, Art.

18

36. Thus, if United qualifies as a "successive carrier," Plaintiffs can maintain a cause of action only if United, by express agreement, assumed liability for the whole journey. To the contrary, Article 41 governing mutual liability for "contracting carriers" and "actual carriers" applies if the actual carrier (Germanwings) performed its segment of carriage by authority of the contracting carrier (United). *Montreal Convention, supra,* note 1, Art. 41. Accordingly, if United qualifies as a contracting carrier, Plaintiffs can charge United with liability for the crash of Germanwings Flight 9525.

United argues that the Germanwings tickets sold to decedents were provided pursuant to United's interline agreement with Germanwings and not through the airlines' codeshare agreement. (Dkt. No. 37 at 11.) In support of this argument, United alleges that it sold tickets for Germanwings Flight 9525 pursuant to its interline agreement with Germanwings, demonstrated by the lack of United's code "UA" appearing on the Selkes' tickets for the flight leg from Barcelona to Düsseldorf. (Dkt. No. 15-1 ¶ 9.) United also states that when it sells an interline ticket for transportation on another carrier, it has "no involvement in the operation of the flight, and assumes no responsibility for the acts or omissions of the other carrier in the operation of that air transportation." (*Id.* ¶ 11.) United contends that the interline agreement between United and Germanwings expressly stipulates that the two carriers are not in any employment, agency, partnership, or joint venture relationship. (*Id.* ¶ 12.) Further, United acknowledges that it had at the time of the Flight 9525 crash a codeshare agreement with Germanwings, but clarifies that it did not exercise or employ this contractual option when it sold its tickets to decedents. (*Id.* ¶ 16.) United notes that when a carrier sells a codeshare flight, it agrees to assume authority over that flight in a manner similar to how Article 39 of the Montreal Convention distinguishes contracting carriers. (*Id.* ¶ 17.) United also offers evidence

19

demonstrating that its two-letter airline designator code, "UA," did not appear on decedents' tickets for Germanwings Flight 9525, which United argues would have been required under the provisions of its own Contract of Carriage had United provided a codeshare arrangement for the flight. (*Id.* ¶¶ 19-21.) United concludes that because it did not sell the tickets through its codeshare agreement with Germanwings, it does not qualify as a contracting carrier under Article 39 of the Montreal Convention. (*Id.* ¶ 22.)

While there is scant case law interpreting the specific liability provisions of the Montreal Convention, persuasive authority from the Eastern District of New York is instructive in its holding regarding interline and codeshare flights. In *Best v. BWIA West Indies Airways Ltd.*, the District Court for the Eastern District of New York held that Article 39 of the Montreal Convention does not place liability on sellers of interline tickets because they fall within the definition of successive carrier arrangements, which are expressly excluded from the Convention's liability scheme. 581 F. Supp. 2d 359, 364 (E.D.N.Y. 2008). Furthermore, the District Court distinguished that "in a code sharing relationship, the airline from which a passenger purchased her ticket (the contracting carrier) is liable for injuries suffered on the flight even though another airline was the actual carrier." *Id.* Courts from several other jurisdictions echo this sentiment under similar fact patterns. *See, e.g. Kapar v. Kuwait Airways Corp.*, 845 F.2d 1100, 1103 (D.C. Cir. 1988) (concluding that the drafters of the Convention "precluded the possibility that the actual carrier for one leg of a scheduled multi-leg trip could be held liable for injuries suffered on another airline during a different leg of the trip"); *Shirobokova*, 376 at 442-43 (ruling that Delta, the initial carrier and ticket issuer, could not be held liable for an alleged injury that occurred onboard a successive carrier's flight). Accordingly, the Court finds persuasive the interpretation that tickets sold pursuant to and for the purposes of an interline

agreement qualify the carriers for each leg of the journey, even the first, as successive carriers under the Montreal Convention.

Plaintiffs dispute that Germanwings Flight 9525 was a codeshare flight, but they do not designate specific facts showing there is evidence for a jury to find to the contrary. Instead, Plaintiffs argue that because interline and codeshare agreements existed between United and Germanwings at the time of the Crash, United qualifies as a contracting carrier and is thus liable. (Dkt. No. 36 at 27.) Similarly, Plaintiffs infer from United and Lufthansa's mutual participation in the Star Alliance Membership that United is liable under the Montreal Convention. (*Id.* at 29.) However, none of these charges detail or describe specific facts demonstrating that the mere existence of relationships between United, Lufthansa, and Germanwings confers upon United liability under the Montreal Convention. Nor do Plaintiffs assert specific facts disputing United's admission that Germanwings Flight 9525 was an interline flight, not a codeshare flight. In sum, Plaintiffs' claims of agency and partnership are only tenuously connected to the Montreal Convention, which expressly governs their claims. Such unsupported claims are merely conclusory in nature, and, as such, do not give rise to a genuine dispute of material fact. Consequently, because there is no dispute of a fact that would alter the result of this case at trial, the Court finds summary judgment is appropriate for Count II of Plaintiffs' Complaint.

### III. CONCLUSION

The Court DENIES Defendant's Motion to Dismiss because the Court may exercise personal jurisdiction over the Defendant pursuant to Rule 12(b)(2). United is registered for business in Virginia, maintains an agent for service of process in Virginia, and employs Virginia residents, clearly demonstrating that the Defendant has availed itself of the privilege of conducting business activities in the Commonwealth. Additionally, because United itself

21

acknowledged that it has previously brought no less than fourteen lawsuits in Virginia, the Court's exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice as required by the Due Process Clause.

The Court GRANTS Defendant's Motion for Summary Judgment because Plaintiffs have not discharged their burden of demonstrating that a genuine dispute exists. Plaintiffs' claims of agency and partnership have explicit parallels under the Montreal Convention, which expressly governs their cause of action. Accordingly,

**IT IS HEREBY ORDERED** that Defendant United Airlines, Inc.'s Motion to Dismiss (Dkt. No. 14) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant United Airlines, Inc's Motion for Summary Judgment (Dkt. No. 14) is **GRANTED**. Thus, all claims against Defendant United Airlines, Inc. are **DISMISSED**.

**IT IS SO ORDERED**.

ENTERED this 20th day of July, 2017.

Alexandria, Virginia
7 /20/2017

                                        /s/
                          _____
                          Gerald Bruce Lee
                          United States District Judge

22